UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON INC.,<br><br>　　　　Defendants. | Case No. 3:15-cv-00154-JD<br><br>**DECLARATION OF LUKE McLEROY**<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

I, Luke McLeroy, declare as follows:

　　　　1.　　I am the Director of Patent Licensing for North America at Ericsson Inc. ("Ericsson U.S."). Ericsson U.S. has been headquartered in Plano, Texas since 2001, where it currently employs more than 2,600 people. Before relocating to Plano, Ericsson U.S. had its headquarters in Richardson, Texas. I work in Ericsson U.S.'s Plano office and I am a member of the State Bar of Texas.

　　　　2.　　I am responsible for negotiating patent license agreements on behalf of Telefonaktiebolaget LM Ericsson ("LME") and its affiliates with companies based in North America. I make this declaration in support of Ericsson U.S. and LME's (collectively, "Ericsson") Motion To Dismiss First Amended Complaint and their Motion To Dismiss On *Forum Non Conveniens* Grounds. Unless otherwise noted, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently thereto.

　　　　3.　　In my capacity as Director of Licensing, I am responsible for overseeing Ericsson's patent licensing with licensees and potential licensees in North America. Prior to working at Ericsson, I was an attorney at the law firm McKool Smith P.C. for eight years. I have experience negotiating, implementing and drafting patent license agreements, including license agreements for standard-essential and FRAND-committed patent portfolios. I am familiar with the terms on

which Ericsson has granted licenses to such patent portfolios, and Ericsson's negotiations with Apple, occurring between 2012 and the present, regarding a renewed and expanded license to Ericsson's portfolios of patents that are essential to the GSM/GPRS/EDGE ("2G"), WCDMA/UMTS/HSPA(+) ("3G"), and/or 4G LTE ("4G/LTE") standards.

### Ericsson's Research, Development and Standardization Efforts

4. Ericsson has been a leading innovator in the development of the modern cellular infrastructure and the 2G, 3G, and 4G/LTE cellular standards that permit cellular voice calling, high-capacity data communication, and worldwide interoperability among cellular networks.

5. I have reviewed Ericsson's annual financial reports and understand that Ericsson has more than 25,000 employees devoted to research and development, and that Ericsson invests approximately $5 billion (15% of its overall budget) in research and development each year. I further understand that, as a result of Ericsson's research and development, Ericsson has obtained more than 35,000 patents in the United States and abroad, and has a similar number of patent applications currently pending.

6. Ericsson is an active participant in numerous standard-developing organizations ("SDOs"), such as the European Telecommunications Standards Institute ("ETSI"). I am involved in Ericsson's SDO participation, including reviewing certain of Ericsson's contributions to SDOs, discussing such contributions with engineers and other participants who attend SDO meetings, reviewing the intellectual property rights ("IPRs") policies of certain SDOs, giving input into the contents of such policies, and reviewing declarations made by Ericsson to SDOs regarding Ericsson's IPRs. Thus, I have familiarity with the operation of SDOs and Ericsson's involvement and participation in the standardization process.

7. It is my understanding that SDOs such as ETSI supply a framework within which market participants come together to set performance requirements and define use cases for a new industry standard. The SDOs identify technical challenges underlying the new standards, such as increased data rates, reliability, and security. Market participants, such as Ericsson, then invest time and resources into conceiving, modeling, and testing innovative solutions to these technical challenges for inclusion in the standard. In the typical situation, Ericsson and other innovating

companies make competing proposals to overcome the challenges and meet the technical requirements.

8. Ericsson's decision to contribute to the standardization process is a risky investment of research-and-development resources, which must occur years before any products are sold, without any guarantee that the inventions will be incorporated into the standard, or that the standard will be widely adopted. When Ericsson makes a contribution to the SDOs, it makes the decision to share a valuable invention with its competitors, rather than maintaining the invention exclusively for its own benefit.

9. Ericsson's research-and-development efforts have contributed significantly to the standardization of the cellular industry. Ericsson's leadership in this regard is confirmed by numerous sources. For example, attached hereto as Exhibit A is a true and correct copy of a research study by ABI Research titled Standards Leadership Within 3GPP. That study found that Ericsson held more leadership positions (chairmanships and rapporteurships) within cellular standardization efforts than any other company. Similarly, prominent analyst firm Gartner named Ericsson an LTE leader for five years in a row and, in both 2010 and 2011, Ericsson won the award for the "Best Contribution to LTE Standards" by Informa Telecoms & Media, which recognizes contributions made by Ericsson to the development of the 4G/LTE standard. Additionally, in 2014, the European Patent Office named four Ericsson employees as finalists for the European Inventor Award for their contributions to the 4G/LTE standard, noting that "Ericsson, which holds several hundred patents in the 4G area, has played a decisive role in the invention of LTE network technology." *See* European Patent Office, Fifteen Finalists Announced For European Inventor Award (May 6, 2014) *available at* http://www.epo.org/news-issues/press/releases/archive/2014/20140429.html.

10. Hundreds of Ericsson's contributions were approved as part of the 2G, 3G, and 4G/LTE cellular standards. Multiple research studies have demonstrated that Ericsson had more approved contributions to the 4G/LTE standard than any other contributor. Attached hereto as Exhibit B is a true and correct copy of an independent research study performed by ABI Research titled LTE Innovation By Company. That study found that Ericsson was the leader in approved

contributions to the 4G/LTE standard, having made nearly seven hundred approved contributions as of February 2012.  A table from the study, reflecting the number of approved contributions by company, is reproduced below:



### ETSI's Intellectual Property Rights Policy

11.  Like many SDOs, ETSI has a written Intellectual Property Rights Policy ("IPR Policy").  A true and correct copy of the current version of the IPR Policy is attached hereto as Exhibit C.  The IPR Policy requires each ETSI member to use reasonable endeavors to inform ETSI of any intellectual property rights (including patents and pending patent applications) that are essential to standards or technical specifications under development by ETSI.  (IPR Policy § 4.1.)  Upon identification of an IPR that is essential to a standard or technical specification under development, the IPR Policy directs the ETSI Director-General to immediately request that the owner of the IPR give "an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ('FRAND') terms . . . ."  (IPR Policy § 6.1.)

12.  Ericsson has voluntarily provided to ETSI multiple written undertakings that it is prepared to offer licenses to its 2G, 3G, and 4G/LTE standard-essential patents on FRAND terms to companies who manufacture and sell equipment and systems compliant with the relevant standards. Today, Ericsson owns a portfolio of more than 7,000 patents and patent applications that it has declared to ETSI  may be or may become essential to the practice of the 2G, 3G, or

4G/LTE standards. Standard-essential patents are, by definition, necessarily infringed by practicing the relevant standard. Thus, any company or individual who wishes to practice the relevant standard must own or have a license to all patents essential to the standard.

**Ericsson and Apple's Negotiations Regarding A Renewed and Expanded License**

13. I understand that, on January 14, 2008, Ericsson and Apple executed a Global Patent License Agreement ("the Agreement"), whereby Ericsson licensed Apple to practice Ericsson's patents ▇▇▇▇ for a term of seven years. (*See* Declaration of Kasim Alfalahi ¶ 8.) ▇▇▇▇

▇▇▇▇ (*Id.* ¶ 9) ▇▇▇▇

▇▇▇▇

▇▇▇▇

▇▇▇▇ (*Id.* ¶ 10.)

14. I understand that Apple released the iPhone 5 — its first product compliant with the 4G/LTE standard — in September 2012. Around that time, Ericsson and Apple also discussed expanding the scope of the parties' Agreement to include a license to Ericsson's ▇▇▇▇ ▇▇▇▇ Apple and Ericsson met many times over the following two years to discuss a renewal of Apple's license to Ericsson's ▇▇▇▇

▇▇▇▇ I attended some of those meetings and participated in the negotiations on behalf of Ericsson. Most of the Ericsson employees who participated in the negotiations on behalf of Ericsson work from Ericsson's offices in Texas. When I was not personally present at the meetings between Ericsson and Apple, I spoke with the Ericsson employees who attended the meetings and I received summaries regarding the negotiations. I have reviewed the correspondence between Ericsson and Apple pertaining to the negotiations and have reviewed the documents generated by the parties during negotiations. On June 10, 2014, the parties entered into a non-disclosure agreement. A true and correct copy of that agreement is attached hereto as Exhibit D.

15. Throughout the parties' negotiations prior to Apple filing suit, both Apple and Ericsson exclusively discussed the terms of an agreement that, at a minimum, would grant Apple a

1 license to practice Ericsson's entire portfolio of ███████████████████████████
2 ████████████████████████████████████████████████████████ During
3 those negotiations, Apple never requested a license to individual patents in Ericsson's portfolio,
4 and it never asked Ericsson on what terms it would license any individual patents in the portfolio.

5     16. ████████████████████████████████████████████
6 ████████████████████████████████████████████████████████
7 █████████

8     17.  During the parties' negotiations, Ericsson consistently offered to Apple what it
9 believes are fair, reasonable, and non-discriminatory license terms for Ericsson's 2G, 3G, and
10 4G/LTE standard-essential patent portfolios.  Although Apple did not accept those offers, Apple
11 never requested that Ericsson grant it a license to individual patents within Ericsson's standard-
12 essential patent portfolios.  Indeed, although it is customary during portfolio negotiations for a
13 patentee to share with a prospective licensee information about individual patents in the portfolio,
14 ████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████ Ericsson
17 voluntarily shared patent-specific information with Apple regarding only ten patent families.  If a
18 prospective licensee were to ask Ericsson today for all of its claim charts demonstrating how its
19 patents are essential to the 2G, 3G, and 4G/LTE standards (something Apple never did during the
20 parties' two-plus years of negotiations), Ericsson would provide such a prospective licensee with
21 more than 170 claim charts demonstrating the standard-essentiality of at least many hundreds of
22 patents pertaining to cellular handsets.

23     18.  In a letter to ETSI dated November 11, 2011 (attached hereto as Exhibit E), Apple
24 made clear that it understands that licenses to FRAND-committed patents should be determined
25 for the entire portfolio of standard-essential patents owned by a patentee:

26         A party who made a FRAND commitment to license its cellular
        standards essential patents or otherwise acquired assets/rights form a
27         party who made the FRAND commitment must license those patents
        at an appropriate rate.  An appropriate rate is one that is reflective of
28         the party's portfolio of cellular standards essential patents and patent

applications as compared to the total, industry-wide pool of such patents and applications.

Ericsson received a copy of this letter based on its participation in ETSI. The letter was also publicly reported by the Wall Street Journal on February 8, 2012, in an article titled "Apple Asked Standards Body to Set Rules for Essential Patents."

19. Ericsson has consistently attempted to find an amicable and efficient method for resolving the parties' dispute. In January 2014, Ericsson offered to Apple to submit the parties' dispute to binding arbitration to determine the appropriate FRAND terms for a renewal license to Ericsson's portfolio of standard-essential patents. The U.S. Federal Trade Commission and European Commission have both approved arbitration as a proper way to resolve FRAND disputes.

20. By letter dated February 2, 2015, Ericsson also informed Apple that it is willing to agree to submit the parties' dispute to a district court to determine the appropriate FRAND licensing terms for Ericsson's standard-essential patent portfolio, and that Ericsson would unconditionally agree to grant a global license to Apple on the court-determined terms. A true and correct copy of that letter is attached hereto as Exhibit F. Apple did not accept Ericsson's offer.

21. On January 14, 2015, Apple's license to Ericsson's ▮▮▮▮ standard-essential patents (▮▮▮▮▮▮▮▮▮▮) expired. That same day, Ericsson filed (and subsequently amended) a complaint in the United States District Court for the Eastern District of Texas. A true and correct copy of Ericsson's First Amended Complaint is attached as Exhibit G. Ericsson's First Amended Complaint seeks a declaratory judgment that it conducted negotiations with Apple consistent with its FRAND obligations under the ETSI IPR Policy, and that the terms on which it offered to license its portfolio to Apple were consistent with Ericsson's FRAND commitment.

22. On January 12, 2015—while the Agreement was still in effect and ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—Apple filed (and subsequently amended) a complaint in this Court. (Dkt. Nos. 1 & 11.) Apple's complaint requests declaratory judgments regarding seven individual patents in Ericsson's 4G/LTE standard-essential portfolio, which I understand to

be U.S. Patent Nos. 8,214,710; 8,169,992; 8,036,150; 8,023,990; 7,660,417; 6,985,474; and 6,445,917. In particular, Apple requests a declaration that it does not infringe those seven individual patents, or if it does infringe, a declaration of the FRAND royalty for those seven patents and a declaration that Ericsson may not obtain injunctive relief based on those patents.

23. Although Apple never requested a license limited to the seven patents identified in its complaint (or any other individual patents in Ericsson's portfolio of 2G-, 3G- and 4G/LTE standard-essential patents) during the two-plus years the parties have been negotiating, shortly after Apple filed its complaint in this Court, Apple's litigation counsel, William Lee, sent Ericsson a letter requesting for the first time that Ericsson identify a separate royalty rate for each of the seven patents identified in Apple's complaint; that Ericsson explain the methodology by which it calculates such rates for individual patents; and that Ericsson identify other parties who are licensed to the seven patents on such terms. A true and correct copy of the February 12, 2015, letter from Mr. Lee is attached hereto as Exhibit H.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Plano, Texas on February 26, 2015.

Dated: February 26, 2015

_____
Luke McLeroy