JOSEPH J. MUELLER (admitted *pro hac vice*)
joseph.mueller@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., a California Corporation, | Case No. 3:15-cv-00154-JD |
| Plaintiff, | **APPLE INC.'S OPPOSITION TO MOTION TO DISMISS** |
| v. | Judge: Hon. James Donato |
| TELEFONAKTIEBOLAGET LM ERICSSON, a Swedish Corporation, and ERICSSON, INC., a Delaware Corporation, | Date:  April 15, 2015<br>Time:  10:00 am<br>Place: Courtroom 11 |
| Defendants. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ........................................................................................................................1

II. BACKGROUND ..........................................................................................................................2

    A. Apple's Products ...............................................................................................................2

    B. Ericsson's Allegedly Standard-Essential Patents .............................................................3

    C. Ericsson's Litigating Position ...........................................................................................4

    D. Procedural History ............................................................................................................5

III. ARGUMENT ................................................................................................................................6

    A. This Court Has Subject Matter Jurisdiction Over Apple's Declaratory Judgment Action ...............................................................................................................6

        1. Article III's Case-Or-Controversy Requirement Is Satisfied ...................................6

        2. Apple's Claims Were Ripe When Filed ................................................................10

        3. Apple's Alternative Claims Seeking Declarations Of FRAND Royalty Rates For Any Infringed Patents-In-Suit Are Justiciable .....................11

    B. There Is No Sound Basis For Refusing To Hear Apple's Declaratory Judgment Claims ..............................................................................................................12

        1. The Texas Action Will Not Resolve The Parties' Dispute .....................................12

        2. This District Is The Better Venue To Resolve The Parties' Infringement Dispute .................................................................................................13

V. CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Page(s)

*3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372 (Fed. Cir. 2012) .................................................7

*Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364 (Fed. Cir. 2007) ..................................................6

*Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012) ..........................................................................................................11

*Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810 (N.D. Cal. 2008) ........................................14

*Calderon v. Ashmus*, 523 U.S. 740 (1998) .....................................................................................8

*Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352 (Fed. Cir. 2004) ...............................8, 12

*Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325 (Fed. Cir. 2014) ..........................................10

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996) ..........................................................13

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) .......................................3, 8, 9

*Ericsson, Inc. v. D-Link Sys.*, No. 10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013) ...................................................................................................................13

*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983) ................................................................................................................7

*Genentech v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) ........................................................12

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987) .....................10

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ..................................................................15

*InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-00009, 2014 WL 2206218 (D. Del. May 28, 2014) ................................................................................................9, 12

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .....................................................14

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .........................................................6, 8

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ......................7, 9, 12, 14

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ............................................14

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) .........................................6

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ........................6, 7, 12

*United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) .........................................................7

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
  § 1331................................................................................................................................8
  § 1338(a) ...........................................................................................................................8
  § 1404(a) .........................................................................................................................14

**OTHER AUTHORITIES**

10B Wright & Miller, *Federal Practice and Procedure* § 2759 (3d ed. 1998) ...............................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Apple seeks a judicial declaration whether several of its highly-successful iPhone and iPad products infringe seven patents held by Ericsson. There was and remains a live controversy between the parties regarding this matter, as Ericsson has specifically accused Apple of infringing each of the patents-in-suit. This case is well within the Court's Article III jurisdiction and should proceed on the merits.

In its motion to dismiss (ECF No. 24), Ericsson does not deny having accused Apple of infringing the patents-in-suit. Instead, it tries to avoid adjudication of infringement altogether, hoping instead to proceed straight to damages—specifically to its claim that its previous portfolio license offer to Apple complied with its obligation to license standard-essential patents on fair, reasonable, and non-discriminatory (FRAND) terms. And rather than simply counterclaim for such a remedy here, Ericsson filed its own declaratory action in the Eastern District of Texas, seeking not a determination that Apple infringes any patent, but rather a judicial blessing of a FRAND rate for the entire patent portfolio that Ericsson *believes* Apple infringes, without Ericsson ever having to prove infringement. As many of Ericsson's own authorities show, its Texas declaratory action is the one that seeks an improper advisory opinion.

This Court clearly has subject-matter jurisdiction over Apple's request for a declaratory judgment of noninfringement of patents that Ericsson accuses Apple of infringing. Perhaps conscious of that, Ericsson has shifted strategies and—on the same day it filed the instant motion—filed seven infringement suits against Apple in the Eastern District of Texas, one of which asserts eight supposedly standard-essential patents. Ericsson's new strategy essentially admits that there is no jurisdictional bar to considering patent-specific infringement claims between the parties, like the ones Apple has presented for resolution in this case.

Ericsson's specific arguments against this Court's jurisdiction fail. *First*, the fact that Ericsson may well believe that Apple infringes *other* patents in its portfolio does not deprive this Court of jurisdiction to decide whether Apple infringes *these* patents. Article III does not require that a declaratory judgment action resolve every possible disagreement between the parties, but only that the dispute presented be a substantial and concrete cause of action, which this one is.

*Second*, Apple's suit was clearly ripe when filed in January, on the brink of the expiration of the parties' licensing agreement. A declaratory plaintiff like Apple need not wait until the patentee is capable of bringing suit; all that is required is a sufficiently concrete controversy, which is established here by Ericsson's declaration of the seven patents-in-suit as standard-essential, ███████████████████████████████████████ its direct accusation that Apple infringed the seven patents-in-suit, and its history of suing Apple's competitors for infringement of those very same patents.

*Third*, the fact that the parties previously negotiated license terms on a portfolio-wide basis does not affect the justiciability of the patent-specific causes of action asserted here. Ericsson's own recent litigation strategy belies its argument: If Ericsson may sue for infringement of eight individual patents and demand royalties at a court-determined rate, then Apple may seek resolution of a similar claim via declaratory judgment.

*Finally*, Ericsson's request that this Court refuse to hear this case as a matter of discretion likewise fails. Ericsson's appeal to discretion depends on rehashing its preference for litigating its declaratory judgment action in Texas, even though its Texas declaratory action seeks an improper advisory opinion and does not even assert the same claim as Apple seeks to have adjudicated here, namely infringement of the seven patents-in-suit. Moreover, any concerns about overlapping issues would be outweighed by the fact that this case was filed first and that this District is clearly the more convenient venue, in light of the parties' substantial contacts with the forum and given that much of the evidence and many of the witnesses, including third-party witnesses, are located here or may be reached by this Court's subpoena power.

Ericsson's motion to dismiss should be denied.

## II. BACKGROUND

### A. Apple's Products

Beginning with the iPhone in 2007, Apple's products have revolutionized the telecommunications industry by transforming cellular devices from simple phones into complex computers with myriad functions and communications capabilities far beyond cellular. ECF No.

11-4 (First Amended Complaint ("FAC")) ¶¶ 3, 30.  Apple's iPhone and iPad products contain baseband processors, which allow Apple's products to support cellular communication protocols that are incorporated into industry standards.  *Id.* ¶¶ 31, 32.

### B. Ericsson's Allegedly Standard-Essential Patents

Apple and Ericsson are both members of the European Telecommunications Standards Institute ("ETSI"), which is an independent, non-profit organization that helps create standards for the telecommunications industry.  FAC ¶ 34.  The development of industry-wide standards ensures that devices made by one company can communicate or interoperate with devices made by other companies.  *Id.* ¶ 35.  But, as here, these standards can also be misused by patentees that participate in the standard-setting and then seek to "hold up" product companies and extract royalties based not on the value of any particular claimed invention, but rather on the value of standard-compliance.  *Id.* ¶ 36.

ETSI requires members to disclose known standard-essential and potentially standard-essential patents.  FAC ¶ 37.  However, ETSI has no gatekeeper testing the accuracy of such declarations, so a patent holder's assertion that any given patent is standard-essential is no more than that—an assertion.  In fact, studies have repeatedly shown high levels of "over-declaration"—many declared-essential patents are actually not essential and not infringed by compliance with the relevant standard.  *Id.* ¶ 10; *see also, e.g.,* Declaration of Mark D. Selwyn ("Selwyn Decl."), Ex. 1 (Myers, *Review of Patents Declared as Essential to LTE and SAE (4G Wireless Standards) Through June 30, 2009*, Fairfield Resources International (Jan. 6, 2010)) (only 50% of patents that are claimed to be essential to LTE are actually essential).  Indeed, in a recent suit, Ericsson asserted nine patents that "according to Ericsson, were essential to the 802.11(n) [WiFi] wireless standard," yet it dropped four, the fifth and sixth were found not infringed at trial, a seventh was held not infringed on appeal, and the remaining two were recently invalidated by the Patent Office.  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1213, 1224 (Fed. Cir. 2014); *see also* Selwyn Decl., Exs. 2A, 2B (Patent Office decisions).

Ericsson has declared various patents, including the seven patents-in-suit, as supposedly essential to communications standards, including LTE.  FAC ¶ 38.  Indeed, Ericsson has publicly

3

stated that "[a]ny company using cellular connectivity needs a license to Ericsson's industry leading patent portfolio comprising 27,000 patents." Selwyn Decl., Ex. 3 (press release). Yet Ericsson recently admitted in another litigation that some of its declared-essential patents are not actually essential to any standard. *See* Selwyn Decl., Ex. 4 (Joint Stipulation, *TCL Comm'n Tech. Holdings, Ltd., v. Telefonaktiebolaget LM Ericsson*).[1]

For every patent that it declares standard-essential, Ericsson is contractually obligated to grant licenses on FRAND terms. FAC ¶ 38. Ericsson takes an aggressive view regarding what royalty rates qualify as FRAND and how those rates should be applied. Ericsson has consistently sought royalties based on the price of end products (*e.g.*, an entire iPhone or iPad) rather than on the value of its claimed invention or the relevant component within the product that supposedly practices the industry standard (*e.g.*, the baseband processor). *Id.* ¶¶ 47-52. And Ericsson claims it is entitled to 25% of total LTE royalties even though it owns less than 10% of the declared-essential patents for cellular standards. *Id.* ¶¶ 42-43. Ericsson's aggressive licensing position has drawn scrutiny from regulators. *Id.* ¶¶ 51-52.

In contrast, Apple believes that both basic patent law and FRAND licensing principles require (a) using a royalty base that begins with the smallest saleable component that substantially embodies the patented technology and then is apportioned to the patented feature; and (b) applying a royalty rate that reflects the actual technical contribution of a given *patent* to the cellular standard(s), and is mindful of the need to prevent "royalty stacking" problems arising from the cumulative royalties sought by the hundreds of parties that claim to have cellular standard-essential patents. *See, e.g.*, FAC ¶¶ 72-73, 76.

C. **Ericsson's Litigating Position**

Until recently, Apple and Ericsson were parties to a license agreement covering patents Ericsson had declared to be supposedly essential to practicing various cellular communication protocols; the agreement specifically did ***not*** include ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] Similarly, Ericsson stated in its motion to dismiss that of its "portfolio of more than 7,000 patents and patent applications worldwide that it has declared to ETSI," the "actually essential patents . . . number . . . in the hundreds." Mot. 5.

4

1
2 ███████████████████████ FAC ¶ 10.
3
4
5 *Id.*
6
7 *Id.*

Ericsson directly accused Apple of infringing the seven patents-in-suit. FAC ¶ 19. In the past, Ericsson has demonstrated a willingness to follow through on such accusations when Apple's competitors have not taken licenses to all of the patents that Ericsson asserts to be standard-essential. FAC ¶¶ 41-45. On multiple occasions, Ericsson has sued product companies for infringing the same patents at issue here. *Id.*

### D. Procedural History

On January 12, 2015, Apple filed this action seeking a declaration that its products do not infringe seven of Ericsson's declared-essential patents. Apple asked, in the alternative, that the court declare a FRAND royalty rate for any patent that the Court finds actually infringed.

Two days later, on January 14, 2015—the expiration date of the parties' license agreement—Ericsson filed a complaint against Apple in the Eastern District of Texas. *See* ECF No. 27-7 (McLeroy Decl., Ex. G (the "Texas DJ Action")). That complaint did not accuse Apple of infringing any patent, but asked for a declaration that Ericsson had complied with its FRAND obligations in its offers to Apple to license Ericsson's entire portfolio of allegedly standard-essential patents. FAC ¶ 14.

On February 26, 2015, Ericsson fired several further shots in its war against Apple. ***First***, it filed seven patent infringement complaints against Apple in the Eastern District of Texas asserting infringement of 41 patents and seeking (among other things) damages for Apple's infringement (in no event less than a reasonable royalty). Selwyn Decl., Exs. 5A-5G (the "Texas Infringement Actions"). One of the actions asserts infringement of eight patents that Ericsson has declared essential to certain cellular standards. Selwyn Decl., Ex. 5A. ***Second***, Ericsson

filed two complaints against Apple at the International Trade Commission ("ITC"), asserting infringement of 14 patents and seeking to block importation of Apple's products into the United States. Selwyn Decl., Exs. 6A, 6B (the "ITC Actions"). And *third*, Ericsson filed two motions to dismiss this case. ECF Nos. 24, 26.

## III. ARGUMENT

### A. This Court Has Subject Matter Jurisdiction

#### 1. Article III's Case-Or-Controversy Requirement Is Satisfied

The case-or-controversy requirement of Article III of the Constitution is met when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation marks omitted). In a patent case, an Article III case or controversy arises when "a patentee asserts rights under a patent based on certain identified ongoing . . . activity of another party[.]" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).[2] Additionally, "[p]rior litigious conduct" by the patentee is relevant to determining whether there is an actual controversy, including litigation against an entity other than the declaratory judgment plaintiff. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008).

Article III's case-or-controversy requirement is easily met here. Ericsson has directly accused Apple of infringing each patent-in-suit by its sale of products that support LTE. FAC ¶¶ 19, 54-55. Ericsson does not deny this; indeed, it admits in its motion that "Ericsson did, of course, state during negotiations that those seven patents . . . were standard-essential." Mot. 9. Additionally, Ericsson has publicly stated that "[a]ny company using cellular connectivity needs a license to Ericsson's industry leading patent portfolio comprising 27,000 patents," including the seven patents at issue here. Selwyn Decl., Ex. 3 (press release). And the now-expired license agreement ▮

---

[2] Federal Circuit law governs the question whether an actual case or controversy exists sufficient to confer subject matter jurisdiction over a patent infringement declaratory judgment action. *See Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368 (Fed. Cir. 2007).

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ FAC ¶ 10. Ericsson brought infringement actions against other companies whose products support LTE based on the very patents at issue here. *Id.* ¶¶ 41-45. Taken together, these circumstances amply demonstrate an actual controversy between the parties about whether Apple's products infringe Ericsson's seven patents. *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1379 (Fed. Cir. 2012) (actual controversy existed where patentee told declaratory plaintiff that plaintiff's product "may infringe" and that "licenses are available"); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (actual controversy existed where patentee sued declaratory plaintiff's competitors and had threatened to sue plaintiff four years earlier).

Ericsson's principal response is not to deny that it has "assert[ed] rights under" its patents, *SanDisk*, 480 F.3d at 1381, based on Apple's ongoing sale of LTE-supported products. Instead, Ericsson asserts that the parties' dispute is not about infringement of any patent, but rather about what rates Ericsson may charge for *its entire patent portfolio*. Mot. 7-9. Ericsson's argument fails for at least three reasons.

*First*, Article III does not require a declaratory judgment plaintiff to craft a claim that "resolve[s] all the issues in controversy"; the action need only promise to "resolve[] a significant disputed issue." *United States v. Washington*, 759 F.2d 1353, 1364 (9th Cir. 1985); *see also* 10B Wright & Miller, *Federal Practice and Procedure* § 2759 (3d ed. 1998) ("A declaratory action need not be dismissed because it could not settle all possible differences between the parties[.]"). This outcome is logical given the Supreme Court's holding that jurisdiction over declaratory judgment actions is determined by looking to the affirmative coercive action that would have arisen "but for the availability of the declaratory judgment procedure." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 16 (1983) (citation omitted). In this case, the relevant coercive action is an infringement suit by Ericsson asserting that Apple infringed the seven patents-in-suit. There plainly would be Article III jurisdiction over such an action, even if Ericsson separately believed that Apple infringed other patents as well. Indeed, Ericsson's own Texas Infringement Action show that there is a concrete dispute

regarding infringement of individual patents that a federal court can properly resolve. *See generally, e.g.*, Selwyn Decl., Ex. 5A (alleging infringement of individual declared-essential patents and asserting jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) to hear such a complaint); *see also D-Link*, 773 F.3d at 1213 (Ericsson filed suit asserting nine patents that it claimed were essential to the WiFi standard).

The only authority Ericsson can muster is *Calderon v. Ashmus*, 523 U.S. 740 (1998), which does not support its position at all. Ashmus was a state prisoner who planned to seek habeas corpus, but first sought a declaration that an *affirmative defense* he expected the state officials to raise in his habeas proceeding was invalid. *Id*. at 747. The Supreme Court held only that a declaratory judgment action could not be used to "carve out one issue in the dispute for separate adjudication." *Id.* at 749; *see also MedImmune*, 549 U.S. at 127 n.7 (noting that *Ashmus* "simply holds" that a litigant may not use a declaratory judgment action to "obtain piecemeal adjudication of defenses"). However, the Court distinguished the situation where a declaratory judgment action would "completely resolve[] a concrete controversy susceptible to conclusive judicial determination." *Ashmus*, 523 U.S. at 748. That is the situation here: Apple does not seek to pre-litigate an affirmative defense or any other subsidiary issue, but rather to litigate concrete causes of action for infringement of seven patents. Patent infringement is a unitary cause of action that federal courts regularly adjudicate and recognize as "particularly adapted to declaratory resolution." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004).

*Second*, Ericsson misstates the true dispute between the parties. Apple disputes not only what royalty rate qualifies as FRAND for any particular Ericsson patent, but ***whether Apple infringes any such patent in the first place*** such that any royalty is in fact due. Indeed, the declaration of a royalty rate without a finding of infringement is exactly the sort of advisory opinion that Article III prohibits. Notably, Ericsson's Texas DJ Action suffers from that flaw: it seeks a declaration that Ericsson offered Apple a portfolio-wide license at a FRAND rate, but it does not seek a determination of infringement such that Apple would need to ***pay*** such a royalty. Ericsson thus seeks a judgment that would produce no enforceable remedy against Apple; that is

an advisory opinion that a federal court cannot render. *See, e.g., InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-00009, 2014 WL 2206218, at *3 (D. Del. May 28, 2014) (no jurisdiction to issue declaratory judgment stating FRAND licensing terms because it was "unclear as to how [the court] could actually enforce" a ruling setting the FRAND rate).  Ericsson has acknowledged as much in another ongoing litigation. *See, e.g.*, Selwyn Decl., Ex. 7 (Joint Case Management Conference Report, *TCL Commc'n*) ("any FRAND determination without a binding license would represent a mere advisory opinion").  Accordingly, the Texas DJ Action ***cannot*** resolve the parties' actual controversy, even as incorrectly framed by Ericsson.

*Third*, Ericsson's argument that a declaratory judgment action must raise all possible patents over which the parties might disagree would essentially foreclose all declaratory judgment actions involving individual standard-essential patents.  Patentees that hold a "portfolio" of patents they declare to be standard-essential can always frame the "controversy actually at stake" broadly as one over the terms of a license to the entire patent portfolio, rather than infringement of any particular patent.  The Federal Circuit has rejected similar efforts to limit or manipulate declaratory judgment jurisdiction. *See Micron*, 518 F.3d at 903 (rejecting district court's rationale for dismissing declaratory judgment action in favor of a later-filed, broader infringement action because "a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction").

While it may be that, as a business matter, parties often negotiate the licensing of standard-essential patents on a portfolio-wide basis, that does not prevent a court from deciding infringement on a patent-by-patent basis when the parties have a concrete, particularized dispute over a patent's infringement.  Again, Ericsson's litigation strategy confirms this.  In 2010, it filed a suit on nine patents that it claimed were essential to the WiFi wireless standard, only two of which were ultimately held infringed (and even those were recently invalidated). *D-Link*, 773 F.3d at 1213, 1224; *see supra* p. 3.  And in one of its newly-filed infringement actions at the ITC and the parallel action in the Eastern District of Texas, Ericsson claims that Apple infringed eight of Ericsson's allegedly LTE-essential patents. *See* Selwyn Decl., Exs. 5A, 6B.  If Ericsson may

invoke federal jurisdiction on a patent-by-patent basis, then surely Apple may do the same. Apple's action is the appropriate way, and indeed the only way, to resolve the parties' dispute.

### 2. Apple's Claims Were Ripe When Filed

Ericsson also contends (Mot. 9-10) that Apple's claims were unripe when filed because [redacted]

Ericsson cites no case for the proposition that declaratory judgment jurisdiction depends on a showing that the patentee might file an infringement suit on the *very day* the declaratory judgment action is filed by the accused infringer. Indeed, the case law is to the contrary. "[T]he Supreme Court has repeatedly found the existence of an actual case or controversy even [when] ... there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014). The proper question is thus not whether Ericsson could have filed suit on the day Apple filed the declaratory judgment action; the question is whether there was a concrete dispute over whether Apple infringed Ericsson's patents. As explained more fully above, the answer to that question is "yes"—and indeed, Ericsson does not meaningfully deny it.[3]

---

[3] Apple's claims would have been ripe at filing even under the old, more stringent standard requiring a declaratory plaintiff to assert a "reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987). Under that standard, there was no requirement that the patentee be prepared to file an infringement suit on the day the declaratory judgment action was filed. The declaratory plaintiff merely had to allege facts supporting a reasonable inference that the patentee "would, *at some time*, bring a patent infringement suit" against it. *See id.* at 956 ("[T]he mere fact that [the patent holder's] president has not *at this particular moment* authorized a patent infringement action against [the declaratory plaintiff] is not dispositive of its intentions for the future." (emphasis added)).

Finally, the fact that Apple enjoyed "the security of knowing that if it later took a license, the royalty rate would be limited by Ericsson's FRAND commitment" (Mot. 9) is irrelevant. Apple seeks precisely to know whether it infringes and thus *needs* to take a license to the patents-in-suit at all. Determination of infringement is thus antecedent to the need to determine a FRAND rate.

### 3. Apple's Alternative Claims Seeking Declarations Of FRAND Royalty Rates For Any Infringed Patents-In-Suit Are Justiciable

Ericsson next argues (Mot. 10-11) that there is no justiciable dispute between the parties about the proper royalty rates for the patents-in-suit because the parties did not discuss individual patents in licensing negotiations. Again, Ericsson cites no authority for its premise that the parties must specifically discuss and disagree on a royalty rate for the patents-in-suit before a court may exercise declaratory jurisdiction to set such rates upon a finding of infringement. If the Court does find infringement, the logical next step would be to determine how much Apple owes Ericsson as a FRAND royalty rate. Once it does so, Apple, like any party subject to a judgment of infringement, can decide to alter or cease selling the products with the infringing component, pay the Court-determined royalties, or continue infringing without paying royalties and risk the consequences. That those options will exist does not distinguish this case from any other declaratory judgment case involving patent infringement; it certainly does not undermine justiciability. Nor does the fact that the parties previously made a *business* decision to negotiate on a portfolio-wide basis have any bearing on their *legal* rights and obligations, which are governed by the terms of specific patents.

Ericsson's reliance (Mot. 11) on *InterDigital* and *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 7989412, at *3 (W.D. Wis. Nov. 8, 2012), is decidedly puzzling. The courts in those cases *refused* to grant the very relief Ericsson itself seeks in its Texas DJ Action. Moreover, Ericsson's own litigation strategy again belies its argument. Ericsson sued Apple for infringement of eight of the supposedly standard-essential patents in its portfolio and specifically seeks damages "in no event less than a reasonable royalty rate[.]" *See* Selwyn Decl., Ex. 5A

("Prayers for Relief"). If Ericsson may seek a court determination of reasonable royalty rates upon a finding of infringement, so too may Apple.[4]

### B. There Is No Sound Basis For Refusing To Hear Apple's Declaratory Judgment Claims

Although district courts have discretion to refuse to hear declaratory judgment actions, "there are boundaries to that discretion." *SanDisk*, 480 F.3d at 1383. "'When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute . . . in the usual circumstance the declaratory judgment is not subject to dismissal.'" *Id.* (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). "There must be a sound basis for refusing to adjudicate an actual controversy, for the policy of the Act is to enable resolution of active disputes." *Capo*, 387 F.3d at 1357.

#### 1. The Texas Action Will Not Resolve The Parties' Dispute

Ericsson's primary argument for discretionary dismissal is that its later-filed Texas DJ Action allegedly would resolve "the far larger actual controversy between the parties." Mot. 12-13. This rationale "carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction." *Micron*, 518 F.3d at 903.

Moreover, the Texas DJ Action will not resolve the "larger actual controversy," as Ericsson calls it, because Ericsson seeks only a declaration that the offer it made to Apple during negotiations over licensing Ericsson's portfolio of declared standard-essential patents "complied with its FRAND commitment." McLeroy Decl., Ex. G ¶¶ 40-41. It does not seek any declaration that Apple actually infringes any of its patents, and specifically not the seven patents at issue here. Absent a finding that Apple actually infringes those patents, the Texas court cannot compel Apple to pay royalties. *See InterDigital*, 2014 WL 2206218, at *3 (no jurisdiction to issue declaratory judgment setting the FRAND rate because it was "unclear as to how [the court] could actually enforce" such a ruling). Thus, Ericsson's Texas DJ Action merely

---

[4] Ericsson also criticizes (Mot. 11) Apple's proposed royalty computation. But that is a merits question to be decided at later stage; it has no bearing on this Court's jurisdiction.

seeks an advisory opinion, which the Texas court lacks jurisdiction to issue. *See Ericsson, Inc. v. D-Link Sys.*, No. 10-cv-473, 2013 WL 4046225, at *21 (E.D. Tex. Aug. 6, 2013) (declining to set a worldwide RAND rate for Ericsson's standard-essential portfolio because court's determination "would have amounted to nothing more than an advisory opinion as to Ericsson's initial RAND license offer"), *aff'd in part and rev'd in part on other grounds*, 773 F.3d 1201 (Fed. Cir. 2014).[5] This case is, of course, different, since this Court would only determine a FRAND rate if it had already determined that Apple infringed one or more patents—a ruling that would necessarily bind Apple.

Thus, it is Ericsson's Texas DJ Action, not Apple's suit here, that constitutes a "tactical measure" or "procedural fencing." Mot. 15. And it is Ericsson, not Apple, that seeks "an advisory opinion" giving one party a "bargaining chip" in future licensing negotiations. *Id.* Because Ericsson's Texas DJ Action can resolve neither the patent infringement suit before this Court nor what Ericsson claims to be the parties' "larger actual controversy," it is not a sound basis to dismiss Apple's suit.[6]

### 2. This District Is The Better Venue To Resolve The Parties' Infringement Dispute

As discussed above, the Texas court lacks jurisdiction over Ericsson's Texas DJ Action, and that suit will not settle whether Apple infringes *any* of Ericsson's patents. However, even if this Court were to view the two cases as sufficiently overlapping, it should still retain jurisdiction because this case was filed first. "Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a

---

[5] Apple plans to move to dismiss Ericsson's Texas DJ Action for this and other reasons at the appropriate time.
[6] Ericsson also claims (Mot. 13) that the Court should consider the parties' history of negotiations when making its discretionary determination. Although the existence of "serious," "ongoing negotiations" between the parties is a relevant consideration, once the parties have "cut[] off negotiations," there is no sound basis for refusing to accept the declaratory judgment action. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814-15 (Fed. Cir. 1996). Ericsson offers no support for its assertion (Mot. 13) that the attenuated possibility that the parties may "resume negotiations"—a possibility that is nowhere alleged in the complaint, and that Ericsson's own proliferation of suits in Texas and the ITC undercuts—should factor into this Court's decision.

second action." *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982). Additionally, the Federal Circuit has instructed district courts facing this situation to consider "the convenience and suitability of competing forums" as with a motion to transfer venue under 28 U.S.C. § 1404(a). *Micron*, 518 F.3d at 904. In comparing the convenience of forums under § 1404(a), courts analyze a variety of factors including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The most relevant factors here include the parties' contacts with the forum, especially those relating to the cause of action, the availability of compulsory process for unwilling witnesses, and the ease of access to sources of proof. All point to this District as the more convenient venue.

The parties' contacts with this District are far more robust than with the Eastern District of Texas. Apple has maintained its headquarters in Cupertino, California since its founding in 1976. Declaration of Michael Jaynes ("Jaynes Decl."), ¶ 3. The bulk of Apple's operations are located in this District, including Apple's management and primary research and development facilities, which are located in or near Cupertino. *Id.* Although Ericsson Inc. is headquartered in the Eastern District of Texas, Ericsson also has a significant presence in this District. McLeroy Decl., Ex. G ¶ 11. In a 2014 press release, Ericsson indicated that it has approximately 2,000 staff in the Northern District of California and intends to construct a new campus in Santa Clara to build on its "growing investments in Silicon Valley." *See* Selwyn Decl., Ex. 8 (May 28, 2014 Ericsson Press Release).

As for third-party witnesses, the baseband processors within Apple's products that support LTE functionality are supplied by Qualcomm, which is based in San Diego. Jaynes Decl., ¶ 5; FAC ¶ 33. Qualcomm witnesses are likely to play an important role in the determination whether Apple's products infringe, and this Court (but not the Eastern District of Texas) may subpoena them for trial. *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810,

821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state[.]").

Likewise, a majority of the relevant evidence is in the Northern District of California. Where, as here, determination of patent infringement requires analysis of the accused infringer's products, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Apple maintains the source code for the baseband chips responsible for LTE functionality at or near its Cupertino offices. Jaynes Decl., ¶ 6. Thus, the vast majority of documents that are relevant to the question whether Apple's products infringe Ericsson's patents are located in the Northern District of California.

Because Ericsson does not offer a sound basis for this Court to decline to hear Apple's first-filed suit, this Court should exercise jurisdiction over this case.

**IV. CONCLUSION**

Ericsson's motion to dismiss should be denied.

Dated: March 12, 2015

Respectfully submitted,

WILMER CUTLER PICKERING
  HALE AND DORR LLP

*/s/ Mark D. Selwyn*
Mark D. Selwyn
*Attorneys for Plaintiff Apple Inc.*