JOSEPH J. MUELLER (admitted *pro hac vice*)
joseph.mueller@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, a Swedish Corporation, and ERICSSON, INC., a Delaware Corporation,<br><br>  Defendants. | Case No. 3:15-cv-00154-JD<br><br>**APPLE, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS**<br><br>Judge: Hon. James Donato<br>Date: April 15, 2015<br>Time: 10:00 am<br>Place: Courtroom 11 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ..............................................................................................................1

II.    BACKGROUND ................................................................................................................2

III.    ARGUMENT......................................................................................................................5

    A.    The Forum-Selection Clause In The License Does Not Apply To This Suit ......... 5

        1.    The Parties Did Not Intend To Require Litigation Of This U.S. Patent Infringement Suit In ███ ..................................................................... 5

        2.    Courts Have Rejected Similar Efforts To Distort The Language Of A Forum-Selection Clause............................................................................. 9

        3.    Ericsson's Jurisdictional Arguments Confirm That This Suit Does Not Arise Under Or In Connection With The License Or NDA ..................... 11

    B.    Even If Either Forum-Selection Clause Could Be Read To Cover This Action, The Motion To Dismiss Should Still Be Denied .................................................. 11

    C.    In The Alternative, Apple Should Be Granted Leave To Amend Its Complaint .. 14

IV.    CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arregquin v. Global Equity Lending, Inc.*,
    2008 WL 4104340 (N.D. Cal. Sept. 2, 2008) ........................................................................10

*Atlantic Marine Construction Co. v. United States District Court*,
    134 S. Ct. 568 (2013) ..................................................................................................... *passim*

*CHS Europe S.A. v. El Attal*,
    2010 WL 3000059 (S.D.N.Y. July 22, 2010) ........................................................................13

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
    2008 WL 4833001 (S.D.N.Y. Nov. 5, 2008) ...........................................................................6

*Docksider, Ltd. v. Sea Tech., Ltd.*,
    875 F.2d 762 (9th Cir. 1989) .................................................................................................10

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ........................................................................................5, 6, 11

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) .................................................................................................8

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
    817 F.2d 75 (9th Cir. 1987) ...................................................................................................10

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ...................................................................................................5

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ........................................................................................................11, 12, 14

*Manetti-Farrow, Inc. v. Gucci American, Inc.*,
    858 F.2d 509 (9th Cir. 1988) ................................................................................................5, 9

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
    24 F.3d 1368 (Fed. Cir. 1994) ................................................................................................12

*Martinez v. Bloomberg LLP*,
    740 F.3d 211 (2d Cir. 2014) ...............................................................................................5, 10

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    134 S. Ct. 843 (2014) ...............................................................................................................7

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) ...............................................................................................................12

Apple Inc.'s Opposition to Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds
Case No. 3:15-cv-00154-JD

ii

*Petersen v. Boeing Co.*,
  715 F.3d 276 (9th Cir. 2013) ...........................................................................................5, 10

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007)....................................................................................................10

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)................................................................................................................12

*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
  680 F.2d 627 (9th Cir. 1982) ....................................................................................................5

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003)......................................................................................................13

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008).................................................................................................7

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)..................................................................................................................8

*Stein Assocs., Inc. v. Heat & Control, Inc.*,
  748 F.2d 653 (Fed. Cir. 1984).................................................................................................12

*Texas Instruments Inc. v. Tessera, Inc.*,
  231 F.3d 1325 (Fed. Cir. 2009).................................................................................................5

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007)........................................................................................2, 12, 13

*Wiwa v. Royal Dutch Petrol. Co.*,
  226 F.3d 88 (2d Cir. 2000)......................................................................................................13

**Other Cases**

*Lucasfilm Ltd. v. Ainsworth*,
  [2011] UKSC 39 (appeal taken from Eng.) .....................................................................13, 14

*Premium Nafta Products Ltd. v. Fili Shipping Co.*,
  [2007] UKHL 40 (appeal taken from Eng.)..........................................................................8, 9

**Federal Statutes**

28 U.S.C.,
  § 1338(a) .................................................................................................................................12
  § 1404(a) .................................................................................................................................10

35 U.S.C.
  § 154(a)(1) ..............................................................................................................................12

## I. INTRODUCTION

Apple Inc. seeks a declaratory judgment of non-infringement under U.S. law with respect to seven U.S. patents that Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") have declared allegedly essential for the practice of the LTE wireless communication standard. ECF No. 11-4 (First Amended Complaint ("FAC")) ¶¶ 13, 54-64. Contrary to Ericsson's assertion, the "material element[s]" of those non-infringement claims are a matter of U.S. patent law, not ▬▬▬ contract law, and should be decided by a U.S. court. ECF No. 26 (Defs.' Mot. to Dismiss on *Forum Non Conveniens* Grounds ("FNC Mot.")) at 3. The forum-selection clause in the parties' now expired license agreement does not require otherwise: Apple's claims do not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ of the license agreement, ECF No. 24-11 ("Alfalahi Decl."), ¶ 11, and therefore Apple's claims do not come within the ambit of the forum-selection clause.

Ericsson stresses the supposedly "mandatory" language of the forum-selection clause and the Supreme Court's teaching in *Atlantic Marine Construction Co. v. United States District Court*, 134 S. Ct. 568 (2013), that a contractual choice of forum should usually be given effect. FNC Mot. at 1, 5-11. But that argument fails to establish a crucial premise. Whether or not the clause is enforceable, it does not cover this particular suit. Ericsson nowhere explains why the parties would have agreed in the license that future disputes between them as to ***infringement of U.S. patents*** ▬▬▬▬▬▬▬▬▬▬▬▬ would be decided by the courts of ▬▬▬. To the contrary, the plain language of the forum-selection clause limits its scope to disputes actually connected to ▬▬▬▬▬▬▬▬▬▬▬ of the license. Alfalahi Decl., ¶ 11. Although Apple relies in part on a paragraph of the license to confirm that there is an actual controversy between the parties with respect to the seven patents-in-suit (FAC ¶¶ 39-40), that does not somehow transform Apple's suit from a declaratory judgment action over non-infringement of ▬▬▬ patents into a dispute about the meaning or performance of the license.

Finally, even if the forum-selection clause could be read to cover this suit, Ericsson's motion to dismiss should still be denied. *Atlantic Marine* makes clear that a court considering a *forum non conveniens* motion based on a forum-selection clause must still consider the

traditional public-interest factors weighing against dismissal in favor of a foreign forum. 134 S. Ct. at 581-82 & n.6. Those factors strongly favor the United States as the forum for this dispute because foreign courts are not a proper forum for U.S. patent litigation. As the Federal Circuit has explained, "[f]oreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity" in U.S. patent law. *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007).

## II. BACKGROUND

In January 2008, shortly after Apple introduced the first iPhone, Apple and Ericsson entered into a cross-license agreement covering many Ericsson patents that Ericsson had declared to be essential to wireless communication standards the iPhone supported. FAC ¶ 2. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ¶ 54. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Alfalahi Decl., ¶ 10 (emphasis added); FAC ¶ 39. The license also contained a section on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[REDACTED]

Alfalahi Decl., ¶ 11.

During the term of the license, Apple revolutionized the cellular industry by leading a transformation of cellular devices from simple mobile phones into complex portable computers with myriad functionalities. FAC ¶¶ 3, 30. Apple also virtually created the market for tablet computers with the release of the iPad. Id. ¶¶ 3, 31. The enormous commercial success of Apple's iPhone and iPad products is due to many Apple innovations in both technical and design features. Id. ¶ 32. Apple's products also contain components and technologies from third parties, including Qualcomm baseband processors. Id. The baseband processors perform calculations and procedures involved in common cellular communication protocols and thereby permit Apple's devices to support those protocols, which are incorporated into industry standards. Id. ¶ 33. In particular, some Apple products contain baseband processors that support the LTE standard [REDACTED] Id. ¶ 13 n.1.

On January 12, 2015, Apple filed its initial complaint, seeking a declaratory judgment of non-infringement with respect to seven U.S. patents that Ericsson has declared to be essential to the LTE standard, but which Apple maintains are not in fact essential to that standard and are not infringed by Apple's devices. ECF No. 1 (Compl.) ¶¶ 13, 48-57. Apple also sought, in the alternative, a declaratory judgment that, if the specific patents-in-suit were found to be LTE-essential and infringed, Ericsson is contractually obligated (pursuant to the Intellectual Property Rights Policy of the European Telecommunications Standards Institute, *not* Ericsson's now-expired license with Apple) to license each at a fair, reasonable, and non-discriminatory ("FRAND") rate that is consistent with U.S. patent law. Id. ¶¶ 6-7. Apple alleged that an actual controversy existed between the parties as to infringement of the patents-in-suit because, among other things, Ericsson had declared the patents to be essential to the LTE standard and had asserted the very same patents in U.S. litigation against other parties. Id. ¶¶ 35-39, 48. Apple also pointed out that the parties' license would imminently expire, [REDACTED]

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶¶ 10, 33-34, 48. Critically here, Apple's initial complaint did *not* allege any breach of the license agreement or otherwise seek an interpretation of the license.

The license expired on January 14, 2015. FAC ¶ 10. That day, Ericsson sued Apple in the Eastern District of Texas for a declaratory judgment that Ericsson had offered Apple a portfolio-wide license that complied with its FRAND commitments, though Ericsson did not seek to prove that Apple actually infringed any Ericsson patent. *Id.* ¶ 14. The following day, Apple filed its First Amended Complaint in this matter. In addition to the facts supporting a concrete controversy pleaded in the original complaint—including the affirmative targeting of Apple products for future litigation in the ▓▓▓▓▓▓▓▓▓▓ (*id.* ¶¶ 39-40, 54)—Apple further alleged that Ericsson's complaint in the later-filed Texas suit discussed the parties' confidential licensing negotiations in violation of a non-disclosure agreement ("NDA"). FAC ¶¶ 15-16. In those discussions, which Apple had scrupulously avoided mentioning in its original complaint, Ericsson accused Apple of infringing each of the seven patents for which Apple seeks a declaratory judgment of non-infringement in this action, thus reinforcing that there is an actual controversy between the parties. *Id.* ¶¶ 18-19, 55.

The NDA contains the following provision on resolving disputes:



ECF No. 24-9, McLeroy Decl., Ex. D (NDA ¶ 8). Although Apple's amended complaint described Ericsson's violation of the NDA, it did not assert any cause of action for breach of the agreement or otherwise seek an interpretation of the NDA.

Ericsson then filed the instant motion, seeking to turn references in the First Amended Complaint to the license and the NDA into a reason to escape the Court's jurisdiction over

Apple's request for a declaration of noninfringement of U.S. patents under U.S. law. For the reasons stated herein, the motion should be denied.

## III. ARGUMENT

### A. The Forum-Selection Clause In The License Does Not Apply To This Suit

There is no indication in the language of the forum-selection clause or anywhere else in the Apple-Ericsson license agreement that the parties intended that a suit such as this one—over the infringement of U.S. patents—would be heard in the ▓▓▓ courts. That conclusion is bolstered by consideration of other cases that have rejected similar efforts to stretch a forum-selection clause beyond what the parties actually agreed. Indeed, Ericsson's parallel motion to dismiss this suit on jurisdictional grounds (ECF No. 24) invokes only substantive U.S. law and thus confirms that even Ericsson does not think the case genuinely presents questions concerning the interpretation of the license under ▓▓▓ law.

#### 1. The Parties Did Not Intend To Require Litigation Of This U.S. Patent Infringement Suit In ▓▓▓

The "scope and enforcement of a forum selection clause is a matter of contract," and as such "the intent of the parties governs." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982). Federal law governs both the enforceability and the "interpretation of forum selection clauses." *Manetti-Farrow, Inc. v. Gucci American, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). That is true even when the parties' contract purports to require the application of some other body of law. *See, e.g., Doe 1 v. AOL LLC*, 552 F.3d 1077, 1078, 1081-82 (9th Cir. 2009) (per curiam) (applying "federal law to the interpretation of the forum selection clause," despite a Virginia choice-of-law clause).[1] When "interpret[ing] a contract under federal

---

[1] Ericsson's reliance on ▓▓▓ law is thus misplaced. FNC Mot. at 6-7 & n.3. The Ninth Circuit has squarely held that federal law governs. *Manetti-Farrow*, 858 F.2d at 513; *see also, e.g., Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (per curiam); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000); *cf. Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2009) (regional circuit law applies for "[g]eneral contract interpretation" of a forum-selection clause). Those holdings are controlling over the dicta Ericsson cites and over the contrary views of the Second Circuit in *Martinez v. Bloomberg LLP*, 740 F.3d 211, 222 (2d Cir. 2014), where the court specifically contrasted its approach to the Ninth Circuit's—a point Ericsson fails to acknowledge despite relying extensively on the case.

law," federal courts "look for guidance 'to general principles for interpreting contracts.'" *Id.* at 1081. "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Id.* (internal quotation marks and citation omitted).

Here, the plain language of the license indicates that the parties did not intend to require suits over the infringement of U.S. patents—especially ▮▮▮ patents—to be brought in ▮▮▮. The forum-selection clause refers to submitting ▮▮▮ to ▮▮▮ Alfalahi Decl., ¶ 11. But that broad language is importantly qualified: In the preceding sentence, the parties agree that all disputes ▮▮▮ of the license will first be discussed among executives. *Id.* (emphasis added). Only if ▮▮▮ is not settled—*i.e.*, ▮▮▮—does the forum-selection clause even apply. *Id.* (emphasis added).

Apple's action for a declaratory judgment of non-infringement as to seven ▮▮▮ plainly does not arise out of interpretation or performance of the license. "To 'arise' out of means 'to originate from a specified source.'" *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (citing dictionaries). Apple's claims do not originate from the license, but rather from the patent laws of the United States. Resolution of the merits of those claims will depend on construing the claims of the patents and determining whether those claims are infringed by the components in Apple's devices—not on any question concerning the interpretation or performance of the license under ▮▮▮ law. Likewise, the phrases "relating to" and "in connection with" generally mean that there is "an established or discoverable relationship" between two things, such as a "causal connection." *Id.* at 7-8 (internal quotation marks omitted). There is no such connection here. Apple's claims for a declaratory judgment of non-infringement do not have any established relationship to the license agreement, ▮▮▮ Had the parties intended that any suits concerning infringement of the licensed or unlicensed patents be

brought in ▮▮▮ they would have so specified. They did not. Moreover, when Ericsson filed its own later suit over allegedly LTE-essential patents, it brought the action in Texas, not ▮▮▮—thus further confirming that the parties did not intend such litigation to be covered by the forum-selection clause.

Ericsson asserts that the forum-selection clause is triggered because Ericsson disagrees with the allegation in the complaint that the ▮▮▮ in the license "constitute[d] an affirmative act targeting Apple's products," and further that interpretation of the ▮▮▮ is "a material element of Apple's claim for declaratory relief" because Apple relied on the clause in part to establish an actual controversy between the parties. FNC Mot. at 3-4, 7-8. That argument fails on both fronts.

*First*, whether the then-imminently expiring ▮▮▮ constituted an affirmative act by Ericsson targeting Apple's products for infringement litigation under Ericsson's supposedly ▮▮▮ patents is properly a question of federal declaratory judgment law, which will not require the Court to interpret or construe the license under ▮▮▮ law. There is no dispute among the parties over what the ▮▮▮ actually means; the only question is its effect on the existence of a live controversy for purposes of U.S. declaratory judgment jurisdiction. Indeed, Ericsson tacitly concedes that point by discussing *only* declaratory judgment case law when disputing whether the ▮▮▮ constituted affirmative targeting. FNC Mot. at 3 (citing, *e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014)); *id.* at 7-8 (citing *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008)); *see infra* p. 11.[2]

*Second*, even if determining the effect of the ▮▮▮ might in some attenuated sense require interpreting it, Apple's non-infringement claims still would not ▮▮▮ or ▮▮▮ the interpretation or performance of the license within the

---

[2]   Apple does not "necessarily contend" that it could have brought the same declaratory judgment action at any time. FNC Mot. at 2-3. Apple initiated this action on the eve of the expiration of the ▮▮▮ after Ericsson accused it of infringing the patents-in-suit, and those are important factors in this Court's jurisdiction. See Apple's Opp'n to Ericsson Mot. to Dismiss First Am. Compl.

meaning of the forum-selection clause. The ▮▮▮▮ is relevant only as one of a number of facts demonstrating an actual controversy between the parties—including, for example, Ericsson's designation of the patents-in-suit as essential to the LTE standard and Ericsson's assertion of those same patents against other parties. FAC ¶¶ 41-45, 54. That is especially true in light of the allegation in the First Amended Complaint that Ericsson has in fact accused Apple of infringing the seven patents for which Apple now seeks a declaration of non-infringement. *Id.* ¶¶ 19, 55. The Court could find an actual controversy without considering the ▮▮▮▮ at all.

    Ericsson suggests that doing so would permit Apple to "disavow" the affirmative-targeting allegations of the original complaint. FNC Mot. at 11. But the First Amended Complaint is the operative pleading. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) ("courts look to the amended complaint to determine jurisdiction"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (similar). The First Amended Complaint's allegation that Ericsson accused Apple of infringing the specific patents-in-suit renders any putative disagreement Ericsson may have about the ▮▮▮▮ academic. Recognizing that point would not transgress any rule about admissions in the pleadings (FNC Mot. at 12), as Apple stands by all the allegations in each complaint. Rather, the additional jurisdictional allegations of the First Amended Complaint merely confirm that this suit does not ▮▮▮▮ or ▮▮▮▮ any genuine dispute about the interpretation of the expired license.

    Finally, while the ▮▮▮▮ case Ericsson cites (FNC Mot. at 6-7) is inapplicable to interpreting to the parties' forum-selection clause, which is a question of federal law (*supra* n.1), the result is the same even under that case. In *Premium Nafta Products Ltd. v. Fili Shipping Co.*, the House of Lords considered whether an agreement to arbitrate disputes "arising under" a contract required arbitration of a claim that the contracts were procured by bribery. [2007] UKHL 40, [1]-[3] (appeal taken from Eng.).[3] The court concluded that the parties intended to arbitrate not only disputes about the interpretation of the contract but also its validity. *Id.* at [15]

---

[3]     A copy of the decision is available at http://www.publications.parliament.uk/pa/ld200607/ldjudgmt/jd071017/ship.pdf.

(contract "contains nothing to exclude disputes about the validity of the contract" from arbitral issues); *id.* at [27]-[28] (similar). Even assuming that the logic of that decision should carry over from arbitration agreements to forum-selection clauses, it does not help Ericsson here. Unlike the bribery claims in *Nafta*, Apple's claims do not challenge the validity of the license or otherwise require this Court to consider its construction or the parties' performance during its term. Rather, Apple's claims arise from a completely different body of *American* statutory law, namely the U.S. Patent Act.

For similar reasons, the forum-selection clause in the NDA cannot be read to cover Apple's claims either. Contrary to Ericsson's assertion (FNC Mot. at 4), Apple is not "in essence" asking for a determination by this Court that Ericsson breached the NDA, nor is Apple asking the Court to determine the proper remedy for Ericsson's breach (though Apple reserves the right to seek appropriate remedies for that breach). Instead, Apple seeks a declaration that it does not infringe seven patents that Ericsson has declared, wrongly, to be essential to the LTE standard and that Ericsson has accused Apple of infringing. FAC ¶¶ 54-64. Those claims notably *preceded* Ericsson's Texas DJ Action and any disagreement between the parties concerning the NDA and thus could hardly be said to "aris[e] from" or "in connection to" it. Apple filed the original complaint on January 12, 2015; it was only on January 14 that Ericsson filed its follow-on Texas DJ Action, in which Ericsson described the parties' confidential licensing negotiations. *See supra* pp. 3-4.

      2.     **Courts Have Rejected Similar Efforts To Distort The Language Of A Forum-Selection Clause**

The complete absence of any indication that the parties intended for litigation over infringement of unlicensed U.S. patents to proceed in the courts of ■■■■ is dispositive. That conclusion is bolstered by considering the approach other courts have taken to efforts to extend forum-selection clauses to cover non-contract claims. For example, in *Manetti-Farrow*, the Ninth Circuit affirmed a *forum non conveniens* dismissal of various business torts on the basis of a forum-selection clause in the parties' dealership agreement, but only because the torts "require[d] interpretation of the contract" and "cannot be adjudicated without analyzing whether

the parties were in compliance with the contract." 858 F.2d at 514. Following that approach in *Petersen v. Boeing Co.*, the Ninth Circuit reversed and remanded with instructions to consider whether resolution of the plaintiff's tort claims would necessarily require "interpretation of the contract" containing a forum-selection clause. *Petersen,* 715 F.3d at 283 & n.7; *see also, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 381, 390-91 (2d Cir. 2007) (copyright claims not within scope of forum-selection clause in recording contract); *Arregquin v. Global Equity Lending, Inc.*, 2008 WL 4104340, at *4 (N.D. Cal. Sept. 2, 2008) (California Labor Code claims not within scope of forum-selection clause in employment agreement). Here, Apple's declaratory judgment claims can and will be adjudicated without analyzing whether the parties were in compliance with the license, which does not speak to the patent infringement dispute Apple has put before the Court.

These cases stand in sharp contrast to the examples Ericsson offers, which largely involve claims for breach of the very agreement containing the forum-selection clause. *E.g.*, *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76 (9th Cir. 1987) (breach of supply contract); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) (breach of distribution agreement); *cf. Martinez*, 740 F.3d at 225-27 (employment discrimination claims covered by forum-selection clause in employment agreement). Apple does not allege any cause of action for breach of the license or the NDA, nor does it pursue any claims based on duties or rights created by those agreements.

Finally, *Atlantic Marine* is not to the contrary. FNC Mot. at 8-9. The Supreme Court there held that a forum-selection clause should be enforced under a motion for discretionary transfer of venue, 28 U.S.C. § 1404(a). 134 S. Ct. at 578-79; *see also id.* at 580 (explaining that the "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum," where § 1404(a) is unavailable, "is through the doctrine of *forum non conveniens*"). But in that case, the scope of the forum-selection clause was undisputed, and both parties agreed that it covered the breach-of-contract claims at issue. *See, e.g.*, *id.* at 575-76; Pet. Br. at 4, *Atlantic Marine*, No. 12-929 (U.S. June 17, 2013). Here, by contrast, Apple does not agree that the forum-selection clauses in the license or the NDA cover a dispute over infringement of

▓▓▓ patent claims, and indeed that is the only plausible conclusion.

### 3. Ericsson's Jurisdictional Arguments Confirm That This Suit Does Not Arise Under Or In Connection With The License Or NDA

The gist of Ericsson's motion is that Apple's invocation of the ▓▓▓ as a fact demonstrating an actual controversy between the parties will necessarily require this Court to consider questions of license interpretation. But that theory is belied by Ericsson's own separate challenge to the Court's jurisdiction. In that motion, Ericsson argues that the Court lacks subject-matter jurisdiction because there was no "real and substantial" dispute between the parties at the time Apple filed suit. ECF No. 24 at 9-10. Nowhere in its motion addressing subject-matter jurisdiction does Ericsson raise any putative disagreement about the interpretation or construction of the license under ▓▓▓ law. Ericsson itself thus recognizes that the "interpretation" dispute it posits in its *forum non conveniens* motion is in fact nonexistent and certainly has no bearing on whether this Court has jurisdiction to resolve Apple's declaratory judgment action.

### B. Even If Either Forum-Selection Clause Could Be Read To Cover This Action, The Motion To Dismiss Should Still Be Denied

Neither the license nor the NDA suggests that the parties intended for Apple's claims over the non-infringement of ▓▓▓ U.S. patents to be heard in ▓▓▓ Ericsson's motion should be denied on that basis. Alternatively, even if the Court were to conclude that the agreements did envision such a suit proceeding in ▓▓▓ enforcement of the forum-selection clauses should still be denied as unreasonable.

As Ericsson acknowledges (FNC Mot. at 9), the Court must still consider public-interest factors in determining whether to enforce a forum-selection clause. *See Atlantic Marine*, 134 S. Ct. at 582 n.6; *e.g., Doe 1*, 552 F.3d at 1083-84 (refusing to enforce forum-selection clause as violative of state public policy). In particular, federal courts have long recognized that the "selection of a remote forum to apply differing foreign law to an essentially American controversy might contravene an important public policy of the forum." *M/S Bremen v. Zapata*

*Off-Shore Co.*, 407 U.S. 1, 17 (1972); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981) (noting the "local interest in having localized controversies decided at home").

There is a strong federal policy favoring the adjudication of U.S. patent infringement disputes in the federal courts, which have exclusive jurisdiction over such matters. 28 U.S.C. § 1338(a). U.S. patent law "operates only domestically and does not extend to foreign activities," and a U.S. patent "confers exclusive rights in an invention within the United States." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) (alterations and internal quotation marks omitted; citing 35 U.S.C. § 154(a)(1)). That principle is reciprocal: Patents issued by foreign governments are limited to rights outside the United States, in the issuing country. For that reason, federal courts ordinarily decline to entertain actions for infringement of *foreign* patents. *See, e.g.*, *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1376 (Fed. Cir. 1994) (affirming *forum non conveniens* dismissal of claims for infringement of Japanese patents, out of "concerns respecting international comity," where the "matter involv[ed] a Japanese patent, Japanese law, and acts of a Japanese defendant in Japan"); *Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984) ("Only a British court, applying British law, can determine … infringement of British patents.").

The Federal Circuit accordingly confirmed the strong territorial policy favoring adjudication of patent infringement claims only in the courts of the issuing country, holding that a U.S. district court lacks discretion to exercise supplemental jurisdiction over claims for infringement of foreign patents. *Voda*, 476 F.3d at 900. As the court explained, the international patent treaties to which the United States is a party do not "contemplate[] or allow[] one jurisdiction to adjudicate patents of another." *Id.* at 899. Adjudication of foreign patent rights also threatens principles of international comity: "[A] patent right to exclude only arises from the legal right granted and recognized by the sovereign within whose territory the right is located. It would be incongruous to allow the sovereign power of one to be infringed or limited by another sovereign's extension of its jurisdiction." *Id.* at 902. And patent cases are often adjudicated by specialized "judges, resources, and procedures," which would be undermined by foreign consideration of infringement questions. *Id.* at 902. Finally, although the specific

question presented in *Voda* concerned the power of U.S. courts to hear a claim for infringement of patents issued by foreign countries (including ███████), the court explained that the same principles would bar *foreign* consideration of U.S. patent infringement actions: "Congress unified our patent jurisprudence by creating the Federal Circuit and granting exclusive jurisdiction of appeals on patent claims. Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude forum shopping." *Id.* at 903 (citations omitted).

The public interest in having Apple's claims for non-infringement of seven specific U.S. patents adjudicated within the U.S. patent system, as Congress intended, would require the forum-selection clauses in the license and NDA to be set aside even if they were applicable (which they are not). Ericsson seeks to avoid this result by mischaracterizing the parties' dispute as one over "interpretation of their global license agreement," "worldwide in scope." FNC Mot. at 10. But Apple's suit nowhere seeks the resolution of any such worldwide controversy. It is Ericsson, not Apple, that wrongly seeks to force a license of an entire portfolio of allegedly LTE-essential patents without specific consideration of whether any patent in the portfolio is actually essential or infringed. FAC ¶¶ 46-53; *see generally* Apple's Opp'n to Ericsson Mot. to Dismiss. Apple's suit is laser-focused on specific U.S. patents and should be heard in the courts of the United States.

None of the authorities Ericsson cites supports a contrary result. FNC Mot. at 9-10. The cases praising ███████ as an alternative forum did not involve any U.S. intellectual property rights, let alone patents. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67-68 (2d Cir. 2003) (alleged financial fraud); *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 91-92 (2d Cir. 2000) (Alien Tort Claims Act; reversing *forum non conveniens* dismissal); *CHS Europe S.A. v. El Attal*, 2010 WL 3000059, at *1 (S.D.N.Y. July 22, 2010) (action to enforce arbitration award). Ericsson also asserts that there is "no apparent impediment" to consideration of claims for infringement of U.S. patents (or a declaratory judgment of non-infringement) in the ███████ courts, but it offers no actual example of such a suit, and Apple is aware of none. FNC Mot. at 10 n.7. In *Lucasfilm Ltd. v. Ainsworth*, the U.K. Supreme Court held that an English court may

consider a claim for infringement of U.S. *copyright*, but the Court emphasized that this was a departure from a century-old rule against the justiciability of foreign property rights, including specifically foreign patents.  [2011] UKSC 39, [60]-[68], [104]-[105] (appeal taken from Eng.); *see also id.* at [96], [107] (expressly overruling 1991 decision).[4]

The complete absence of any example of ▅▅▅ courts adjudicating claims for infringement or non-infringement of U.S. patents counsels strongly in favor of retaining such a suit in the United States. Moreover, the novelty of bringing a claim for non-infringement of U.S. patents in the ▅▅▅ courts—if that is even possible—confirms that the parties never intended to require it. Cf. *Bremen*, 407 U.S. at 17 (the "remoteness of the forum might suggest … that the parties did not have the particular controversy in mind when they made their agreement"). The parties entered into the license in 2008, well before *Lucasfilm*'s break with precedent, and thus presumably negotiated the agreement in view of the settled rule that ▅▅▅ courts would not entertain suits over the infringement of foreign intellectual property rights.

### C. In The Alternative, Apple Should Be Granted Leave To Amend Its Complaint

If the Court determines that the references in Apple's First Amended Complaint to the parties' license or NDA somehow bring the suit within the ambit of the forum-selection clause in either agreement, Apple respectfully requests leave to amend its pleading to omit those allegations. Ericsson has accused Apple of infringing the seven patents-in-suit and has previously asserted those patents in litigation—facts that are more than sufficient to demonstrate an actual controversy about infringement even without any reference to the affirmative targeting of Apple's products in the ▅▅▅▅▅. Accordingly, leave to amend the complaint would easily dispose of Ericsson's objection here.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Ericsson's motion to dismiss the First Amended Complaint on *forum non conveniens* grounds. In the alternative, the Court should

---

[4]   A copy of the decision is available at https://www.supremecourt.uk/decided-cases/docs/UKSC_2010_0015_Judgment.pdf

grant Apple leave to amend the complaint.

Dated:  March 12, 2015

Respectfully submitted,

WILMER CUTLER PICKERING
  HALE AND DORR LLP

*/s/ Mark D. Selwyn*
Mark D. Selwyn
*Attorneys for Plaintiff Apple Inc.*