GREGORY P. STONE (Bar No. 78329)
gregory.stone@mto.com
STEVEN M. PERRY (Bar No. 106154)
steven.perry@mto.com
BENJAMIN J. HORWICH (Bar No. 249090)
ben.horwich@mto.com
ZACHARY M. BRIERS (Bar No. 287984)
zachary.briers@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

COURTLAND L. REICHMAN (Bar No. 268873)
creichman@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Telephone:     (650) 394-1400
Facsimile:     (650) 394-1422

MIKE MCKOOL, JR. (*pro hac vice*)
mmckool@mckoolsmith.com
DOUGLAS A. CAWLEY (*pro hac vice*)
dcawley@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:     (214) 978-1000
Facsimile:     (214) 978-4044

*Attorneys for Ericsson Inc. and*
*Telefonaktiebolaget LM Ericsson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>              Plaintiff,<br><br>      vs.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON, INC.,<br><br>              Defendants. | Case No. 3:15-cv-00154-JD<br><br>**ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIMS**<br><br>Judge:    Hon. James Donato |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson"), by and through the undersigned counsel, hereby respond to Plaintiff Apple Inc.'s ("Apple") First Amended Complaint For Declaratory Judgment ("FAC") as follows:

**PRELIMINARY STATEMENT**

Ericsson's investigation and discovery regarding the allegations made by Apple in the FAC, and Ericsson's defenses thereto, is ongoing.  While Ericsson files this Answer to the best of its knowledge and ability, Ericsson reserves the right to supplement or amend this Answer to include additional defenses and/or counterclaims that are discovered during the course of this action.  To the extent Ericsson does not specifically admit an allegation, at this time Ericsson intends to generally deny such allegation.

**NATURE OF THE ACTION**

1.      To the extent the allegations of Paragraph 1 consist of legal conclusions, they require no answer from Ericsson.

2.      Ericsson admits that Apple and Ericsson had a license agreement that expired on January 14, 2015 ("the License Agreement"), which granted Apple a license under certain of Ericsson's patents.  Ericsson admits that the License Agreement was executed between Apple and Ericsson in January 2008.  On information and belief, Ericsson admits that Apple began selling the iPhone in the United States in 2007, and that Apple began selling the iPad in the United States in 2010.

3.      To the extent the allegations in Paragraph 3 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

4.      Ericsson denies that it seeks to exploit its patents to take the value of innovations unrelated to Ericsson's intellectual property.  To the extent the remaining allegations in Paragraph 4 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

5.      Ericsson denies that it seeks excessive royalties or that it seeks to appropriate the value added by innovations unrelated to Ericsson's intellectual property.  To the extent the

remaining allegations in Paragraph 5 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

6.     To the extent the allegations in Paragraph 6 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

7.     To the extent the allegations in Paragraph 7 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

8.     Ericsson denies that it seeks excessive royalties or that it seeks to appropriate the value added by innovations unrelated to Ericsson's intellectual property.  Ericsson denies that it has made improper royalty demands.   To the extent the remaining allegations in Paragraph 8 consist of legal conclusions,  they require no answer from Ericsson.

9.     Ericsson admits that it has submitted declarations regarding certain intellectual property rights to the European Telecommunications Standards Institute ("ETSI") pursuant to ETSI's Intellectual Property Rights Policy ("IPR Policy"), which requires ETSI members to submit declarations for intellectual property rights owned by the member that may be or may become essential to standards under consideration by ETSI.  To the extent the remaining allegations in Paragraph 9 consist of legal conclusions, they require no answer from Ericsson.

10.     Ericsson admits that the License Agreement between Ericsson and Apple included a provision under which ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████.  Ericsson admits that the License Agreement did not ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████.  Ericsson admits that Apple's exposure for infringement of Ericsson's patents continues to increase every day, as Apple's sales of infringing products continue.  Ericsson denies that its royalty demands to Apple were improper. Ericsson further denies ███████████████████ reflected an affirmative act by Ericsson to target Apple's products that support LTE.

11.     Ericsson admits that it has asserted certain of its patents, including the Patents-in-Suit, in litigation against companies other than Apple.  Ericsson denies that the patents it asserted

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1    in other litigation represent what Ericsson considers to be its strongest patents.  Ericsson denies

2    that the Patents-in-Suit are not essential to LTE.  Ericsson denies that the Patents-in-Suit are not

3    infringed by Apple.  To the extent the remaining allegations in Paragraph 11 consist of legal

4    conclusions, they require no answer from Ericsson.

5        12.    Ericsson admits that, at the time Apple filed its Complaint in this action (the

6    "Original Complaint"), the parties disagreed on the FRAND terms and conditions for a license to

7    Ericsson's entire portfolio of standard-essential patents.  Ericsson denies that the parties disputed

8    whether Apple was accruing royalties to Ericsson.  To the extent the remaining allegations in

9    Paragraph 12 are legal conclusions, they require no answer from Ericsson.

10       13.    To the extent the allegations in Paragraph 13 are not asserted against Ericsson or

11   contain legal conclusions, they require no answer from Ericsson.

12       14.    Ericsson admits that Apple filed the Original Complaint on January 12, 2015.

13   Ericsson admits that, on January 14, 2015, Ericsson filed a complaint seeking a declaration that

14   Ericsson had complied with its FRAND commitments in its negotiations and offers to Apple.

15   Ericsson admits that, also on January 14, 2015, Ericsson filed an amended complaint.  Ericsson

16   denies that its complaint or amended complaint improperly made public confidential discussions

17   between Ericsson and Apple.  To the extent the remaining allegations in Paragraph 14 are legal

18   conclusions, they require no answer from Ericsson.

19       15.    Ericsson denies that, in bringing its complaint and/or amended complaint, it

20   breached a Non-Disclosure Agreement (NDA) between Apple and Ericsson.  Ericsson admits that

21   Paragraph 15 accurately quotes the NDA.  To the extent the remaining allegations in Paragraph 15

22   are legal conclusions, they require no answer from Ericsson.

23       16.    Ericsson denies that its complaint and/or amended complaint referred to

24   confidential statements made by Apple to Ericsson that were protected by the NDA.   Ericsson

25   further denies that the basis for its assertion of declaratory judgment jurisdiction is confidential

26   statements made by Apple.  Ericsson admits that Paragraph 16 accurately quotes Ericsson's

27   complaint.  To the extent the remaining allegations in Paragraph 16 are legal conclusions, they

28   require no answer from Ericsson.

17.     To the extent the allegations in Paragraph 17 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

18.     Ericsson denies that it breached the NDA.  Ericsson denies that the factual characterizations contained in its complaint and amended complaint are not accurate.  On information and belief, Ericsson denies that Apple is willing to pay FRAND royalties for valid and essential patents that it is infringing.  Ericsson denies that Apple proposed renewing the parties' License Agreement in accord with current patent law principles governing patent valuation and consistent with the parties' FRAND commitments.  To the extent the remaining allegations in Paragraph 18 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

19.     Ericsson denies that it breached the NDA.  Ericsson admits that it provided Apple with claim charts demonstrating how each of the Patents-in-Suit is infringed by a product practicing the LTE standard.  Ericsson denies that the Patents-in-Suit are not essential to LTE. Ericsson denies that Apple is not infringing the Patents-in-Suit.  To the extent the remaining allegations in Paragraph 19 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

## THE PARTIES

20.     To the extent the allegations in Paragraph 20 are not asserted against Ericsson, they require no answer from Ericsson.

21.     Telefonaktiebolaget LM Ericsson ("LME") admits that it is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 23, Kista, 164 83 Stockholm, Sweden.  LME admits that a portion of its business operations relate to enforcement of patents, including licensing and litigation.

22.     Ericsson Inc. admits that it is a Delaware corporation having its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.  Ericsson Inc. admits that it is a wholly owned subsidiary of Ericsson Holding II Inc., a Delaware corporation, which in turn is a wholly owned subsidiary of LME.

23. To the extent the allegations in Paragraph 23 are not asserted against Ericsson, they require no answer from Ericsson.

24. Ericsson admits that it has offices and employees in California and conducts business in California.

### JURISDICTION

25. Ericsson denies that this Court has subject matter jurisdiction over this action.

26. For purposes of this action only, Ericsson submits to this Court's personal jurisdiction. Ericsson denies that it caused Apple any injury in this District.

27. To the extent the allegations in Paragraph 27 are not asserted against Ericsson or contain legal conclusions, they require no answer from Ericsson.

### VENUE

28. Ericsson admits that venue is proper within this District.

### INTRADISTRICT ASSIGNMENT

29. Ericsson admits that this Intellectual Property Action will be assigned on a district-wide basis, pursuant to Civil Local Rules 3-2(c) and 3-5(b).

### BACKGROUND

#### Apple's Products

30. On information and belief, Ericsson admits that Apple introduced the iPhone in 2007. To the extent the remaining allegations in Paragraph 30 are not asserted against Ericsson, they require no answer from Ericsson.

31. On information and belief, Ericsson admits that Apple introduced the iPad in 2010. To the extent the remaining allegations in Paragraph 31 are not asserted against Ericsson, they require no answer from Ericsson.

32. On information and belief, Ericsson admits that the iPhone and iPad contain various components that Apple acquires from third-party suppliers. On information and belief, Ericsson denies that such components are "available to all cellular mobile devices." Ericsson admits that a baseband processor may perform standardized calculations and procedures involved

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1  in cellular communication protocols. Ericsson lacks knowledge or information sufficient to form

2  a belief about the truth of the remaining allegations in Paragraph 32.

3        33.    On information and belief, Ericsson admits that Apple's products support certain

4  cellular communication protocols and industry standards, including the LTE standard. Ericsson

5  admits that such standards are formulated and publicly distributed by standard setting

6  organizations ("SSOs") such as the European Telecommunications Standards Institute ("ETSI").

7  Ericsson lacks knowledge or information sufficient to form a belief about the truth of the

8  remaining allegations in Paragraph 33.

9            **ETSI and Ericsson's Contractual FRAND Commitments**

10        34.    Ericsson admits that ETSI is an independent, non-profit SSO that provides a

11  framework for the development of globally accepted standards for the telecommunications

12  industry. On information and belief, Ericsson admits that ETSI has more than 750 members from

13  63 countries across five continents, including Ericsson and Apple. Ericsson admits that ETSI

14  provided a framework for the development of numerous telecommunications standards, including

15  the 2G/GSM, 3G/WCDMA/UMTS, and 4G/LTE cellular communications standards.

16        35.    To the extent the allegations in Paragraph 35 are not asserted against Ericsson or

17  contain legal conclusions, they require no answer from Ericsson.

18        36.    To the extent the allegations in Paragraph 36 are not asserted against Ericsson or

19  contain legal conclusions, they require no answer from Ericsson.

20        37.    Ericsson admits that ETSI has adopted an IPR Policy, incorporated as Annex 6 of

21  the ETSI Rules of Procedure. Ericsson admits that the ETSI IPR Policy requires members, in

22  certain circumstances, to disclose to ETSI patents and patent applications that may be or may

23  become essential to the practice of a standard under consideration by ETSI. Ericsson admits that

24  the IPR Policy requests that the owner of a patent or patent application that may be or may become

25  essential to a standard under consideration by ETSI submit a written undertaking that it is prepared

26  to grant irrevocable licenses on FRAND terms and conditions ("a FRAND undertaking"). 

27  Ericsson admits that, if a FRAND undertaking is not available, the ETSI IPR Policy provides for

28  ETSI to attempt to change the standard under consideration to avoid the patent in question.

38.     Ericsson admits that it submitted declarations to ETSI regarding each of the Patents-in-Suit.  Ericsson admits that each such declaration stated that it was Ericsson's belief, at the time of the declaration, that the patent(s) that were the subject of the declaration "may be or may become essential in relation to at least" specified portions of the LTE standard that were under consideration by ETSI at the time of the declaration.  Ericsson admits that each such declaration also stated that, to the extent that the patent(s) that were the subject of the declaration "are or become, and remain essential in respect of the" specified portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."  To the extent the remaining allegations in Paragraph 38 contain legal conclusions, they require no answer from Ericsson.

**Provision of Apple-Ericsson Agreement Applying to Ericsson's Allegedly
LTE-Essential Patents**

39.     Ericsson admits that Paragraph 39 accurately quotes the License Agreement.

40.     Ericsson denies that Paragraph 2.4 of the Apple-Ericsson Agreement reflects an affirmative act by Ericsson targeting Apple's products that support LTE.  Ericsson admits the remaining allegations in Paragraph 40.

**Ericsson's LTE Patent Litigations**

41.     Ericsson admits that it has previously instituted litigation against companies, including Samsung, ZTE, and TCL, that have infringed Ericsson's patents.  Ericsson admits that Paragraph 41 accurately quotes the November 27, 2012, Ericsson Press Release and the April 12, 2011, Wall Street Journal article.  Ericsson denies that it has demanded excessive royalty rates or that it has aggressively litigated allegedly standard-essential patents.

42.     Ericsson admits that, in *Ericsson Inc. v. Samsung Electronics Co.*, No. 6:12-cv-894-LED (E.D. Tex.), Ericsson asserted against Samsung and Samsung's related entities U.S. Patent Nos. 8,214,710; 8,169,992; 8,023,990; and 6,445,917.  Ericsson admits that it submitted declarations to ETSI stating that it was Ericsson's belief, at the time of the respective declarations, that each of these four patents "may be or may become essential in relation to at least" specified portions of the LTE standard that were under consideration by ETSI at the time of the respective

1   declarations.  Ericsson denies that it has a campaign to use allegedly standard-essential patents to

2   obtain unfair and improper remedies.

3          43.      Ericsson admits the allegations in Paragraph 43.

4          44.      Ericsson admits that, in *Ericsson Inc. v. Samsung Electronics Co.*, No. 6:12-cv-

5   895-LED (E.D. Texas), Ericsson asserted U.S. Patent Nos. 8,036,150; 7,660,417; and 6,985,474

6   against Samsung and its related entities.  Ericsson admits that it submitted declarations to ETSI

7   stating that it was Ericsson's belief, at the time of the respective declarations, that each of these

8   three patents "may be or may become essential in relation to at least" specified portions of the

9   LTE standard that were under consideration by ETSI at the time of the respective declarations.

10         45.      Ericsson admits that it prayed for injunctive relief in *Ericsson Inc. v. Samsung*

11  *Electronics Co.*, No. 6:12-cv-894-LED (E.D. Tex.) and *Ericsson Inc. v. Samsung Electronics Co.*,

12  No. 6:12-cv-895-LED (E.D. Texas).  Ericsson admits that it prayed for an exclusion order in

13  *Certain Electronic Devices, Including Certain Wireless Communication Devices, Tablet*

14  *Computers, Media Players, and Televisions, and Components Thereof*, Investigation No.337-TA-

15  862 (International Trade Commission).

**Ericsson's LTE Licensing Position**

16

17         46.      Ericsson admits that Paragraph 46 accurately quotes the Ericsson press releases in

18  question.

19         47.      Ericsson admits that Paragraph 47 accurately quotes the Ericsson press releases in

20  question.

21         48.      Ericsson lacks knowledge or information sufficient to form a belief about the truth

22  of Apple's allegations regarding the contents of the ETSI intellectual property rights database.

23  Ericsson admits that the existence of a declaration submitted to ETSI does not necessarily mean

24  that the declared patent(s) are actually essential to a specific ETSI standard.  To the extent that the

25  remaining allegations in Paragraph 48 are not asserted against Ericsson, they require no answer

26  from Ericsson.

27         49.      Ericsson admits that Paragraph 49 accurately quotes the Stasik article.

28

50.     Ericsson lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50.

51.     Ericsson admits that Paragraph 51 accurately quotes short phrases from various slides of the referenced March 12, 2010, presentation.  Ericsson denies that Paragraph 51 accurately characterizes the content of that presentation.  Ericsson states that the order from the Competition Committee of India cited in Paragraph 51 speaks for itself.  To the extent the remaining allegations of Paragraph 51 contain legal conclusions, they require no response from Ericsson.

52.     Ericsson lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52.

53.     Ericsson denies the allegations contained in Paragraph 53.

**Patents-in-Suit**

54.     Ericsson admits that it submitted declarations to ETSI regarding each of the Patents-in-Suit.  Ericsson admits that each such declaration stated that it was Ericsson's belief, at the time of the declaration, that the patent(s) that were the subject of the declaration "may be or may become essential in relation to at least" specified portions of the LTE standard that were under consideration by ETSI at the time of the declaration.  Ericsson admits that it has asserted the Patents-in-Suit in prior litigation.  To the extent the remaining allegations in Paragraph 54 are legal conclusions, they require no answer from Ericsson.

55.     Ericsson admits that it contends that it has complied with its FRAND commitments in its negotiations with and offers to Apple.  Ericsson denies that it breached the NDA.  Ericsson admits that it provided Apple with claim charts demonstrating how each of the Patents-in-Suit is infringed by a product practicing the LTE standard.  To the extent the remaining allegations in Paragraph 55 are legal conclusions, they require no answer from Ericsson.

56.     Ericsson admits the allegations in Paragraph 56.

57.     Ericsson admits the allegations in Paragraph 57.

58.     Ericsson admits the allegations in Paragraph 58.

59.     Ericsson admits the allegations in Paragraph 59.

60.     Ericsson admits the allegations in Paragraph 60.

61.     Ericsson admits the allegations in Paragraph 61.

62.     Ericsson admits the allegations in Paragraph 62.

63.     Ericsson admits the allegations in Paragraph 63.

64.     Ericsson denies the allegations in Paragraph 64.

## COUNT I

### (Declaration of Non-Infringement of U.S. Patent No. 8,214,710)

65.     Ericsson repeats and incorporates its Answer to Paragraphs 1–64.

66.     Ericsson denies the allegations in Paragraph 66, or, to the extent the allegations in Paragraph 66 contain legal conclusions, they require no answer from Ericsson.

67.     Ericsson denies the allegations in Paragraph 67.

68.     Ericsson denies the allegations in Paragraph 68.

69.     Ericsson denies the allegations in Paragraph 69.

## COUNT II

### (Declaration of Non-Infringement of U.S. Patent No. 8,214,710)

70.     Ericsson repeats and incorporates its Answer to Paragraphs 1–69.

71.     Ericsson admits that it has declared to ETSI that, to the extent certain patents, including the '710 patent, "are or become, and remain essential in respect of" certain specified portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy." To the extent the remaining allegations in Paragraph 71 contain legal conclusions, they require no answer from Ericsson.

72.     Ericsson admits that it has taken the position that royalties for LTE-essential patents may, in some instances, be based on a percentage of the price of the infringing device. Ericsson denies that it has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph 72 contain legal conclusions, they require no answer from Ericsson.

73. Ericsson denies that its licensing approach discriminates against Apple. To the extent the remaining allegations in Paragraph 73 contain legal conclusions, they require no answer from Ericsson.

74. Ericsson denies the allegations in Paragraph 74.

75. Ericsson denies the allegations in Paragraph 75.

76. Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND royalty for the '710 patent. To the extent the remaining allegations in Paragraph 76 contain legal conclusions, they require no answer from Ericsson.

### COUNT III

### (Declaration of Non-Infringement of U.S. Patent No. 8,169,992)

77. Ericsson repeats and incorporates its Answer to Paragraphs 1–76.

78. Ericsson denies the allegations in Paragraph 78, or, to the extent the allegations in Paragraph 78 contain legal conclusions, they require no answer from Ericsson.

79. Ericsson denies the allegations in Paragraph 79.

80. Ericsson denies the allegations in Paragraph 80.

81. Ericsson denies the allegations in Paragraph 81.

### COUNT IV

### (Declaration of FRAND Royalties for U.S. Patent No. 8,169,992)

82. Ericsson repeats and incorporates its Answer to Paragraphs 1–81.

83. Ericsson admits that it has declared to ETSI that, to the extent certain patents, including the '992 patent, "are or become, and remain essential in respect of" certain specified portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy." To the extent the remaining allegations in Paragraph 83 contain legal conclusions, they require no answer from Ericsson.

84. Ericsson admits that it has taken the position that royalties for LTE-essential patents may be based on a percentage of the price of the infringing device. Ericsson denies that it

1  has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph

2  84 contain legal conclusions, they require no answer from Ericsson.

3      85.    Ericsson denies that its licensing approach discriminates against Apple.  To the

4  extent the remaining allegations in Paragraph 85 contain legal conclusions, they require no answer

5  from Ericsson.

6      86.    Ericsson denies the allegations in Paragraph 86.

7      87.    Ericsson denies the allegations in Paragraph 87.

8      88.    Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND

9  royalty for the '992 patent.  To the extent the remaining allegations in Paragraph 88 contain legal

10  conclusions, they require no answer from Ericsson.

11  **COUNT V**

12  **(Declaration of Non-Infringement of U.S. Patent No. 8,036,150)**

13      89.    Ericsson repeats and incorporates its Answer to Paragraphs 1–88.

14      90.    Ericsson denies the allegations in Paragraph 90, or, to the extent the allegations in

15  Paragraph 90 contain legal conclusions, they require no answer from Ericsson.

16      91.    Ericsson denies the allegations in Paragraph 91.

17      92.    Ericsson denies the allegations in Paragraph 92.

18      93.    Ericsson denies the allegations in Paragraph 93.

19  **COUNT VI**

20  **(Declaration of FRAND Royalties for U.S. Patent No. 8,036,150)**

21      94.    Ericsson repeats and incorporates its Answer to Paragraphs 1–93.

22      95.    Ericsson admits that it has declared to ETSI that, to the extent certain patents,

23  including the '150 patent, "are or become, and remain essential in respect of" certain specified

24  portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these

25  IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."

26  To the extent the remaining allegations in Paragraph 95 contain legal conclusions, they require no

27  answer from Ericsson.

28

96.     Ericsson admits that it has taken the position that royalties for LTE-essential patents may be based on a percentage of the price of the infringing device.   Ericsson denies that it has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph 96 contain legal conclusions, they require no answer from Ericsson.

97.     Ericsson denies that its licensing approach discriminates against Apple.  To the extent the remaining allegations in Paragraph 97 contain legal conclusions, they require no answer from Ericsson.

98.     Ericsson denies the allegations in Paragraph 98.

99.     Ericsson denies the allegations in Paragraph 99.

100.    Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND royalty for the '150 patent.  To the extent the remaining allegations in Paragraph 100 contain legal conclusions, they require no answer from Ericsson.

## COUNT VII

### (Declaration of Non-Infringement of U.S. Patent No. 8,023,990)

101.    Ericsson repeats and incorporates its Answer to Paragraphs 1–100.

102.    Ericsson denies the allegations in Paragraph 102, or, to the extent the allegations in Paragraph 102 contain legal conclusions, they require no answer from Ericsson.

103.    Ericsson denies the allegations in Paragraph 103.

104.    Ericsson denies the allegations in Paragraph 104.

105.    Ericsson denies the allegations in Paragraph 105.

## COUNT VIII

### (Declaration of FRAND Royalties for U.S. Patent No. 8,023,990)

106.    Ericsson repeats and incorporates its Answer to Paragraphs 1–105.

107.    Ericsson admits that it has declared to ETSI that, to the extent certain patents, including the '990 patent, "are or become, and remain essential in respect of" certain specified portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."

1  To the extent the remaining allegations in Paragraph 107 contain legal conclusions, they require

2  no answer from Ericsson.

3       108.   Ericsson admits that it has taken the position that royalties for LTE-essential

4  patents may be based on a percentage of the price of the infringing device.   Ericsson denies that it

5  has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph

6  108 contain legal conclusions, they require no answer from Ericsson.

7       109.   Ericsson denies that its licensing approach discriminates against Apple.  To the

8  extent the remaining allegations in Paragraph 109 contain legal conclusions, they require no

9  answer from Ericsson.

10       110.   Ericsson denies the allegations in Paragraph 110.

11       111.   Ericsson denies the allegations in Paragraph 111.

12       112.   Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND

13  royalty for the '990 patent.  To the extent the remaining allegations in Paragraph 112 contain legal

14  conclusions, they require no answer from Ericsson.

15  **COUNT IX**

16  **(Declaration of Non-Infringement of U.S. Patent No. 7,660,417)**

17       113.   Ericsson repeats and incorporates its Answer to Paragraphs 1–112.

18       114.   Ericsson denies the allegations in Paragraph 114, or, to the extent the allegations in

19  Paragraph 114 contain legal conclusions, they require no answer from Ericsson.

20       115.   Ericsson denies the allegations in Paragraph 115.

21       116.   Ericsson denies the allegations in Paragraph 116.

22       117.   Ericsson denies the allegations in Paragraph 117.

23  **COUNT X**

24  **(Declaration of FRAND Royalties for U.S. Patent No. 7,660,417)**

25       118.   Ericsson repeats and incorporates its Answer to Paragraphs 1–117.

26       119.   Ericsson admits that it has declared to ETSI that, to the extent certain patents,

27  including the '417 patent, "are or become, and remain essential in respect of" certain specified

28  portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these

1   IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."

2   To the extent the remaining allegations in Paragraph 119 contain legal conclusions, they require

3   no answer from Ericsson.

4        120.    Ericsson admits that it has taken the position that royalties for LTE-essential

5   patents may be based on a percentage of the price of the infringing device.   Ericsson denies that it

6   has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph

7   120 contain legal conclusions, they require no answer from Ericsson.

8        121.    Ericsson denies that its licensing approach discriminates against Apple.  To the

9   extent the remaining allegations in Paragraph 121 contain legal conclusions, they require no

10  answer from Ericsson.

11       122.    Ericsson denies the allegations in Paragraph 122.

12       123.    Ericsson denies the allegations in Paragraph 123.

13       124.    Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND

14  royalty for the '417 patent.  To the extent the remaining allegations in Paragraph 124 contain legal

15  conclusions, they require no answer from Ericsson.

### COUNT XI

### (Declaration of Non-Infringement of U.S. Patent No. 6,985,474)

18       125.    Ericsson repeats and incorporates its Answer to Paragraphs 1–124.

19       126.    Ericsson denies the allegations in Paragraph 126, or, to the extent the allegations in

20  Paragraph 126 contain legal conclusions, they require no answer from Ericsson.

21       127.    Ericsson denies the allegations in Paragraph 127.

22       128.    Ericsson denies the allegations in Paragraph 128.

23       129.    Ericsson denies the allegations in Paragraph 129.

### COUNT XII

### (Declaration of FRAND Royalties for U.S. Patent No. 6,985,474)

26       130.    Ericsson repeats and incorporates its Answer to Paragraphs 1–129.

27       131.    Ericsson admits that it has declared to ETSI that, to the extent certain patents,

28  including the '474 patent, "are or become, and remain essential in respect of" certain specified

1  portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these

2  IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."

3  To the extent the remaining allegations in Paragraph 131 contain legal conclusions, they require

4  no answer from Ericsson.

5      132.   Ericsson admits that it has taken the position that royalties for LTE-essential

6  patents may be based on a percentage of the price of the infringing device.   Ericsson denies that it

7  has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph

8  132 contain legal conclusions, they require no answer from Ericsson.

9      133.   Ericsson denies that its licensing approach discriminates against Apple.  To the

10  extent the remaining allegations in Paragraph 133 contain legal conclusions, they require no

11  answer from Ericsson.

12      134.   Ericsson denies the allegations in Paragraph 134.

13      135.   Ericsson denies the allegations in Paragraph 135.

14      136.   Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND

15  royalty for the '474 patent.  To the extent the remaining allegations in Paragraph 136 contain legal

16  conclusions, they require no answer from Ericsson.

17                              **COUNT XIII**

18                **(Declaration of Non-Infringement of U.S. Patent No. 6,445,917)**

19      137.   Ericsson repeats and incorporates its Answer to Paragraphs 1–136.

20      138.   Ericsson denies the allegations in Paragraph 138, or, to the extent the allegations in

21  Paragraph 138 contain legal conclusions, they require no answer from Ericsson.

22      139.   Ericsson denies the allegations in Paragraph 139.

23      140.   Ericsson denies the allegations in Paragraph 140.

24      141.   Ericsson denies the allegations in Paragraph 141.

25                              **COUNT XIV**

26                **(Declaration of FRAND Royalties for U.S. Patent No. 6,445,917)**

27      142.   Ericsson repeats and incorporates its Answer to Paragraphs 1–141.

28

143.     Ericsson admits that it has declared to ETSI that, to the extent certain patents, including the '917 patent, "are or become, and remain essential in respect of" certain specified portions of the LTE standard, Ericsson is "prepared to grant irrevocable license under this/these IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy." To the extent the remaining allegations in Paragraph 143 contain legal conclusions, they require no answer from Ericsson.

144.     Ericsson admits that it has taken the position that royalties for LTE-essential patents may be based on a percentage of the price of the infringing device.   Ericsson denies that it has sought unfair and unreasonable royalties.  To the extent the remaining allegations in Paragraph 144 contain legal conclusions, they require no answer from Ericsson.

145.     Ericsson denies that its licensing approach discriminates against Apple.  To the extent the remaining allegations in Paragraph 145 contain legal conclusions, they require no answer from Ericsson.

146.     Ericsson denies the allegations in Paragraph 146.

147.     Ericsson denies the allegations in Paragraph 147.

148.     Ericsson denies that Apple is entitled to a judicial declaration that sets a FRAND royalty for the '917 patent.  To the extent the remaining allegations in Paragraph 148 contain legal conclusions, they require no answer from Ericsson.

**PRAYER FOR RELIEF**

149.     Ericsson denies that Apple is entitled to any relief, either as prayed for in its FAC or otherwise.

**APPLE'S JURY DEMAND**

150.     Ericsson denies that Apple is entitled to a jury on the claims asserted in its FAC.

**GENERAL DENIAL**

151.     Ericsson further denies each and every allegation contained in the FAC to which Ericsson has not specifically admitted, denied, or otherwise responded to herein.

**<u>ERICSSON'S DEFENSES</u>**

152.   Without waiver, limitation, or prejudice, Ericsson asserts the following defenses in response to the allegations in the FAC, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

**FIRST DEFENSE**

**(Lack of Subject Matter Jurisdiction)**

153.   This Court lacks subject matter jurisdiction over Plaintiff's claims for declaratory judgment.

**SECOND DEFENSE**

**(Lack of Standing)**

154.   Plaintiff lacks standing to assert the claims for declaratory judgment in the FAC.

**THIRD DEFENSE**

**(Failure to State a Claim)**

155.   Plaintiff has failed to state a claim upon which relief may be granted.

**FOURTH DEFENSE**

**(Laches)**

156.   Plaintiff's claims are barred by the doctrine of laches.

**FIFTH DEFENSE**

**(Waiver or Forfeiture)**

157.   Plaintiff has waived or forfeited any right it may have to a license to Ericsson's patents on FRAND terms.

**SIXTH DEFENSE**

**(Estoppel)**

158.   Plaintiff is estopped from demanding a license to Ericsson's patents on FRAND terms.

**SEVENTH DEFENSE**

(*Forum non Conveniens*)

159.    Plaintiff's action is subject to dismissal under the doctrine of *forum non conveniens*.

## <u>RESERVATION OF ADDITIONAL DEFENSES</u>

160.    Ericsson reserves the right to assert additional defenses in the event that discovery or other analyses indicate that additional defenses are warranted.

///

**ERICSSON'S COUNTERCLAIMS**

For its Counterclaims, Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") allege the following against Apple, Inc. ("Apple")[1]:

**NATURE OF COUNTERCLAIMS**

1.      Each of the Patents-in-Suit is essential to the LTE standard, and Ericsson takes the step of asserting these counterclaims for infringement of the Patents-in-Suit against Apple only after exhausting all other options to conclude a license with Apple, which expressly acknowledges that its products implement and practice the LTE standard.

2.      In 2008, Apple agreed to take a license to certain of Ericsson's patents that are essential to various industry standards.  Before that license expired, Ericsson for two years extended offers to Apple to renew and expand its license on FRAND terms.  Ericsson even offered to arbitrate the dispute over a FRAND royalty for Ericsson's global portfolio of standard essential patents, and, more recently, to enter into a binding determination of FRAND licensing terms for Ericsson's global portfolio of standard essential patents before a U.S. federal district court.  In sum, consistent with its obligations under the ETSI IPR Policy and to the technology community, Ericsson has sought in good faith to conclude a license agreement with Apple on FRAND terms.

3.      Ericsson's efforts have failed because, notwithstanding Apple's continued infringement of Ericsson's standard essential patents, Apple refuses to pay a FRAND royalty for a portfolio license consistent with the parties' prior license agreement and licenses taken by other Ericsson licensees.  Instead, Apple has misused the parties' negotiation process to engage in a "hold out" or "reverse hold-up" gambit, in which Apple has abused, and continues to abuse, the

---

[1] Ericsson believes that this Court lacks subject matter jurisdiction over Apple's declaratory judgment claims and that, in any event, the Court should exercise its discretion to decline to entertain those claims.  *See* ECF No. 25 (Defendants' Notice of Motion and Motion to Dismiss First Amended Complaint).  In light of the Court's ruling on Ericsson's motion, Ericsson asserts the counterclaims herein.  In asserting its counterclaims, Ericsson does not consent to the Court's subject matter jurisdiction or concede that the Court should entertain Apple's claims.  *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("[W]here a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction.  This is true even if the party has preserved its own options by simultaneously asserting whatever claims or defenses it has against the plaintiff.").

1   protections afforded by FRAND while willfully using Ericsson's patented technologies without

2   license or authorization.  Such tactics give Apple a substantial and unfair competitive advantage

3   over its competitors that have agreed to—and that maintain—licenses on FRAND terms under

4   Ericsson's global portfolio of patents.  Apples has therefore not fulfilled its obligations to remain a

5   third party beneficiary of the contract between Ericsson and ETSI.

6          4.      On January 12, 2015, without advance notice to Ericsson, Apple filed this action

7   seeking declarations with regard to seven of Ericsson's patents (U.S. Patent Nos. 8,214,710;

8   8,169,992; 8,036,150; 8,023,990; 7,660,417; 6,985,474; and 6,445,917  (collectively, the "Patents-

9   in-Suit")).  In view of Ericsson's much larger portfolio of standard essential patents in the United

10  States and abroad, Apple's strategy of litigating one patent at a time could result in perpetual

11  litigation of hundreds of essential patents in dozens of countries, all while Apple continues to

12  willfully infringe Ericsson's patents without paying FRAND royalties.  This would deprive

13  Ericsson of revenues necessary to continue its investment in innovations that have benefited, and

14  will continue to benefit, Apple.  It will also negatively affect Ericsson's other licensees, which

15  have agreed to pay royalties on FRAND terms, and which will be at an unfair competitive

16  disadvantage to Apple.

17                                  **PARTIES**

18         5.      Since 1876, Ericsson has pioneered communications technology in pursuit of its

19  mission to connect everyone, wherever they may be.  The work of more than twenty-five thousand

20  Ericsson research and development ("R&D") employees produced innovations fundamental to

21  how smartphones and mobile devices connect seamlessly using cellular networks worldwide and

22  offer a diverse and easy-to-use range of features and applications.  As a result of its extensive

23  R&D efforts, Ericsson has been awarded more than thirty-five thousand patents worldwide.

24         6.      Ericsson is widely viewed as a leading innovator in the field of cellular

25  communications.  For more than three decades, Ericsson has pioneered development of the

26  modern cellular network.  Every major mobile network operator in the world purchases solutions

27  or services from Ericsson, which manages networks serving more than one billion subscribers

28

1   globally.  Forty percent of all mobile telephone calls are made through Ericsson systems

2   worldwide.  Ericsson's equipment is found in more than 180 countries.

3         7.      Ericsson is also a world-leading innovator of wireless and wired communications

4   technologies as a result of its decades of investment in R&D.  Ericsson's inventions enable the

5   communications capability of smartphones and other wireless devices around the world.

6   Ericsson's innovations have enabled technologies that are essential to the modern wireless

7   environment, such as Wi-Fi, Bluetooth, 2G, 3G, and 4G LTE.

8         8.      Counter-Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of

9   business at 6300 Legacy Drive, Plano, Texas 75024.

10         9.      Counter-Plaintiff Telefonaktiebolaget LM Ericsson ("LME") is a corporation

11   organized under the laws of the Kingdom of Sweden with its principal place of business at

12   Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

13         10.      Counter-Defendant Apple Inc. ("Apple") is a California corporation with its

14   principal place of business at 1 Infinite Loop, Cupertino, California 95014.  Apple designs,

15   manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States,

16   smartphones and other cellular-capable mobile devices that operate using the LTE standard.

17   Apple further offers other wireless communication devices, computers, tablet computers, digital

18   media players, and headphones.  Apples devices are marketed, offered for sale, and/or sold

19   throughout the United States, including within this District.

20   **JURISDICTION AND VENUE**

21         11.      Ericsson's counterclaims for patent infringement arise under the Patent Laws of the

22   United States, 35 U.S.C. §§ 271, 281–285.  This Court has original and exclusive subject matter

23   jurisdiction over Ericsson's counterclaims for patent infringement under 28 U.S.C. § 1338.

24         12.      This Court has personal jurisdiction over Apple because its principal place of

25   business is in this district and by virtue of Apple's filing the FAC against Ericsson in this District.

26         13.      Venue for Ericsson's counterclaims is proper in this District pursuant to 28 U.S.C.

27   §§ 1391(b)–(c) and 1400(b).

28

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

# ERICSSON'S PATENTS

14.     On July 3, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,214,710 ("the '710 Patent"), entitled "Method and Apparatus for Processing Error Control Messages in a Wireless Communication System."

15.     On May 1, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,169,992 ("the '992 Patent"), entitled "Uplink Scrambling During Random Access."

16.     On October 11, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,036,150  ("the '150 Patent"), entitled "Method and a Device for Improved Status reports."

17.     On September 20, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,023,990 ("the '990 Patent"), entitled "Uplink Scheduling in a Cellular System."

18.     On February 9, 2010, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,660,417 ("the '417 Patent"), entitled "Enhanced Security Design for Cryptography in Mobile Communication System."

19.     On January 10, 2006, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,985,474 ("the '474 Patent"), entitled "Random Access in a Mobile Telecommunications System."

20.     On September 3, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,445,917 ("the '917 Patent"), entitled "Mobile Station Measurements with Event-Based Reporting."

21.     LME and/or Ericsson Inc. are the owners of all rights, title, and interest to the Patents-in-Suit necessary to bring this action, including the right to recover past and future damages.  Apple is not licensed to practice any of the Patents-in-Suit.

22.     The Patents-in-Suit are valid and enforceable.

**GENERAL ALLEGATIONS**

23.     Apple has imported into the United States, manufactured, used, marketed, offered for sale, and sold in the United States mobile communication devices, including smartphones and tablets, that infringe the Patents-in-Suit, or induce or contribute to infringement of the Ericsson Patents-in-Suit.

24.     Apple's devices that infringe one or more claims of the Patents-in-Suit include, but are not limited to, Apple products with LTE cellular capabilities ("the Accused Products").  The Accused Products include the iPhone 5, iPhone 5c, iPhone 5s, iPhone 6, iPhone 6 Plus, and the Wi-Fi + Cellular versions of the iPad (3rd Generation), iPad (4th Generation), iPad Air, iPad Air 2, iPad mini, iPad mini 2, and iPad mini 3, as well as any other LTE-capable device manufactured, sold, used, marketed, and/or offered for sale, by Apple in the United States, and/or imported by Apple into the United States.

25.     Apple has been placed on actual notice that it infringes the Patents-in-Suit.  Apple itself contends that, prior to the date Apple filed the FAC, it was informed that its LTE-capable products infringed each of the Patents-in-Suit.  *See, e.g.*, FAC ¶ 55.   Apple has stated in open court that prior to Apple's filing of the Original Complaint, Ericsson provided Apple with claim charts demonstrating how each of the Patents-in-Suit reads on the Accused Products.  Apple has acknowledged to Ericsson that it became aware of each of the Patents-in-Suit no later than August 21, 2013.  On information and belief, prior to filing the Original Complaint, Apple made investigation into Ericsson's patent portfolio, including specifically each of the Patents-in-Suit. Moreover, as Apple acknowledges in the Original Complaint and the FAC, Ericsson submitted public declarations to ETSI, of which Apple is a member, whereby Ericsson disclosed that each of the Patents-in-Suit may be or may become essential to the LTE standard.  On information and belief, Apple was aware or should have been aware of those declarations.

26.     Despite such notice, Apple continues to make, use, import into, market, offer for sale, and/or sell in the United States products that infringe the Patents-in-Suit.

27.     Apple has directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C.

§ 271(a), (b) and (c), including but not necessarily limited to making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into the United States, the Accused Products.

28.     Apple's acts of infringement have caused damage to Ericsson.  Ericsson is entitled to recover from Apple the damages sustained by Ericsson as a result of Apple's wrongful acts in an amount subject to proof at trial.

## COUNT I

### (Patent Infringement of U.S. Patent No. 8,214,710)

29.     Ericsson repeats and realleges herein Paragraphs  1–28 of its counterclaims.

30.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '710 Patent by making, using, selling, offering for sale, and importing into the United States products and/or methods covered by one or more claims of the '710 Patent.  The devices that infringe one more claims of the '710 Patent include, but are not limited to, at least the Accused Products.  Further discovery may reveal additional infringing products.

31.     The Accused Devices infringe one or more claims of the '710 Patent.  Apple makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and elsewhere in the United States, and thus directly infringes the '710 Patent.

32.     Apple indirectly infringes the '710 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had knowledge and notice of the '710 Patent at least by August 21, 2013.

33.     Apple's affirmative acts in this District and elsewhere in the United States of manufacturing, selling, distributing, and/or otherwise making available the Accused Products; causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support,

1   product manuals, online documentation, developer information, API documentation, and other

2   information about the Accused Products) induce Apple's manufacturers, resellers, developers,

3   customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this

4   District and elsewhere in the United States in the way that Apple intends, in order to directly

5   infringe the '710 Patent.  Apple has performed and continues to perform these affirmative acts

6   with knowledge of the '710 Patent and with knowledge or willful blindness that the induced acts

7   directly infringe the '710 Patent.

8         34.     Apple also indirectly infringes the '710 Patent, as provided by 35 U.S.C. § 271(c),

9   by contributing to direct infringement committed by others, such as manufacturers, resellers,

10  developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple

11  had knowledge and notice of the '710 Patent at least by August 21, 2013.  Apple's affirmative acts

12  in this District and elsewhere in the United States of selling and offering to sell the Accused

13  Products and causing the Accused Products to be manufactured, used, sold, and offered for sale,

14  contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making,

15  using, selling, and/or offering to sell the Accused Products, such that the '710 Patent is directly

16  infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus

17  for practicing the invention of the '710 Patent, are not staple articles or commodities of commerce,

18  have no substantial non-infringing uses, and are known by Apple to be especially made or

19  especially adapted for use in infringement of the '710 Patent.

20        35.     Apple's infringement of the '710 Patent has been and continues to be willful.  Upon

21  information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

22  directly infringed and was causing others to directly infringe the '710 Patent.  Apple had

23  knowledge and notice of the '710 Patent at least by August 21, 2013.

24        36.     Apple's continued infringement of the '710 Patent has damaged and will continue

25  to damage Ericsson.

26  **COUNT II**

27  **(Infringement of U.S. Patent No. 8,169,992)**

28        37.     Ericsson repeats and realleges herein Paragraphs  1–36 of its counterclaims.

38.    Apple infringes, contributes to the infringement of, and/or induces infringement of the '992 Patent by making, using, selling, offering for sale, and importing into the United States products and/or methods covered by one or more claims of the '992 Patent.  The devices that infringe one more claims of the '992 Patent include, but are not limited to, at least the Accused Products.  Further discovery may reveal additional infringing products.

39.    The Accused Devices infringe one or more claims of the '992 Patent.  Apple makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and elsewhere in the United States, and thus directly infringes the '992 Patent.

40.    Apple indirectly infringes the '992 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had knowledge and notice of the '992 Patent at least by August 21, 2013.

41.    Apple's affirmative acts in this District and elsewhere in the United States of manufacturing, selling, distributing, and/or otherwise making available the Accused Products; causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Accused Products) induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this District and elsewhere in the United States in the way that Apple intends, in order to directly infringe the '992 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '992 Patent and with knowledge or willful blindness that the induced acts directly infringe the '992 Patent.

42.    Apple also indirectly infringes the '992 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers,

1    developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple

2    had knowledge and notice of the '992 Patent at least by August 21, 2013.  Apple's affirmative acts

3    in this District and elsewhere in the United States of selling and offering to sell the Accused

4    Products and causing the Accused Products to be manufactured, used, sold, and offered for sale,

5    contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making,

6    using, selling, and/or offering to sell the Accused Products, such that the '992 Patent is directly

7    infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus

8    for practicing the invention of the '992 Patent, are not staple articles or commodities of commerce,

9    have no substantial non-infringing uses, and are known by Apple to be especially made or

10   especially adapted for use in infringement of the '992 Patent.

11          43.     Apple's infringement of the '992 Patent has been and continues to be willful.  Upon

12   information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

13   directly infringed and was causing others to directly infringe the '992 Patent.  Apple had

14   knowledge and notice of the '992 Patent at least by August 21, 2013.

15          44.     Apple's continued infringement of the '992 Patent has damaged and will continue

16   to damage Ericsson.

17                                          **COUNT III**

18                          **(Infringement of U.S. Patent No. 8,036,150)**

19          45.     Ericsson repeats and realleges herein Paragraphs  1–44 of its counterclaims.

20          46.     Apple infringes, contributes to the infringement of, and/or induces infringement of

21   the '150 Patent by making, using, selling, offering for sale, and importing into the United States

22   products and/or methods covered by one or more claims of the '150 Patent.  The devices that

23   infringe one more claims of the '150 Patent include, but are not limited to, at least the Accused

24   Products.  Further discovery may reveal additional infringing products.

25          47.     The Accused Devices infringe one or more claims of the '150 Patent.  Apple

26   makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and

27   elsewhere in the United States, and thus directly infringes the '150 Patent.

28

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

48.     Apple indirectly infringes the '150 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had knowledge and notice of the '150 Patent at least by August 21, 2013.

49.     Apple's affirmative acts in this District and elsewhere in the United States of manufacturing, selling, distributing, and/or otherwise making available the Accused Products; causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Accused Products) induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this District and elsewhere in the United States in the way that Apple intends, in order to directly infringe the '150 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '150 Patent and with knowledge or willful blindness that the induced acts directly infringe the '150 Patent.

50.     Apple also indirectly infringes the '150 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple had knowledge and notice of the '150 Patent at least by August 21, 2013.  Apple's affirmative acts in this District and elsewhere in the United States of selling and offering to sell the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Accused Products, such that the '150 Patent is directly infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus for practicing the invention of the '150 Patent, are not staple articles or commodities of commerce,

1  have no substantial non-infringing uses, and are known by Apple to be especially made or

2  especially adapted for use in infringement of the '150 Patent.

3       51.    Apple's infringement of the '150 Patent has been and continues to be willful.  Upon

4  information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

5  directly infringed and was causing others to directly infringe the '150 Patent.  Apple had

6  knowledge and notice of the '150 Patent at least by August 21, 2013.

7       52.    Apple's continued infringement of the '150 Patent has damaged and will continue

8  to damage Ericsson.

9                                   **COUNT IV**

10                   **(Infringement of U.S. Patent No. 8,023,990)**

11      53.    Ericsson repeats and realleges herein Paragraphs  1–52 of its counterclaims.

12      54.    Apple infringes, contributes to the infringement of, and/or induces infringement of

13  the '990 Patent by making, using, selling, offering for sale, and importing into the United States

14  products and/or methods covered by one or more claims of the '990 Patent.  The devices that

15  infringe one more claims of the '990 Patent include, but are not limited to, at least the Accused

16  Products.  Further discovery may reveal additional infringing products.

17      55.    The Accused Devices infringe one or more claims of the '990 Patent.  Apple

18  makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and

19  elsewhere in the United States, and thus directly infringes the '990 Patent.

20      56.    Apple indirectly infringes the '990 Patent, as provided in 35 U.S.C. § 271(b), by

21  inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-

22  users, in this District and elsewhere in the United States.  For example, manufacturers, resellers,

23  developers, customers, and end-users of the Accused Products directly infringe by making, using,

24  selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had

25  knowledge and notice of the '990 Patent at least by August 21, 2013.

26      57.    Apple's affirmative acts in this District and elsewhere in the United States of

27  manufacturing, selling, distributing, and/or otherwise making available the Accused Products;

28  causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or

providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Accused Products) induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this District and elsewhere in the United States in the way that Apple intends, in order to directly infringe the '990 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '990 Patent and with knowledge or willful blindness that the induced acts directly infringe the '990 Patent.

58.     Apple also indirectly infringes the '990 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple had knowledge and notice of the '990 Patent at least by August 21, 2013.  Apple's affirmative acts in this District and elsewhere in the United States of selling and offering to sell the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Accused Products, such that the '990 Patent is directly infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus for practicing the invention of the '990 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '990 Patent.

59.     Apple's infringement of the '990 Patent has been and continues to be willful.  Upon information and belief, Apple knew, should have known, or was willfully blind to the fact that, it directly infringed and was causing others to directly infringe the '990 Patent.  Apple had knowledge and notice of the '990 Patent at least by August 21, 2013.

60.     Apple's continued infringement of the '990 Patent has damaged and will continue to damage Ericsson.

## COUNT V

### (Infringement of U.S. Patent No. 7,660,417)

61.     Ericsson repeats and realleges herein Paragraphs  1–28 of its counterclaims.

62.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '990 Patent by making, using, selling, offering for sale, and importing into the United States products and/or methods covered by one or more claims of the '990 Patent.  The devices that infringe one more claims of the '990 Patent include, but are not limited to, at least the Accused Products.  Further discovery may reveal additional infringing products.

63.     The Accused Devices infringe one or more claims of the '990 Patent.  Apple makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and elsewhere in the United States, and thus directly infringes the '990 Patent.

64.     Apple indirectly infringes the '990 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had knowledge and notice of the '990 Patent at least by August 21, 2013.

65.     Apple's affirmative acts in this District and elsewhere in the United States of manufacturing, selling, distributing, and/or otherwise making available the Accused Products; causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Accused Products) induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this District and elsewhere in the United States in the way that Apple intends, in order to directly infringe the '990 Patent.  Apple has performed and continues to perform these affirmative acts

1    with knowledge of the '990 Patent and with knowledge or willful blindness that the induced acts

2    directly infringe the '990 Patent.

3         66.     Apple also indirectly infringes the '990 Patent, as provided by 35 U.S.C. § 271(c),

4    by contributing to direct infringement committed by others, such as manufacturers, resellers,

5    developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple

6    had knowledge and notice of the '990 Patent at least by August 21, 2013.  Apple's affirmative acts

7    in this District and elsewhere in the United States of selling and offering to sell the Accused

8    Products and causing the Accused Products to be manufactured, used, sold, and offered for sale,

9    contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making,

10    using, selling, and/or offering to sell the Accused Products, such that the '990 Patent is directly

11    infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus

12    for practicing the invention of the '990 Patent, are not staple articles or commodities of commerce,

13    have no substantial non-infringing uses, and are known by Apple to be especially made or

14    especially adapted for use in infringement of the '990 Patent.

15         67.     Apple's infringement of the '990 Patent has been and continues to be willful.  Upon

16    information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

17    directly infringed and was causing others to directly infringe the '990 Patent.  Apple had

18    knowledge and notice of the '990 Patent at least by August 21, 2013.

19         68.     Apple's continued infringement of the '990 Patent has damaged and will continue

20    to damage Ericsson.

21                       **<u>COUNT VI</u>**

22              **(Infringement of U.S. Patent No. 6,985,474)**

23         69.     Ericsson repeats and realleges herein Paragraphs  1–28 of its counterclaims.

24         70.     Apple infringes, contributes to the infringement of, and/or induces infringement of

25    the '474 Patent by making, using, selling, offering for sale, and importing into the United States

26    products and/or methods covered by one or more claims of the '474 Patent.  The devices that

27    infringe one more claims of the '474 Patent include, but are not limited to, at least the Accused

28    Products.  Further discovery may reveal additional infringing products.

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

71.     The Accused Devices infringe one or more claims of the '474 Patent.  Apple makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and elsewhere in the United States, and thus directly infringes the '474 Patent.

72.     Apple indirectly infringes the '474 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the Accused Products in the United States.  Apple had knowledge and notice of the '474 Patent at least by August 21, 2013.

73.     Apple's affirmative acts in this District and elsewhere in the United States of manufacturing, selling, distributing, and/or otherwise making available the Accused Products; causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Accused Products in the way Apple intends (including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Accused Products) induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this District and elsewhere in the United States in the way that Apple intends, in order to directly infringe the '474 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '474 Patent and with knowledge or willful blindness that the induced acts directly infringe the '474 Patent.

74.     Apple also indirectly infringes the '474 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple had knowledge and notice of the '474 Patent at least by August 21, 2013.  Apple's affirmative acts in this District and elsewhere in the United States of selling and offering to sell the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making,

1   using, selling, and/or offering to sell the Accused Products, such that the '474 Patent is directly

2   infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus

3   for practicing the invention of the '474 Patent, are not staple articles or commodities of commerce,

4   have no substantial non-infringing uses, and are known by Apple to be especially made or

5   especially adapted for use in infringement of the '474 Patent.

6       75.     Apple's infringement of the '474 Patent has been and continues to be willful.  Upon

7   information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

8   directly infringed and was causing others to directly infringe the '474 Patent.  Apple had

9   knowledge and notice of the '474 Patent at least by August 21, 2013.

10      76.     Apple's continued infringement of the '474 Patent has damaged and will continue

11  to damage Ericsson.

12                              **COUNT VII**

13                  **(Infringement of U.S. Patent No. 6,445,917)**

14      77.     Ericsson repeats and realleges herein Paragraphs  1–28 of its counterclaims.

15      78.     Apple infringes, contributes to the infringement of, and/or induces infringement of

16  the '917 Patent by making, using, selling, offering for sale, and importing into the United States

17  products and/or methods covered by one or more claims of the '917 Patent.  The devices that

18  infringe one more claims of the '917 Patent include, but are not limited to, at least the Accused

19  Products.  Further discovery may reveal additional infringing products.

20      79.     The Accused Devices infringe one or more claims of the '917 Patent.  Apple

21  makes, uses, sells, offers for sale, and/or imports the Accused Products, in this District and

22  elsewhere in the United States, and thus directly infringes the '917 Patent.

23      80.     Apple indirectly infringes the '917 Patent, as provided in 35 U.S.C. § 271(b), by

24  inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-

25  users, in this District and elsewhere in the United States.  For example, manufacturers, resellers,

26  developers, customers, and end-users of the Accused Products directly infringe by making, using,

27  selling, offering to sell, and/or importing the Accused Products in the United States.  Apple has

28

1   acknowledged to Ericsson that it became aware of the '917 Patent no later than April 16, 2007.

2   Apple had knowledge and notice of the '917 Patent at least by April 16, 2007.

3       81.     Apple's affirmative acts in this District and elsewhere in the United States of

4   manufacturing, selling, distributing, and/or otherwise making available the Accused Products;

5   causing others to manufacture, sell, distribute, and/or make available the Accused Products; and/or

6   providing instructions, documentation, and/or other information regarding using the Accused

7   Products in the way Apple intends (including in-store technical support, online technical support,

8   product manuals, online documentation, developer information, API documentation, and other

9   information about the Accused Products) induce Apple's manufacturers, resellers, developers,

10  customers, and/or end-users to make, use, sell, and/or offer to sell the Accused Products in this

11  District and elsewhere in the United States in the way that Apple intends, in order to directly

12  infringe the '917 Patent.  Apple has performed and continues to perform these affirmative acts

13  with knowledge of the '917 Patent and with knowledge or willful blindness that the induced acts

14  directly infringe the '917 Patent.

15      82.     Apple also indirectly infringes the '917 Patent, as provided by 35 U.S.C. § 271(c),

16  by contributing to direct infringement committed by others, such as manufacturers, resellers,

17  developers, customers, and/or end-users, in this District and elsewhere in the United States.  Apple

18  had knowledge and notice of the '917 Patent at least by April 16, 2007.  Apple's affirmative acts

19  in this District and elsewhere in the United States of selling and offering to sell the Accused

20  Products and causing the Accused Products to be manufactured, used, sold, and offered for sale,

21  contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making,

22  using, selling, and/or offering to sell the Accused Products, such that the '917 Patent is directly

23  infringed. The Accused Products, and/or distinct components or features thereof, are an apparatus

24  for practicing the invention of the '917 Patent, are not staple articles or commodities of commerce,

25  have no substantial non-infringing uses, and are known by Apple to be especially made or

26  especially adapted for use in infringement of the '917 Patent.

27      83.     Apple's infringement of the '917 Patent has been and continues to be willful.  Upon

28  information and belief, Apple knew, should have known, or was willfully blind to the fact that, it

1  directly infringed and was causing others to directly infringe the '917 Patent.  Apple had

2  knowledge and notice of the '917 Patent at least by April 16, 2007.

3        84.      Apple's continued infringement of the '917 Patent has damaged and will continue

4  to damage Ericsson.

5                                    **DAMAGES**

6        85.      As a result of Apple's acts of infringement, Ericsson has suffered actual and

7  consequential damages.  Ericsson does not yet know the full extent of the infringement and its

8  extent cannot be ascertained except through discovery and special accounting.  To the fullest

9  extent permitted by law, Ericsson seeks recovery of damages at least for reasonable royalties,

10 unjust enrichment, and benefits received by Apple as a result of using the misappropriated

11 technology.  Ericsson further seeks any other damages to which Ericsson is entitled.

12                                **ATTORNEYS' FEES**

13       86.      Ericsson is entitled to recover reasonable and necessary attorneys' fees under

14 applicable law.

15                                   **JURY DEMAND**

16       Ericsson hereby demands a trial by jury on its claims for patent infringement.

17                               **PRAYER FOR RELIEF**

18       WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor

19 and grant the following relief:

20       A)      Adjudge that Apple infringes the Patents-in-Suit;

21       B)      Adjudge the Apple's infringement of the Patents-in-Suit was willful, and that

22               Apple's continued infringement of the Patents-in-Suit is willful;

23       C)      Award Ericsson damages in an amount adequate to compensate Ericsson for

24               Apple's infringement of the Patents-in-Suit, but in no event less than a reasonable

25               royalty under 35 U.S.C. § 284;

26       D)      Award enhanced damages pursuant to 35 U.S.C. § 284;

27       E)      Award Ericsson pre-judgment and post-judgment interest to the full extent allowed

28               under the law, as well as its costs;

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

F)      In lieu of an injunction, award a mandatory future royalty payable on each future product sold by Apple that is found to infringe one or more of the Patents-in-Suit, and on all future products which are not colorably different from products found to infringe;

G)      Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorney's fees pursuant to 35 U.S.C. § 285;

H)      Award such other relief as the Court may deem appropriate and just under the circumstances.

DATED:  May 4, 2015                Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
      GREGORY P. STONE
      STEVEN M. PERRY
      BENJAMIN J. HORWICH
      ZACHARY M. BRIERS

MCKOOL SMITH HENNIGAN, P.C.
      MIKE MCKOOL, JR. (*pro hac vice*)
      DOUGLAS A. CAWLEY (*pro hac vice*)
      COURTLAND L. REICHMAN

By:      */s/ Gregory P. Stone*
            GREGORY P. STONE

Attorneys for Defendants ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON

ERICSSON'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS