# Detre Decl. Ex. B

GENERAL ORDER NO. 13-20

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

## GENERAL ORDER ADOPTING MODEL ORDER FOCUSING PATENT CLAIMS AND PRIOR ART TO REDUCE COSTS

The attached Model Order Focusing Patent Claims and Prior Art to Reduce Costs is ADOPTED effective immediately. A redline/strikeout version of the Federal Circuit's model order and the Local Rules Committee's commentary regarding the Eastern District's model order have been included to provide background information.

Signed this 29th day of October, 2013.

**FOR THE COURT:**

_____
LEONARD DAVIS
Chief Judge


|  | Case No.: ____ |
|---|---|
| Plaintiff, | |
| v. | |
| Defendant. | |

# [MODEL] ORDER FOCUSING

# PATENT CLAIMS AND PRIOR ART

# TO REDUCE COSTS

The Court ORDERS[1] as follows:

1. This Order supplements all other discovery rules and orders. It streamlines the issues in this case to promote a "just, speedy, and inexpensive determination" of this action, as provided by Federal Rule of Civil Procedure 1.

*Phased Limits on Asserted Claims and Prior Art References*

2. By the date set for completion of claim construction discovery pursuant to P.R. 4-4, the patent claimant shall serve a Preliminary Election of Asserted Claims, which shall assert no more than ten claims from each patent and not more than a total of 32 claims. Not later than 14 days after service of the Preliminary Election of Asserted Claims, the patent defendant shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than twelve prior art references against each patent and not more than a total of 40 references.[2]

---

[1] The parties are encouraged to discuss limits lower than those set forth in this Model Order based on case-specific factors such as commonality among asserted patents, the number and diversity of accused products, the complexity of the technology, the complexity of the patent claims, and the complexity and number of other issues in the case that will be presented to the judge and/or jury. In general, the more patents that are in the case, the lower the per-patent limits should be. In cases involving several patent families, diverse technologies, disparate claims within a patent, or other unique circumstances, absent agreement of the parties, the court will consider flexibly whether circumstances warrant expanding the limits on asserted claims or prior art references. The parties shall jointly submit any proposed modifications by the deadline for submission of proposed docket control or discovery orders, but in no event later than the deadline for service of initial disclosures.

[2] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

3. No later than 28 days before the service of expert reports by the party with the burden of proof on an issue, the patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent from among the ten previously identified claims and no more than a total of 16 claims. By the date set for the service of expert reports by the party with the burden of proof on an issue, the patent defendant shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 references. For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference.

4. If the patent claimant asserts infringement of only one patent, all per-patent limits in this order are increased by 50%, rounding up.

*Modification of this Order*

5. Subject to Court approval, the parties may modify this Order by agreement, but should endeavor to limit the asserted claims and prior art references to the greatest extent possible. Absent agreement, post-entry motions to modify this Order's numerical limits on asserted claims and prior art references

must demonstrate good cause warranting the modification. Motions to modify other portions of this Order are committed to the sound discretion of the Court.[3]

---

[3] This Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial.

|  | Case No.: _____ |
|---|---|
| Plaintiff,<br><br>v.<br><br>Defendant. | |

# [MODEL] ORDER ~~LIMITING EXCESS~~ FOCUSING PATENT CLAIMS AND PRIOR ART TO REDUCE COSTS

The Court ORDERS[1] as follows:

1. This Order supplements all other discovery rules and orders. It streamlines the issues in this case to promote a "just, speedy, and inexpensive determination" of this action, as provided by Federal Rule of Civil Procedure 1.

*Phased Limits on Asserted Claims and Prior Art References*

2. ~~Not later than 40 days after the accused infringer is required to produce documents sufficient to show the operation of the accused instrumentalities~~ By the date set for completion of claim construction discovery pursuant to P.R. 4-4, the patent claimant shall serve a Preliminary Election of Asserted Claims, which shall assert no more than ten claims from each patent and not more than a total of 32 claims. Not later than 14 days after service of the Preliminary Election of Asserted Claims, the patent defendant shall serve a

---

[1] The parties are encouraged to discuss limits lower than those set forth in this Model Order based on case-specific factors such as commonality among asserted patents, the number and diversity of accused products, the complexity of the technology, the complexity of the patent claims, and the complexity and number of other issues in the case that will be presented to the judge and/or jury. In general, the more patents that are in the case, the lower the per-patent limits should be. In cases involving several patent families ~~or~~, diverse technologies, ~~or~~ disparate claims within a patent, or other unique circumstances, absent agreement of the parties, the court ~~should~~will consider flexibly whether circumstances warrant expanding the limits on asserted claims or prior art references. The parties shall jointly submit any proposed modifications ~~in their Federal Rule of Civil Procedure 26(f) Discovery Plan~~ by the deadline for submission of proposed docket control or discovery orders, but in no event later than the deadline for service of initial disclosures.

Preliminary Election of Asserted Prior Art, which shall assert no more than twelve prior art references against each patent and not more than a total of 40 references.[2]

   3. ~~Not later than 28 days after the Court issues its Claim Construction Order~~<ins>No later than 28 days before the service of expert reports by the party with the burden of proof on an issue</ins>, the patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent from among the ten previously identified claims and no more than a total of 16 claims.  ~~Not later than 14 days after service of a Final Election of Asserted Claims~~<ins>By the date set for the service of expert reports by the party with the burden of proof on an issue</ins>, the patent defendant shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 references. <ins>For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference.</ins>

   4. If the patent claimant asserts infringement of only one patent, all per-patent limits in this order are increased by 50%, rounding up.

---

[2] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist. ~~In cases involving several patent families or diverse technologies, or disparate claims within a patent, the court should consider flexibly whether circumstances warrant expanding the limits on prior art.~~

*Modification of this Order*

5. ~~Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify this order for good cause shown. Any request to increase the limits contained in this order must specifically show why the inclusion of additional asserted claims or prior art references is warranted. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1202, 1312–13 (Fed. Cir. 2011). A failure to seek such a modification will constitute acquiescence to the limits contained in this Order~~ Subject to Court approval, the parties may modify this Order by agreement, but should endeavor to limit the asserted claims and prior art references to the greatest extent possible. Absent agreement, post-entry motions to modify this Order's numerical limits on asserted claims and prior art references must demonstrate good cause warranting the modification. Motions to modify other portions of this Order are committed to the sound discretion of the Court.[3]

---

[3] This ~~Model~~ Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial.

3

EASTERN DISTRICT OF TEXAS LOCAL RULES ADVISORY COMMITTEE COMMENTARY REGARDING MODEL ORDER FOCUSING PATENT CLAIMS AND PRIOR ART TO REDUCE COSTS

Based on a request from the court, a working group of the Local Rules Advisory Committee undertook a review of the Model Order Limiting Excess Patent Claims and Prior Art prepared by the Federal Circuit Advisory Council's Model Order Committee (the "Model Order"). The working group's goal was to determine whether the Model Order, or some portion or variation of it, should be recommended for inclusion in the Local Rules or practice of the Eastern District. In this regard, the working group's task was similar to that of the working group formed to undertake a review of the Federal Circuit Advisory Council's Model Order Regarding E-Discovery in Patent Cases.

After consideration, the working group determined that a revised version of the Model Order could be helpful to practice in the Eastern District. However, rather than incorporating the revised version in the Local Rules, the working group recommended including it as an appendix to the Local Rules, much like the version of the Model Order Regarding E-Discovery which was adopted by the court. This approach allows flexibility for both litigants and the court to tailor limits on asserted claims and prior art references based on differing facts, case to case. This approach also allows the court to decide questions that may arise regarding the

interpretation or application of the recommended limits in a particular case without having to generally construe or interpret a local rule.

Recognizing the substantial work that went into the Model Order, as well as the policy considerations that motivated it, the working group began its effort with the Model Order as the baseline.  The working group then made the following changes to the Model Order based on its members' experience with practice in the Eastern District representing both plaintiffs and defendants in patent cases:

1. Revising the title to emphasize the goal of reducing the burden on the court and lowering the expense of the parties by focusing patent cases to the issues at the core of the dispute.

2. Revising footnote 1 to reflect that the initial consideration of the limitations for a given case should be flexible, taking account of all relevant and foreseeable case specific issues.  This is achieved by:  1) relocating and amending language from footnote 2 to demonstrate that all pertinent issues presented by the parties should be considered before imposing case specific limitations, and 2) changes to paragraph 5 requiring that "post-entry" motions to modify the order's numerical limits require a showing of good cause, while committing all other modifications to the court's discretion. The last sentence of footnote 1 is revised to reflect the fact that many judges

      require the parties to submit joint proposed docket control and discovery orders rather than a Fed. R. Civ. P. 26(f) discovery plan.

3. Extending paragraph 2's deadline to serve a Preliminary Election of Asserted Claims to the date set for the completion of claim construction discovery pursuant to P.R. 4-4. In the experience of the members of the working group, the costs associated with invalidity contentions and claim construction are two of the most significant costs incurred in the pretrial phase of patent cases. However, reducing the cost of invalidity contentions through an early election has proved elusive considering the early stage at which invalidity contentions are served and the overriding need to give both plaintiffs and defendants sufficient information to make a meaningful election. Targeting the cost of claim construction therefore seems to be a more feasible object of the initial narrowing. The working group extended the Model Order's deadline for the preliminary election to the date for the completion of claim construction discovery. The working group made this extension for two reasons. First, the later preliminary election reflects the fact that the completeness of an accused infringer's initial production of documents sufficient to show the operation of the accused instrumentality is often subject to reasonable debate. The later preliminary election allows time to resolve such matters. Second, the later deadline allows initial claim

construction disclosures to take place, giving the parties the benefit of each other's claim construction positions in making their preliminary elections. At the same time, the preliminary election is early enough to avoid undue expense from briefing and arguing excess claim construction issues. Significantly, the timing of the preliminary election will also lessen the court's burden in preparing for, hearing, and ruling on claim construction issues.

4. Relocating and amending the second sentence of footnote 2 to footnote 1 where it better fits with the discussion of the flexible considerations appropriate before imposing limits in a given case. The slight amendments to the relocated sentence avoid implication that the Model Order's identified circumstances warranting enlargement of the order's limitations are exhaustive or limited to expanding only the number of prior art references, not also the number of asserted claims.

5. Revising paragraph 3's deadline to serve a Final Election of Asserted Claims to not later than 28 days before the service of expert reports by the party with the burden of proof, rather than the Model Order's tethering of the deadline to the issuance of the claim construction order. The principal object of the final narrowing is lessening the costs associated with expert witnesses and final preparation of the case for trial. Requiring the plaintiff

4

to make its final election 28 days before the deadline to serve opening expert reports permits the parties' experts to focus on those claims and references that will remain for trial.  The timing of the final election also gives the parties maximum opportunity to consider discovery and claim construction in making their election, and may move the presentation of any discovery disputes to points earlier in the case.  The anticipated cost savings is necessarily dependent on the issuance of a claim construction order sufficiently far in advance of the narrowing date to permit the parties to make a meaningful election.  In the experience of the members of the working group, this will be the usual situation.  However, should the court's claim construction order be delayed, the parties may need to seek an extension of the deadline to make their final election until some period after the issuance of the order, a matter committed to the court's discretion as discussed in point 7, below.  Revision of paragraph 3's deadline for the final election also reflects the reality that many judges set deadlines for expert reports which are not tied to the issuance of the claim construction order.

6. Supplementing paragraph 3 by stating that each obviousness combination counts as a separate prior art reference.  A small number of prior art references can be combined to form an exponentially greater number of bases for invalidity.  For the limit on prior art references to be meaningful,

5

      each obviousness combination should count as a separate prior art reference. Not imposing this requirement for purposes of the preliminary election gives defendants increased flexibility to develop the appropriate combinations as discovery proceeds. However, by the time of the final election, each basis for invalidity should be specifically identified.

7. Revising paragraph 5 to provide greater flexibility to modify the order's requirements depending on the circumstances of the case. Flexibility allows the order to account for such things as adjustments in the disclosure deadlines necessitated by the timing of the issuance of the claim construction order or other case specific events. However, post-entry motions to modify the numerical limits of the order remain subject to a showing of good cause.