WILLIAM F. LEE (admitted *pro hac vice*)
william.lee@wilmerhale.com
JOSEPH J. MUELLER (admitted *pro hac vice*)
joseph.mueller@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
CHRISTINE E. DUH (CA SBN 228544)
christine.duh@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, a Swedish Corporation, and ERICSSON, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 3:15-cv-00154-JD<br><br>**APPLE'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ASSERTED CLAIMS OF U.S. PATENT NOS. 6,445,917 AND 8,023,990 UNDER 35 U.S.C. § 101** |
| TELEFONAKTIEBOLAGET LM ERICSSON, a Swedish Corporation, and ERICSSON, INC., a Delaware Corporation,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California Corporation,<br><br>Counterclaim-Defendant. | Hon. James Donato<br>Hearing Date: November 18, 2015<br>Time: 10:00am<br>Courtroom: 11 (19th Floor) |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .....1

MEMORANDUM OF POINTS AND AUTHORITIES .....1

ISSUES TO BE DECIDED .....1

INTRODUCTION .....1

ARGUMENT .....2

I. Legal Standard .....2

A. Patent Eligibility Under Section 101 Is An Issue Of Law That Can Be Decided Prior To Claim Construction. .....2

B. Abstract Ideas Implemented On General Purpose Computers Are Not Patentable. .....2

II. The Asserted Claims Of The '917 And '990 Patents Are Invalid Under 35 U.S.C. § 101 .....4

A. The Asserted Claims Of The '917 Patent Fail Both Steps Of The *Alice* Test. .....4

1. *Alice* Step 1: The Asserted Claims Are Directed To The Abstract Idea Of Generating A Report Upon The Occurrence Of An Event. .....4

2. *Alice* Step 2: The Asserted Claims Do Not Add Any Inventive Concept To The Abstract Idea. .....7

B. The Asserted Claims Of The '990 Patent Fail Both Steps Of The *Alice* Test. .....10

1. *Alice* Step 1: The Asserted Claims Are Directed To The Abstract Idea Of Deciding To Disregard A Command Directed To A Group And To Follow Commands Directed To An Individual. .....10

2. *Alice* Step 2: The Asserted Claims Do Not Add Any Inventive Concept To The Abstract Idea. .....12

CONCLUSION .....14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)....................5

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
No. W:15-CV-030, 2015 U.S. Dist. LEXIS 92889 (W.D. Tex. July 7, 2015)....................3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014).................... *passim*

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*,
687 F.3d 1266 (Fed. Cir. 2012)....................2

*Bilski v. Kappos*,
561 U.S. 593 (2010)....................2

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)....................2, 9

*CertusView Tech., LLC v. S&N Locating Servs., LLC*,
No. 2:13-cv-346, 2015 U.S. Dist. LEXIS 7126 (E.D. Va. Jan. 21, 2015)....................6

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
76 F. Supp. 3d 553 (D. Del. 2014)....................3, 8

*Cogent Medicine, Inc. v. Elsevier Inc.*,
70 F. Supp. 3d 1058 (N.D. Cal. 2014)....................7

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*,
55 F. Supp. 3d 544 (D. Del. 2014)....................6, 11, 12

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................9

*Eclipse IP LLC v. McKinley Equip. Corp.*,
No. SACV 14-742-GW(AJWx), 2014 U.S. Dist. LEXIS 125529 (C.D. Cal. Sept. 4, 2014)..11

*In re TLI Commc'ns LLC Patent Litig.*,
MDL No. 1:14-MD-2534, 2015 U.S. Dist. LEXIS 18997 (E.D. Va. Feb. 6, 2015)....................9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)....................5, 6

*Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*,
76 F. Supp. 3d 536 (D. Del. 2014)....................3

*Intellectual Ventures I LLC v. Symantec Corp.*,
No. 10-1067-LPS, 12-1581-LPS, 2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015).......6

*Jericho Sys. Corp. v. Axiomatics, Inc.*,
No. 3:14-CV-2281-K, 2015 U.S. Dist. LEXIS 60421 (N.D. Tex. May 7, 2015).............11, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)..........3

*Microstrategy Inc. v. Apttus Corp.*,
No. 3:15-cv-21-JAG, 2015 U.S. Dist. LEXIS 93419 (E.D. Va. July 17, 2015)..........3

*Parker v. Flook*,
437 U.S. 584 (1978)..........2, 6

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)..........2

*Synopsys, Inc. v. Mentor Graphics Corp.*,
78 F. Supp. 3d 958 (N.D. Cal. 2015)..........9

*Thales Visionix, Inc. v. United States*,
122 Fed. Cl. 245 (2015)..........9

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
78 F. Supp. 3d 884 (N.D. Ill. 2015)..........6

*Versata Dev. Grp. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015)..........9

**Statutes**

35 U.S.C. § 101.......... *passim*

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 18, 2015, at 10:00am, before the Honorable James Donato, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, plaintiff Apple Inc. ("Apple") will, and hereby does, move for summary judgment of invalidity of the asserted claims of U.S. Patent Nos. 6,445,917 and 8,023,990 under 35 U.S.C. § 101.

This Motion is made on the grounds that the asserted claims of these patents cover unpatentable subject matter under 35 U.S.C. § 101, and is based on this Notice, the accompanying Memorandum of Points and Authorities, all papers and pleadings on file, such other evidence as may be presented at or before hearing on the Motion, and all matters of which judicial notice may be taken.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

Whether the asserted claims of U.S. Patent Nos. 6,445,917 ("'917 patent") and 8,023,990 ("'990 patent") cover unpatentable abstract ideas, and are invalid under 35 U.S.C. § 101.

**INTRODUCTION**

Ericsson's '917 and '990 patents, two of the seven patents in suit, claim abstract concepts in the context of cellular systems. The '917 patent is directed to the concept of generating and sending a report upon the occurrence of an event. The '990 patent is directed to the concept of following commands to an individual while ignoring commands broadcast to a group. None of the asserted claims purports to claim any inventive hardware or method for carrying out the claimed abstract concepts. The asserted claims are directed to patent-ineligible subject matter and fail the two-step framework articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), and therefore they are invalid under 35 U.S.C. § 101.

## ARGUMENT

### I. Legal Standard

#### A. Patent Eligibility Under Section 101 Is An Issue Of Law That Can Be Decided Prior To Claim Construction.

Whether a claim is drawn to patent-eligible subject matter under Section 101 is an issue of law. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1331 (Fed. Cir. 2010). Accordingly, the Supreme Court has instructed that the evaluation of patent eligibility under Section 101 "must precede the determination of whether [a] discovery is, in fact, new or obvious." *Parker v. Flook*, 437 U.S. 584, 593 (1978). Consistent with that principle, many courts have resolved Section 101 challenges at the early stages of litigation, without conducting claim construction. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming grant of judgment on pleadings under Fed. R. Civ. P. 12(c)); *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").

#### B. Abstract Ideas Implemented On General Purpose Computers Are Not Patentable.

Section 101 defines the scope of patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." Abstract ideas are patent-ineligible because they are basic tools in the "storehouse of knowledge" that are "free to all . . . and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (internal quotation marks omitted). The Supreme Court has described "the concern that drives [this exception to patentability] as one of pre-emption." *Alice*, 134 S. Ct. at 2354. "Monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (citations and internal quotation marks omitted).

The Supreme Court has also made clear that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358. In other words, the invocation of basic computer hardware to perform basic computer functions – *e.g.*, storing, transmitting, receiving – is insufficient to make claims patent eligible under section

101. *Id.* at 2360 (finding that "specific hardware" consisting of a "data processing unit," a "communications controller," and a "data storage unit" were "purely functional and generic"); *see also Microstrategy Inc. v. Apttus Corp.*, No. 3:15-cv-21-JAG, 2015 U.S. Dist. LEXIS 93419, at *12-15 (E.D. Va. July 17, 2015) (finding claim reciting "data storage devices," "an intelligence server," "an object server," "a query engine," and "an analytical engine" to cover generic computer functions); *Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*, 76 F. Supp. 3d 536, 546 & n.5 (D. Del. 2014) (describing as "generic" a "telephone, pager, PDA, or the like," a "pager network," and a "cellular network"); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 564 (D. Del. 2014) ("even the recitation of specific hardware elements such as a 'processor,' a 'solid state memory,' and a 'transceiver' is insufficient to confer specificity"); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, No. W:15-CV-030, 2015 U.S. Dist. LEXIS 92889, at *15 (W.D. Tex. July 7, 2015) (patent claiming use of "cellular phones" and "downloadable applications" to disseminate broadcasted content held to be abstract).

In *Alice*, the Supreme Court set forth a two-part test to analyze patent eligibility: (1) determine whether the claims are directed to an abstract idea or other patent-ineligible concept; and (2) if so, determine whether the claim amounts to "significantly more" than the abstract idea. *Alice*'s second step involves determining whether there are "additional elements [that] 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)). The second step entails a search for an "'inventive concept'" "that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotation omitted). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept" needed to make this transformation. *Id.* at 2357 (citation and internal quotation marks omitted). If the claim does not recite "significantly more" than the abstract idea, it is invalid. *Id.* at 2355.

## II. The Asserted Claims Of The '917 And '990 Patents Are Invalid Under 35 U.S.C. § 101.

### A. The Asserted Claims Of The '917 Patent Fail Both Steps Of The *Alice* Test.

#### 1. *Alice* Step 1: The Asserted Claims Are Directed To The Abstract Idea Of Generating A Report Upon The Occurrence Of An Event.

The '917 patent is titled "Mobile Station Measurements With Event-Based Reporting." The '917 patent is directed to the abstract concept of "event-based reporting"—the use of conditions (or "events") to determine whether a "mobile station" (cell phone) should send a report in a cellular network. ('917 patent at Abstract; col. 3, ll. 30-31.) The "Summary of the Invention" describes the alleged invention as follows:

> The ***present invention*** provides ***event-based or driven reporting*** of mobile station measurements. A mobile station measures a radio-related parameter for one or more cells in a radio network. The mobile station evaluates the measured radio-related parameter with respect to a predetermined condition or event and determines that the predetermined condition is satisfied or that the event has occurred. Based on that evaluation, the mobile radio sends a report to the radio access network.

(*Id.* at col. 3, ll. 30-38 (emphasis added).)

Consistent with this disclosure in the specification, the sole asserted independent claim—claim 1—recites the four steps:

> A mobile radio, for use in a mobile radio communications system including plural mobile stations communicating with a radio access network having plural cell areas, electronically enabled to perform the following operations including:
>
>> ***measure*** a radio-related parameter for one or more cells;
>>
>> ***add*** either a positive or a negative offset to the measured radio-related parameter;
>>
>> ***evaluate*** the offset, measured radio-related parameter for the one or more cells with respect to a predetermined condition and determine that the predetermined condition is satisfied; and
>>
>> ***report*** to the radio access network the determination for purposes of handover control or power control.

(*Id.* at col. 12, ll. 38-52 (emphasis added).) Claim 1 is representative of the other asserted claims (claims 2, 5, 11, 12, 13, 14, 17), all of which depend from claim 1 and recite the same abstract idea.

The abstract concept of "event-based" reporting is a basic building block of communication that has likely existed since the earliest human communications. In fact, "event-based reporting" happens every single time anyone asks another person to perform a task with an instruction to report back when the task is complete. A simple illustration is provided in the context of the stock market, where a person instructs her stock broker to let her know when a stock price has increased by a certain amount. For example, if a client wants to know when a stock has increased $10 above the purchase price, the broker measures the price of the stock, subtracts $10 (*i.e.*, adds a negative offset), evaluates that amount against the original purchase price, and reports to the client.

The Federal Circuit considered and found patent-ineligible similar abstract ideas in *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013). In *Accenture*, the claims recited a system to generate tasks to be performed, which called for different databases, a client for accessing the database, various software components, and a server to interact with the different hardware and software components. *Id.* at 1344. Notwithstanding these various limitations and computer components, the court recognized that the "heart of the" system was the "abstract concept" of "generating tasks [based on] rules . . . to be completed upon the occurrence of an event." *Id.* Whereas the claims considered in *Accenture Global Services* included at least some hardware elements, the body of the asserted claims in the '917 patent contains none. As in *Accenture Global Services*, the asserted '917 claims "contain only generalized steps of generating a task in response to events," and therefore are directed to an abstract concept. *Id.* at 1346.

Similarly, in *Intellectual Ventures v. Capital One*, the Federal Circuit found abstract method claims comprised of storing pre-set spending limits in a database and notifying a user when the spending limits have been reached. 792 F.3d at 1367. The claims at issue were directed to the same abstract principle as the asserted claims of the '917 patent— using an event as a trigger for sending a notification or report. Because "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment," the fact that the '917 patent is limited to the field of cellular telecommunication systems does not

make it non-abstract. *Id.* at 1366; *see also id.* at 1368 n.2 (listing numerous Federal Circuit decisions that "rejected similar concepts as being directed towards ineligible subject-matter").

Several district court decisions have likewise found that the "idea of making a conditional decision" is abstract under Section 101. *See Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 78 F. Supp. 3d 884, 893 (N.D. Ill. 2015) (claim providing that impairment testing changes "in response to one or more of several listed factors" represented "abstract idea of making a conditional decision"); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, 55 F. Supp. 3d 544, 548-50 (D. Del. 2014) (finding patent-ineligible under Section 101 claims directed at "optimizing a telephony network" by receiving a request from an application and determining whether a user prompt is required before granting the application access to the network, because the claims were directed at the abstract concept of making a conditional decision).[1]

Ericsson may not seek to monopolize the use of the abstract idea of "event-based reporting," whether in the cellular environment or otherwise. "[L]imiting the use of an abstract idea to a particular technological environment" "is not enough for patent eligibility." *Alice*, 134 S. Ct. at 2358 (internal quotation marks omitted); *see also Intellectual Ventures v. Capital One,* 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."); *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 12-1581-LPS, 2015 U.S. Dist. LEXIS 52527, at *33-34 (D. Del. Apr. 22, 2015) (limiting abstract idea to particular technological environment of spam e-mail detection did not render claims patent-eligible); *CertusView Tech.*,

---

[1] Pre-*Alice* decisions similarly found claims like those in the '917 patent to be patent-ineligible under Section 101. In *Parker v. Flook*, for example, the Supreme Court considered the patent-eligibility of a method to measure whether a process variable (such as temperature) exceeded a "predetermined 'alarm limit'" and then computing an updated alarm limit according to a formula. 437 U.S. at 585. The Supreme Court held that it was "absolutely clear" that the claimed method was ineligible under Section 101: "The chemical processes involved in catalytic conversion of hydrocarbons are well known, as are the practice of monitoring the chemical process variables, the use of alarm limits to trigger alarms, the notion that alarm limit values must be recomputed and readjusted, and the use of computers for 'automated monitoring alarming.' Respondent's application simply provides a new and presumably better method for calculating alarm limit values." *Id.* at 594-95. As in the asserted claims of the '917 patent, the claims considered in *Parker* merely measured (the process variable of temperature), evaluated with respect to a predetermined condition (the alarm limit), and reported an updated alarm limit.

*LLC v. S&N Locating Servs., LLC*, No. 2:13-cv-346, 2015 U.S. Dist. LEXIS 7126, at *112-113 (E.D. Va. Jan. 21, 2015) (limiting abstract idea to particular technological environment of a system to mark location of an underground utility did not render claims patent-eligible); *Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1065 (N.D. Cal. 2014) (limiting abstract idea to the particular technological environment of the medical field did not render claims patent eligible).

**2. *Alice* Step 2: The Asserted Claims Do Not Add Any Inventive Concept To The Abstract Idea.**

The asserted claims also fail the second step of the *Alice* test. The asserted claims, whether considered as individual elements or an ordered combination, lack any limitation sufficient to transform the claimed abstract idea of event-based reporting into a patent-eligible invention.

Claim 1 recites four steps: measure, add, evaluate, and report. The patent acknowledges the first and fourth steps (*e.g.*, measuring radio-related parameters and reporting to the network for purposes of handover control or power control) are conventional techniques. For example, the patent discloses that in prior art cellular systems, mobile stations "could be used . . . as measurement tools to provide the radio network with important measurements reflecting the stations radio environment [and] [t]hose measurements could then be used to facilitate radio network operations like handover, power control, resource management, etc." ('917 patent at col. 2, ll. 58-64.) The patent also discloses that in the prior art, mobile radios "periodically provide measurement reports to the radio network for a standard set of radio-related parameters." (*Id*. at col. 2, ll. 65-67.) The alleged novelty of the claimed invention is the use of conditions for reporting as recited in the third step, and the second step appends to this abstract idea the conventional notion of "add[ing]" an offset, which itself is an abstract concept. When considered as an ordered combination, the steps amount to little more than the abstract concept: "Let me know when you have more than X of something."

The asserted dependent claims similarly add nothing meaningful to the abstract concept of "event-based" reporting and merely add other generic non-hardware elements. These

additional limitations specify, for example, the information in the report (claim 2); the measured radio-related parameters (claim 5); the nature of the offset (claims 11 and 12); and the circumstances when a report will be sent (claims 13, 14, and 17).

The claim elements require no specialized algorithm or programming. In fact, the specification expressly highlights the absence of any "particular operation, evaluation, or algorithm" as an advantage:

> Preferably, measured parameters and predetermined events and/or conditions are defined in general terms so that they are not tightly coupled to a particular operation, evaluation, or algorithm.

(*Id.* at col. 7, ll. 33-36.) The specification also emphasizes the generic nature of the triggering events, again touting as an advantage that the claimed "events" can be "***any*** predetermined occurrence or state": "It should be understood that the terms 'event' or condition, when used alone, should be broadly interpreted to include any predetermined occurrence or state that causes the mobile station to send a measurement report." (*Id.* at col. 8, ll. 62-65.) *See, e.g., Cloud Satchel, LLC*, 76 F. Supp. 3d at 563 (noting that the specification's emphasis that the claimed "portable electronic document reference transport device" "may be any 'suitable' portable computer" and the "electronic document reference may appear in 'any suitable format'" highlights the generic nature of the computer implementation).

The patent does not claim to have developed any new hardware for performing event-based reporting either. It acknowledges that:

> In a typical cellular radio system . . . [e]ach base station includes a plurality of channel units including a transmitter, a receiver, and a controller and may be equipped with an omnidirectional antenna . . . . Each mobile station also includes a transmitter, a receiver, a controller, and a user interface. . . .

('917 patent at col. 1, ll. 10-24.) The claimed invention does not add any new, inventive hardware to this "typical" cellular radio system. In fact, the body of the asserted claims contain no hardware elements at all. The "mobile radio" recited in the preambles of the asserted claims comprises only the "typical" components of a mobile radio: a "data processing and control unit," "battery," and "transceiver." (*Id.* at Fig. 1B; col. 6, ll. 15-25.) These are precisely the same types of generic hardware components that the Court in *Alice* found to be "purely functional and

generic." *Alice*, 134 S. Ct. at 2360 ("[W]hat petitioner characterizes as specific hardware—a 'data processing system' with a 'communications controller' and 'data storage unit' . . .—is purely functional and generic.").

Instead, the '917 patent merely attempts to claim the abstract concept of "event-based reporting" in the context of conventional mobile radio communications. (*See* '917 patent at col. 3, ll. 30-31 ("The present invention provides event-based or driven reporting of mobile station measurement.").) But the prohibition against patenting an abstract concept "cannot be circumvented by attempting to limit the use of [the concept] to a particular technological environment," even if that technological environment may be generally understood as technologically complex and sophisticated. *Diamond v. Diehr*, 450 U.S. 175, 191 (1981); *see also Thales Visionix, Inc. v. United States*, 122 Fed. Cl. 245, 248-49, 253 (2015) (finding ineligible under Section 101 an "extraordinarily complicated" patent describing and claiming "systems for using inertial trackers to track motion relative to a moving platform instead of relative to the earth"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 78 F. Supp. 3d 958, 964-65 (N.D. Cal. 2015) (finding ineligible under Section 101 three patents directed to a method of automated integrated circuit chip design known as "logic synthesis"). Furthermore, the ability of a mobile radio, or any type of computer, to "measure," "add," "evaluate," and "report" over a network are conventional functions routinely performed by general-purpose computers. "[A] computer [that] receives and sends . . . information over a network – with no further specification – is not even arguably inventive." *buySAFE*, 765 F.3d at 1355; *see also In re TLI Commc'ns LLC Patent Litig.*, MDL No. 1:14-MD-2534, 2015 U.S. Dist. LEXIS 18997, at *49 (E.D. Va. Feb. 6, 2015) ("it is difficult to conceive of a more conventional computer activity than the receipt of data").

Because the elements of the asserted claims fail to disclose non-routine and unconventional activities—when considered individually and as an ordered combination—the claims lack the "inventive step" that would make the abstract idea of "event-based reporting" patentable under section 101. *See, e.g.*, *Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) (finding the asserted claims failed to disclose an inventive step because the

"claim limitations separately . . . [were] well-understood, routine, conventional activities previously known to the industry. . . . Similarly, when considered as an ordered combination, the components of each claim add nothing that is not already present when the steps are considered separately.").

### B. The Asserted Claims Of The '990 Patent Fail Both Steps Of The *Alice* Test.

#### 1. *Alice* Step 1: The Asserted Claims Are Directed To The Abstract Idea Of Deciding To Disregard A Command Directed To A Group And To Follow Commands Directed To An Individual.

The '990 patent, entitled "Uplink Scheduling in a Cellular System," is directed to the concept of deciding to ignore a command directed to a group and instead follow a command directed to an individual. The patent claims this abstract concept in the context of "transmission power control commands," which are commands conventionally used in cellular systems to direct cell phones to adjust the power level of their transmissions to the base station.

In the "Summary," the patent describes the alleged invention as follows: "According to the method, the transmission power control commands received by the users comprise an identifier for the intended user or users; the identifier is either an identifier for a specific user or for a group of users, and according to the method of the invention, a user disregards a transmission power control command if the identifier which is comprised in the transmission power control command is for a group of users in which that user is included." ('990 patent at col. 3, ll. 4-11.) Accordingly, the patent claims a method in which a user follows a command if the identifier is for a specific user and disregards the command if the identifier is for a group. Claim 1 is representative:

> A method implemented by a user terminal in a mobile communication system for controlling the transmit power of a user terminal, said method comprising:
>
> > receiving by said user terminal a transmission power control command on a downlink control channel, the transmission power control demand being associated with an identifier that identifies either a specific user terminal or a group of user terminals;
> >
> > adjusting the transmit power of the user terminal on an uplink control channel responsive to the transmission power control command if the identifier is a terminal-specific identifier for the user terminal; and
> >
> > disregarding the transmission power control command if the identifier is for a group of user terminals.

(*Id.* at col. 8, ll. 6-20.) In other words, the user terminal either follows or disregards the transmission power control command depending on whether the command is directed to a specific user or a group.

Each of the other asserted claims (2, 4, 8, and 10) is directed to the same abstract idea. Claims 2 and 4 depend from claim 1. Independent claim 7, on which claims 8 and 10 depend, is an apparatus claim corresponding to method claim 1. Specifically, it is directed to a user terminal comprising "a control processor . . . to disregard the transmission power control command if the identifier is for a group of user terminals." (*Id.* at col. 8, ll. 42-62.)

The idea of deciding to ignore commands directed to a group, and following instead those commands directed to a specific individual is a basic decision that we experience in daily life. A parent who instructs three children to do a chore is often ignored, but will witness a different response if a direct command is given to one child. When a teacher puts a math problem on the board, and asks the class to give the answer, some students may never raise their hands; however, they will respond when called upon individually.

Since *Alice*, numerous courts have found "commonplace and time-honored practices" of the kind described in the '990 patent to be abstract ideas. The abstract idea in the '990 patent resembles that considered in *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 U.S. Dist. LEXIS 125529 (C.D. Cal. Sept. 4, 2014), which held abstract the idea of "asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else." *Id.* at *20. Similarly, in *Comcast IP Holdings v. Sprint*, the court found invalid a patent that claimed a telephone network optimization method comprising: (1) receiving a request, and (2) determining whether the request requires a user prompt. *Comcast*, 55 F. Supp. 3d at 548. The court found that "at the heart of the claim is the very concept of a decision," and the concept of "determining that a decision should be made" is an abstract idea. *Id.*

More recently, in *Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14-CV-2281-K, 2015 U.S. Dist. LEXIS 60421 (N.D. Tex. May 7, 2015), the court considered the patent-eligibility of claims relating to applying a rule to determine whether to allow an action to occur. The court

determined that these claims were directed to the abstract idea that "people who meet certain requirements are allowed to do certain things." *Id.* at *11. The asserted claims of the '990 patent are, if anything, even more abstract than those considered in *Jericho*. Whereas the claims in *Jericho* prescribed the process of obtaining rules and applying them, the '990 asserted claims simply prescribe a rule – if X, follow the command, if Y, ignore the command.

Ericsson may not seek to preempt the basic idea of making a decision to follow commands directed to an individual, even if limited to a technological context. *See supra* at 6. "A decision is a basic tool of scientific and technological work, and is therefore a patent ineligible abstract idea." *Comcast*, 55 F. Supp. 3d at 549.

#### 2. *Alice* Step 2: The Asserted Claims Do Not Add Any Inventive Concept To The Abstract Idea.

The asserted claims of the '990 patent also fail the second step of the *Alice* test. The asserted claims, whether considered as individual elements or an ordered combination, contain no inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. Independent claim 1 is a method claim that involves a generic "user terminal" and otherwise recites no hardware at all. ('990 patent at col. 8, ll. 6-20.) The only alleged inventive step in claim 1 is disregarding the transmission power control command for a group of user terminals; each of the other steps in claim 1 is described in the "Background" of the '990 patent as admitted prior art:

| Claim 1 of the '990 Patent | "Background" of the '990 Patent |
|---|---|
| A method implemented by a user terminal in a mobile communication system for controlling the transmit power of a user terminal, said method comprising: | The Background discloses a method in a mobile communication system for controlling the transmit power of a user terminal. (*See, e.g.*, '990 patent at col. 1, ll. 24-29 ("One of the downlink control channels in the LTE system is the PDCCH channel, the Physical Downlink Control Channel. The PDCCH is used to carry Downlink Control Information, DCI, such as, for example, scheduling decisions, transmission power control commands, and other specific control signaling.").) |

| Claim 1 of the '990 Patent | "Background" of the '990 Patent |
|---|---|
| receiving by said user terminal a transmission power control command on a downlink control channel, the transmission power control command being associated with an identifier that identifies either a specific user terminal or a group of user terminals; | The Background describes receiving transmission power control commands on a downlink control channel (the PDCCH). (*See id.*) It further describes an identifier that identifies either a specific user terminal or a group of user terminals. (*See, e.g., id.* at col. 1, ll, 45-52 ("[R]egardless of the DCI format, the PDCCH will comprise a so called RNTI, Radio-Network Temporary Identifier, which is an identity for the user terminal for which the PDCCH and the associated DCI is intended. In order to enable the use of RNTI, each user terminal in a cell is assigned its own RNTI, the so called C-RNTI, which may be used when making downlink transmissions to that user terminal."); *id.* at col. 2, ll. 18-23 ("However, in addition to having a C-RNTI for the purposes of downlink 'unicast' data, each terminal can also be allocated one or several so called 'group RNTIs'. A group RNTI is an identity which is common to a plurality of terminals in a cell, and is consequently used to transmit downlink information which is relevant to more than one terminal.").) |
| adjusting the transmit power of the user terminal on an uplink control channel responsive to the transmission power control command if the identifier is a terminal-specific identifier for the user terminal; and | The Background describes adjusting the transmit power of the user terminal on an uplink control channel responsive to the transmission power control command. (*See, e.g., id.* at col. 2, ll. 8-12 ("In order to control the PUCCH output power of user terminals in a cell, the PDCCH comprises two bits which signify the allowed transmission power of the PUCCH for a user terminal. The terminal uses the information given in these two bits to increase or decrease the PUCCH transmission power.").) |

Independent apparatus claim 7 does not add any meaningful limitation to the abstract idea either. It recites a generic "transceiver" and "control processor" to implement the same method in claim 1 and therefore also fails to claim patent-eligible subject matter. *See Alice*, 134 S.Ct. at 2360 ("Put another way, the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the apparatus claims recite a handful of generic computer components configured to implement the same idea."). Likewise, the four asserted dependent claims merely add other conventional non-

hardware elements.  Claims 4 and 10 specify the control channel, and claims 2 and 8 specify a message format, both of which are described in the "Background" of the '990 patent as admitted prior art.  (*See* '990 patent at col. 1, ll. 24-26 ("One of the downlink control channels in the LTE system is the PDCCH channel, the Physical Downlink Control Channel."); *id.* at col. 1, l. 45 ("The PDCCH can use various formats for the DCI.").)

The only alleged novelty of the claims is the abstract idea of ignoring commands when several users are addressed simultaneously and following commands addressed to an individual user.  Ericsson cannot use the patent law to preempt this age-old decisional process.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant summary judgment that all asserted claims of the '917 and '990 patents are invalid under 35 U.S.C. § 101 because they claim patent-ineligible subject matter.

Dated:  October 14, 2015

WILMER CUTLER PICKERING
HALE AND DORR LLP


/s/ Mark D. Selwyn

Mark D. Selwyn


*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 14, 2015, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.5.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

                /s/ Mark D. Selwyn

                Mark D. Selwyn

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28