GREGORY P. STONE (Bar No. 78329)
gregory.stone@mto.com
STEVEN M. PERRY (Bar No. 106154)
steven.perry@mto.com
BENJAMIN J. HORWICH (Bar No. 249090)
ben.horwich@mto.com
ZACHARY M. BRIERS (Bar No. 287984)
zachary.briers@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

COURTLAND L. REICHMAN (Bar No. 268873)
creichman@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Telephone:    (650) 394-1400
Facsimile:    (650) 394-1422

MIKE MCKOOL, JR. (*pro hac vice*)
mmckool@mckoolsmith.com
DOUGLAS A. CAWLEY (*pro hac vice*)
dcawley@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-1000
Facsimile:    (214) 978-4044

*Attorneys for Ericsson Inc. and
Telefonaktiebolaget LM Ericsson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>              Plaintiff,<br><br>      vs.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON, INC.,<br><br>              Defendants. | Case No. 3:15-cv-00154-JD<br><br>**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Judge:    Hon. James Donato |

# TABLE OF CONTENTS

Page

I. '917 PATENT ................................................................................................................... 1

   A. "offset" and "hysteresis parameter" ...................................................................... 1

   B. "mobile radio . . . electronically enabled to . . . measure a radio-related parameter for one or more cells" ............................................................................ 2

II. '474 PATENT: "prior to decoding of the random access request" ..................................... 3

III. '417 PATENT: "means for generating an algorithm-specific security key" ....................... 4

IV. '150 PATENT ................................................................................................................... 6

   A. "an extension indicator of a second type . . ." ........................................................ 6

   B. "means for dividing said data units into segments" ............................................... 7

V. '992 PATENT: "a user terminal identifier indicating a scrambling sequence. . ." .............. 8

VI. '710 PATENT ................................................................................................................... 9

   A. Order of the performance of the elements ............................................................. 9

   B. "radio link controller configured to . . ." .............................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003) ...................................................................................................9

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
    504 F.3d 1236 (Fed. Cir. 2007) ...................................................................................................5

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003) ............................................................................................9, 10

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) ...................................................................................................5

*Bell & Howell Document Mgmt. Products Co. v. Altek Sys.*,
    132 F.3d 701 (Fed. Cir. 1997) .....................................................................................................4

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001) ...................................................................................................8

*In re Bond*,
    910 F.2d 831 (Fed. Cir. 1990) ...................................................................................................10

*Broadcom v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ...................................................................................................7

*Datatreasury Corp. v. Wells Fargo & Co.*,
    No. 2:05-CV-291, 2009 WL 1393068 (E.D. Tex. May 11, 2009) ..............................................9

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
    91 F.3d 1580 (Fed. Cir. 1996) .....................................................................................................2

*Intel Corp. v. Via Techs.*,
    319 F.3d 1357 (Fed. Cir. 2003) ...................................................................................................3

*Levine v. Samsung Telecomms. Am. LLC*,
    No. 2:09-CV-372, 2012 WL 383647 (E.D. Tex. Feb. 3, 2012) ................................................10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) .....................................................................................................8

*Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.*,
    No. CV 09-05031, 2011 WL 9527718 (C.D. Cal. Aug. 5, 2011) ...........................................5, 6

*Netscape Comms. Corp. v. ValueClick, Inc.*,
    684 F. Supp. 2d 699 (E.D. Va. 2010) .........................................................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015)................................................................................................7

*Personal Audio, LLC v. Apple Inc.*,
   No. 9:09CV111, 2011 WL 11757163 (E.D. Tex. Jan. 30, 2011).................................................5

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
   457 F.3d 1284 (Fed. Cir. 2006)................................................................................................2

*Rambrandt Data Techs, LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011)................................................................................................3

*Richardson v. Suzuki Motor Co.*.
   868 F.2d 1226 (Fed. Cir. 1989)..............................................................................................10

*Sipco, LLC v. Abb, Inc.*,
   No. 6:11-CV-0048, 2012 WL 3112302 (E.D. Tex. Jul. 30, 2012)............................................10

*Smartflash LLC. v. Apple Inc.*,
   No. 6:13-CV-447, 2015 WL 4208754 (E.D. Tex. Jul. 7, 2015).................................................2

*Stanacard, LLC v. Rebtel Networks, AB*,
   680 F. Supp. 2d 483 (S.D.N.Y. 2010).......................................................................................4

*Technology Patents LLC v. Deutsche Telecom AG*,
   774 F. Supp. 2d 732 (D. Md. 2010) ....................................................................................3, 6

*Telcordia Techs. v. Cisco Sys., Inc.*,
   612 F.3d 1365 (Fed. Cir. 2010).............................................................................................2, 3

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
   473 F.3d 1173 (Fed. Cir. 2006)................................................................................................8

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   No. C-08-05129-JCS, 2010 WL 653452 (N.D. Cal. Feb. 22, 2010)..........................................9

*WhatsApp Inc. v. Intercarrier Comms., LLC*,
   No. 13-cv-04272-JST, 2014 WL 5306078 (N.D. Cal. Oct. 16, 2014) ......................................6

**FEDERAL STATUTES**

35 U.S.C. § 112(f) .........................................................................................................................6

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure § 2173.04 (9th ed. 2014) ..............................................10

## I. '917 PATENT

### A. "offset" and "hysteresis parameter"

Apple's brief confirms that its proposed constructions inappropriately conflate these two terms. Apple does not dispute that any hysteresis parameter is an offset under its proposed "plain meaning" for offset—"an amount added to counteract or compensate for something else" (Apple Br. 1)—which is why Apple's invalidity contentions identify the same parameter as *both* an "offset" and a "hysteresis parameter." *See* Nettleton Supp. Decl. ¶¶ 6-7. Apple attempts to explain this away by asserting that "hysteresis has a more specific meaning than 'offset'"—in other words, a hysteresis parameter is just a particular kind of offset. Apple Br. 2.

Apple's argument is contradicted by the claims. Dependent claim 17 does *not* claim the mobile radio of claim 1 wherein *the offset* is a hysteresis parameter. Rather, it claims the mobile radio further enabled to "employ a hysteresis parameter in *determining whether a predetermined condition is satisfied*." Claim 1 makes clear that the offset is added to the measured radio-related parameter *before* the "offset, measured radio-related parameter" is evaluated with respect to the predetermined condition and the condition is determined to be satisfied. *See also* '917 col. 9:60-63 ("The offset … is added to the measured parameter value before the mobile station determines whether an event has occurred."). In other words, the offset is applied *before* the step that—as further limited by dependent claim 17—involves a hysteresis parameter. Thus, a mobile device infringing claim 17 must employ an offset that is *distinct* from the hysteresis parameter. Only Ericsson's construction of "offset" properly distinguishes these two very different concepts.

Apple's criticisms of Ericsson's construction do not hold up to scrutiny. Ericsson's "offset" construction is not, as Apple asserts, merely "based on two examples." Apple Br. 1. It is based on the *entire* detailed discussion of offsets in the specification, which provides many examples of offsets, both positive and negative. In all cases the offset is specific to the cell or channel of the measured parameter; that is how the specification explains and defines the offset concept. *See* '917 col. 9:59 – col. 10:46; Nettleton Supp. Decl. ¶¶ 3-5. Nor is it surprising that the specification uses the permissive word "may" in stating that "an individual cell offset may also be employed" or that an offset "may vary depending on the cell." Apple Br. 1. Not all claims require

-1-                                                                        3:15-cv-00154-JD
DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

an offset, so there need not be an offset at all, and offsets may vary by channel as well as by cell.[1]

### B. "mobile radio . . . electronically enabled to . . . measure a radio-related parameter for one or more cells"

Contrary to Apple's argument, a "mobile radio" is not simply a "generic device." Apple Br. 3-4. Rather it is a specific device that "as the name for structure, has a reasonably well understood meaning in the art." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996); *see Smartflash LLC. v. Apple Inc.*, No. 6:13-CV-447, 2015 WL 4208754, at *3 (E.D. Tex. Jul. 7, 2015) (term "processor" connotes structure to person of skill in the art); Nettleton Opening Decl. ¶ 52.[2]

If the term is nevertheless deemed to be a means-plus-function term, Apple argues that "nothing in the specification links or associates" the components of the mobile station illustrated in Figure 1B with measurement. Apple Br. 4. To the contrary, the specification clearly states that "[a] mobile station measures a radio-related parameter for one or more cells in a radio access network", col. 3:31-33, and Figure 1B shows the components of such a mobile station. A person of ordinary skill would understand the link between those components of the mobile station and the measurement function. Nettleton Opening Decl. ¶¶ 53-54; *see Telcordia Techs. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1377 (Fed. Cir. 2010) (to demonstrate insufficient link between structure and function accused infringer must show "that an ordinary artisan would not understand the link").

Next Apple contends that the transceiver and data processing and control unit in the mobile station are "insufficient to perform the claimed function," because various additional components would have to be used to measure the radio-related parameters disclosed in the specification. Apple Br. 5 (citing Sabharwal Decl. ¶¶ 66-77). These components, however, would simply be included within the transceiver and processor. Nettleton Supp. Decl. ¶ 13. Moreover, the novelty of the invention does not lie in the measurement of parameters and a person of skill in the art

---

[1] Similarly, Ericsson's proposed construction for "hysteresis parameter" is superior to Apple's on the three issues where they diverge. *See* Nettleton Supp. Decl.¶¶ 8-11.

[2] Apple relies on certain statements made during the European prosecution of a counterpart application, but does not show that they have any relevance here. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006) ("[S]tatements made during prosecution of foreign counterparts to the '893 patent are irrelevant to claim construction because they were made in response to patentability requirements unique to Danish and European law.").

would understand the sort of components to use.  *Id. ¶¶ 14-16.*  Under these circumstances, the claim "is not indefinite merely because no specific circuitry is disclosed to show the modification" to the transceiver and processor.  *Intel Corp. v. Via Techs.*, 319 F.3d 1357, 1366-67 (Fed. Cir. 2003) (disclosure of "core logic" sufficed as corresponding structure; "how to modify the core logic to perform [the function] may also be properly left to the knowledge of those skilled in the art, and need not be specified in the patent"); *Telcordia*, 612 F.3d at 1377 ("black box" controller sufficiently disclosed structure of "monitoring means" where "ordinary artisan would have recognized the controller as an electronic device with a known structure"); *Technology Patents LLC v. Deutsche Telecom AG*, 774 F. Supp. 2d 732 (D. Md. 2010) (server was sufficient corresponding structure without disclosure of algorithm where expert testified that "one having ordinary skill in the art would understand how a server sends its messages").

Apple also asserts that claim 1 is indefinite for mixing method and apparatus elements because the language making clear that the claim is directed at the capabilities of a mobile radio is in the preamble rather than the body of the claim.  Apple Br. 5.  Apple is unable to cite a single case that turns on this invented distinction.  In *Rambrandt Data Techs, LP v. AOL, LLC*, 641 F.3d 1331, 1339-40 (Fed. Cir. 2011), the claims were indefinite not because language regarding capabilities was in the preamble, but because three apparatus elements were followed by a method element.  The issue is not whether certain language is in the preamble, but whether a person of skill in the art would recognize that the claim is directed at an apparatus's capabilities.  *See* Nettleton Supp. Decl. ¶¶ 17-18; *Netscape Comms. Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 699, 704, 722-23 (E.D. Va. 2010) (claims not invalid for indefiniteness where claimed computer systems "are simply described as *capable* of performing the method").

## II.    '474 PATENT:  "prior to decoding of the random access request"

Apple asserts that, by the plain meaning of the words, an event "prior to decoding of the random request" must occur prior to the beginning of decoding, rather than prior to decoding of complete request.  Apple Br. 6.  To the contrary, an instruction to engrave one's initials in the sidewalk *prior to* the drying of the cement, would be understood to refer to the period before the cement is *completely* dry, rather than before the drying process has begun.  Likewise here, a

person of skill in the art would understand that "decoding" is a process, and that "prior to decoding of the random access request" refers to the period before that process has been completed. Vojcic Supp. Decl. ¶ 2.

Apple argues that Ericsson's proposed construction would render the term superfluous because, since the message part of the random access request is not sent by the mobile station until after the indicator signal is received, it must necessarily have been received prior to decoding of the complete random access request. However, it is entirely proper to include claim language that "reinforc[es]" other language in the claim. *See Bell & Howell Document Mgmt. Products Co. v. Altek Sys.*, 132 F.3d 701, 707 (Fed. Cir. 1997) ("defining a state of affairs with multiple terms should help, rather than hinder, understanding"). The term at issue highlights the efficiency of transmitting the indicator signal before the entire random access request is decoded, a key advantage of the invention. *See, e.g.,* '474 col. 4:16-21.

It is Apple's proposed construction that cannot be squared with the language of the claim. Claim 53 makes clear that the base station must determine certain information in the preamble part of the random access request, namely the preamble's signature pattern, because the indicator signal sent by the base station upon detection of the preamble is "associated with" that signature. Vojcic Supp. Decl. ¶ 3. But, under Apple's construction, the determination of *any* information constitutes decoding of the random access request so that it would be a logical impossibility for the indicator signal to be sent "prior to decoding of the random access request" as the claim requires. A construction that renders the claim nonsensical cannot be correct.[3]

**III.    '417 PATENT:  "means for generating an algorithm-specific security key"**

As an initial matter, Apple is incorrect when it states that "[t]he parties agree that the structure for this means-plus-function term includes a general purpose processor." Apple Br. at 9. It is true that the structure includes a processor, but it is a special-purpose processor that is part of a "key modification module." *See, e.g.*, '417 patent, col. 9:5-9. Such a special purpose module

---

[3] Apple relies heavily on certain statements made by Ericsson during the prosecution of the '474 patent's parent application in support of its construction. Apple Br. at 7-8. However, those statements were made in the context of distinguishing specific prior art references and cannot support Apple's conclusions. *See* Vojcic Supp. Decl. ¶¶ 4-6.

itself connotes structure to a person of skill in the art.  *See Stanacard, LLC v. Rebtel Networks, AB*, 680 F. Supp. 2d 483, 497 (S.D.N.Y. 2010) ("[I]n many communications and computer arts cases, courts have found that a 'module' is the actual structure described in the specification which corresponds to the function claimed by means language.").

       Even if disclosure of an algorithm were required in addition to the special-purpose module, Apple vastly overstates the specificity that the law requires.  While the structure corresponding to a means-plus-function term cannot simply be a "general purpose" computer without more, a "detailed description of the algorithm to be used" is not necessary.  *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1338 (Fed. Cir. 2008).  "[A]lgorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art."  *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007).  While Apple dismisses the patent's disclosures of "one-way functions" and "pseudo random functions" as "merely [identifying] properties that an algorithm may or may not possess," Apple Br. at 10, those properties identify classes of functions to persons of skill in the art that can be used for the key modification algorithm, and the disclosure of "cryptographic hash functions" in the specification corresponds to an even narrower category.  *See* Madisetti Opening Decl. ¶¶ 31-36.  This disclosure is sufficiently specific.  *See, e.g., Personal Audio, LLC v. Apple Inc.*, No. 9:09CV111, 2011 WL 11757163, at *6-*8 (E.D. Tex. Jan. 30, 2011) (reference to "conventional speech recognition mechanisms" in specification was sufficient disclosure of algorithm for "input means for accepting control commands from a user" in situation when input was via microphone); *Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.*, No. CV 09-05031, 2011 WL 9527718, at *38, *44-*45 (C.D. Cal. Aug. 5, 2011) (reference to "web crawlers, links, and conventional querying methods" in specification was sufficient disclosure of algorithm for "means for querying automatically on a periodic basis third party databases").  While Apple's expert points out that certain cryptographic hash functions may be superior to others, Mitchell Decl. ¶¶ 81-85, there is no requirement that the patent specification provide that degree of detail.  The court in *Personal Audio* did not require a ranking of "conventional speech recognition

mechanisms"; nor did *Medversant Techs.* insist on an identification of the best "web crawler." [4]

## IV.   '150 PATENT

### A.   "an extension indicator of a second type . . ."

Apple asserts that Ericsson's construction would render the "and" in the middle of this claim term "superfluous."  Apple Br. 12.  Apple has it exactly backwards:  the "and" separating the two elements of this claim term, and the *absence* of an "and" preceding this term, show that Ericsson's construction is correct.  In ordinary English usage, "and" appears before the last element of a list, *e.g.*, "a cake made of:  flour; butter; milk; *and* sugar."  The same structure is found, for example, in dependent claim 11—a message comprising:  "information identifying the message as being a data or control message**;** information identifying the message as a status type message …**; and** information about the beginning and end of non-received data."  The same is also true of claim 1, which claims "a message comprising:  data acknowledging properly received data units …**;** an extension indicator of a first type**;** data regarding a non-received or partially received data unit …**;** an extension indicator of a second type, indicating whether the data unit or units were non-received or partially received**; and**, in the case of one or more partially received data units, which parts of those data units that were not received …."[5]  The "and" introduces the last element in the list of elements composing the message.  If Apple's construction were correct, then there should be an "and" preceding "an extension indicator of a second type," because that would be the last element of the list, and what follows would be just a description of what that indicator indicates.  That no such "and" appears shows that Apple's construction is wrong.

Apple contends that its construction is consistent with the specification because it reads on

---

[4] Apple complains that Ericsson's construction is simply "a string of citations."  But, because § 112(f) states that a means plus function term "shall be construed to cover the corresponding structure . . . *described in the specification* and equivalents thereof," it is commonplace to construe such a term by reference to the appropriate portions of the specification.  *See, e.g., WhatsApp Inc. v. Intercarrier Comms., LLC*, No. 13-cv-04272-JST, 2014 WL 5306078, at *10 (N.D. Cal. Oct. 16, 2014); *Technology Patents*, 774 F. Supp. 2d at 758-61.  The statute also makes clear that "equivalents" are to be included in the construction.  *See WhatsApp*, 2014 WL 5306078, at *10.

[5] Apple emphasizes the "and further wherein" clause coming after the disputed claim term, and the absence of a semicolon preceding it.  Apple Br. 12.  That clause is *not* introducing a final element of the message, but rather providing more detail about an element (the first extension indicator) already listed.  It is thus entirely consistent with Ericsson's construction.  The analogy is:  "a cake made of:  flour; butter; milk; and sugar, and wherein the butter is unsalted."

1  one embodiment involving a two-bit "F field."  First, it is unclear that Apple's construction
2  actually covers that embodiment because the two-bit F field only provides *partial* information
3  about "which parts" of the data unit are missing (*e.g.*, whether the missing part is somewhere in
4  the middle).  As the specification explains, segment offsets—separate data elements—are "needed
5  in order to indicate" the beginning or end of the missing part.  *See* '150 col. 6:8-16; Nettleton
6  Supp. Decl. ¶¶ 20-25.  Moreover, the specification describes at length a primary embodiment in
7  which a "second extension indicator" called the "F bit/flag" indicates only whether the data unit
8  was partially received or non-received, and distinct data elements called "segment offsets"
9  indicate which parts of a partially received data unit are missing.  *See* Nettleton Supp. Decl. ¶¶ 26-
10 30.  Apple argues that "every claim does not need to cover every embodiment," Apple Br. 13
11 (quoting *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021 (Fed. Cir. 2015)), but concedes
12 that under its construction, *no claim* covers the primary embodiment discussed in the specification.
13 Apple Br. 13 ("[T]he single bit embodiments are not claimed.").  That cannot be correct.  *See, e.g.*,
14 *Broadcom v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("[A]n interpretation which
15 'excludes a [disclosed] embodiment from the scope of the claim is rarely, if ever, correct.'").
16 Similarly, the dependent claims' different treatment of the two different elements composing this
17 claim term is incompatible with Apple's construction.  *See* Nettleton Supp. Decl. ¶¶ 31-36.
18      Finally, Apple incorrectly argues that the Swedish application supports its position because
19 it provides no separately labeled data element for the "which parts" clause.  In fact, a separate
20 label "(715)" is given for that data element; it refers to the segment offsets as well as other
21 alternative data structures described in the specification.  *See* Nettleton Supp. Decl. ¶¶ 37-39.
22      **B.    "means for dividing said data units into segments"**
23      Apple complains that the '150 patent does not address factors such as "how large the
24 segment should be," or "whether the segments can vary in size," and so forth.  Apple Br. 14.  But,
25 just as a "means for dividing a cake" would naturally be understood to refer to a knife, rather than
26 to decision-making regarding how large the slices should be, so the "means for dividing said data
27 units into segments" refers to the structure that performs the actual division.  However, unlike a
28 physical object, like a cake, that is actually cut, dividing a data unit that exists only in the memory

1   of a computer into segments simply means to specify the memory location where one segment
2   ends or the next begins.  Nettleton Supp. Decl. ¶¶ 40-41.  By stating that a "segmentation offset,
3   SO, . . . indicates the segments' start in the original RLC PDU," the specification describes how
4   the control means and memory in Figure 8 divide data units into segments in a way that a person
5   of skill in the art would understand.  *Id.* ¶ 41; '150 col. 3:48-49.

6   **V.     '992 PATENT:  "a user terminal identifier indicating a scrambling sequence. . ."**

7   Apple and its expert argue that because a "first set of uplink scrambling sequences"
8   appears in embodiments in the patent specification together with a second set containing a
9   different type of scrambling sequences, that "two-type scrambling sequence approach" can be read
10  into the claims.  Apple Br. 15; Andrews Decl. ¶¶ 48-56.  That is not the law.  "[E]ach claim does
11  not necessarily cover every feature disclosed in the specification," even when *every* disclosed
12  embodiment includes that feature.  *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173,
13  1181 (Fed. Cir. 2006) (rejecting argument that specification implicitly defined  the term
14  "dispensing" to mean "direct dispensing" because disclosed embodiments employ direct
15  dispensing); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905-06 (Fed. Cir. 2004)
16  (rejecting argument that "opening" should be construed as an opening in a pressure jacket because
17  all disclosed embodiments feature pressure jackets).  The conclusion is even stronger here where
18  the specification discloses embodiments that *do not* include two different types of scrambling
19  sequences.  Vojcic Supp. Decl. ¶¶ 7-8.  Moreover, there is "significant added support" for the
20  proposition that a feature is not included in an independent claim when, as here, there are
21  dependent claims that explicitly recite that feature.  *Liebel Flarsheim*, 358 F.3d at 909-10.[6]

22  Apple also asserts that Ericsson's proposed construction would "read[] out the term 'first'
23  from 'set'" and cites the recent claim construction decision from the parties' ITC proceeding
24  regarding a related patent which relies heavily on this reasoning.  Apple Br. 15.  The reasoning is,

---

[6] Apple argues that the patent specification defines the disputed phrase "by implication," citing *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001).  Apple Br. at 15.  *Bell Atlantic*, which involved the particular way the patent used the term "mode," cannot be stretched, as Apple tries to do, to support the proposition that two features must always be claimed together because they appear together in disclosed embodiments.

however, flawed.  "[T]he modifiers 'first' and 'second' before a claim term is a 'common patent-law convention to distinguish between repeated instances of an element or limitation.'"  *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003).  Moreover, as in the claims at issue here, it is a common practice to use the modifier "first" before an element in an independent claim for no reason other than to distinguish that element from another instance that will later appear in a dependent claim.  *See, e.g.*, *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. C-08-05129-JCS, 2010 WL 653452, at *41 (N.D. Cal. Feb. 22, 2010)  (rejecting argument that claim 1, which includes the term "first power switch," also includes a "second power switch" that is not recited expressly until dependent claim 12).

## VI.  '710 PATENT

### A.  Order of the performance of the elements

Apple's attempt to impose a sequence fails the governing legal standards.  Apple argues that step 2 must follow step 1 simply because step 2 refers to terms that have an antecedent basis in step 1.  But "antecedent basis is not a matter of logic or grammar that compels the steps to be performed in order."  *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:05-CV-291, 2009 WL 1393068, at *60 (E.D. Tex. May 11, 2009).  And Apple's argument that "[b]ecause the rest of the claim elements must occur in order …, it makes sense that steps 4 and 5 must also occur in order" (Apple Br. 17) fails to show that "as a matter of logic or grammar, they must be performed in the order written."  *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed. Cir. 2003).

Nor does the specification require Apple's order.  Apple acknowledges the specification's description of starting the timer (step 5) "at the moment"—*i.e.*, at the same time—the status report is delivered to the MAC (step 4) (col. 2:21-24), but points to other sections indicating that "another aspect of the invention" involves starting the timer later (*e.g.*, col. 2:64 – col. 3:1).  First, the order of steps in the embodiments does not itself impose an order on the claims.  *See Altris*, 318 F.3d at 1370-71.  Second, Apple misses that the specification describes multiple inventions distinctly claimed.  The specification explains that problems could arise if the timer is started when the report is delivered to the MAC, due to transmission delays after delivery, and proposes solutions involving starting the timer later.  Those solutions are claimed in *dependent claims 6 and*

7.  But the specification also acknowledges that when the generation and delivery of the report is deferred until after the MAC has indicated that resources are available—a distinct invention claimed in independent claim 1—"transmission delays after forwarding to the MAC controller are minimized."  '710 col. 8:67 – col. 9:4.  Thus, independent claim 1 does not require the additional invention claimed in dependent claims 6 and 7, and encompasses starting a timer at the same time as (or before) delivery to the MAC.  *See* Nettleton Supp. Decl. ¶¶ 46-52.[7]

### B.      "radio link controller configured to . . ."

As set forth in Ericsson's opening brief and the accompanying Nettleton Declaration, a radio link controller is a well-understood structure, namely a computer that is programmed to implement the radio link control (RLC) layer protocol.  Nettleton Opening Decl. ¶¶ 105-108.  Apple's argument that this is a means-plus-function term rests on the counter-factual proposition that a "radio link controller" is simply a "general purpose computer."  Apple Br. at 19.  But Apple's expert acknowledges that the RLC layer is a known part of the protocol stack used in cellular systems.  Rangan Decl. ¶ 75.  Although Dr. Rangan proceeds to opine that disclosure of a radio link controller would not "provide details about how the claimed radio link controller performs the recited functions," *id.*, no such details are necessary.  *See, e.g.*, *Sipco, LLC v. Abb, Inc.*, No. 6:11-CV-0048, 2012 WL 3112302, at *29-*30 (E.D. Tex. Jul. 30, 2012) ("site controller" was not a "general purpose computer" and so algorithm "detailing how [] the site controller performs the recited function" was not necessary); *Levine v. Samsung Telecomms. Am. LLC*, No. 2:09-CV-372, 2012 WL 383647, at *19 (E.D. Tex. Feb. 3, 2012) (where specification discloses "special-purpose hardware" for performing a function, no algorithm is required).

---

[7] Apple cites no authority for its assertion that the claims are indefinite if they do not require a precise order for step 1 or between step 4 and step 5, and instead leave that as an implementation detail.  That argument would invalidate most method claims, which generally are not construed to require that steps be performed in a particular order.  *Altris*, 318 F.3d at 1369-70; *see also* Manual of Patent Examining Procedure § 2173.04 (9th ed. 2014) ("Breadth Is Not Indefiniteness").  Likewise specious is Apple's argument that Ericsson disclaimed a different order in prosecution (Apple Br. 18 n.18).  The remarks Apple cites simply quote a generic test for anticipation set forth in two cases, neither of which involve the order of steps.  *See* Rangan Ex. E, at 5 (citing *Richardson v. Suzuki Motor Co.*. 868 F.2d 1226, 1236 (Fed. Cir. 1989) and *In re Bond*, 910 F.2d 831, 832 (Fed. Cir. 1990)).  The argument actually made by prosecution counsel likewise has nothing to do with order of steps, but rather the complete absence of step 6 in a prior art reference.  *See* Rangan Ex. E, at 6.

| | | |
|---|---|---|
| 1 | DATED:  November 2, 2015 | MUNGER, TOLLES & OLSON LLP |

DATED:  November 2, 2015

MUNGER, TOLLES & OLSON LLP
    GREGORY P. STONE
    STEVEN M. PERRY
    BENJAMIN J. HORWICH
    ZACHARY M. BRIERS

MCKOOL SMITH HENNIGAN, P.C.
    MIKE MCKOOL, JR. (*pro hac vice*)
    DOUGLAS A. CAWLEY (*pro hac vice*)
    COURTLAND L. REICHMAN


By:    */s/ Gregory P. Stone*
          Gregory P. Stone

Attorneys for Defendants ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON