MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE 35TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

November 6, 2015

Hon. James Donato, United States District Court
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Writer's Direct Contact
(213) 683-9121
zachary.briers@mto.com

Re:   *Apple Inc. v. Telefonaktiebolaget LM Ericsson, et al.*, Case No. 3:15-cv-00154-JD

Dear Judge Donato:

Ericsson submits this letter in response to the Court's October 30, 2015 Minute Order (ECF 136) asking Ericsson to address (a) the damages-related information it believes is contained in Apple's mobile carrier agreements; (b) why that information cannot be obtained otherwise; and (c) why Ericsson's damages-related interests outweigh Apple's confidentiality concerns.

Although Apple brought this suit against Ericsson, it refuses to reveal the economic terms on which it sells its flagship devices to its largest customers. Those terms are too complex to be inferred from a financial report or summary. While it is true that Ericsson might glean something from depositions or interrogatories, as compared to production of the genuine agreements, those methods are cumbersome and more costly, less complete and less accurate, and yet no more protective of the information Apple wants to keep secret.

### A.     The Carrier Agreements Contain Highly Relevant Damages Information

Apple's agreements with mobile carriers reflect information that is highly relevant to Ericsson's calculation of the total value Apple has received or will receive from selling LTE-compliant devices to LTE carriers for use on their networks. These are lucrative agreements that exist only because Apple has products to sell that incorporate Ericsson's patented technology.

To begin with, the agreements reflect non-monetary consideration that does not appear on Apple's financial documents, or only cryptically so. *See Asetek Danmark A/S v. CMI USA, Inc.*, 2015 WL 5568360, *12 (N.D. Cal. Sept. 22, 2015) (approving jury instruction that "reasonable royalty may be based in whole or in part on . . . non-monetary benefits"). For example:

- Volume Commitments:  whether and to what extent carriers promise to buy minimum quantities of accused devices, regardless of retail demand.

- Preferential Marketing Treatment: whether and how carriers agree to market the accused devices at their own expense, through TV and display advertising, promotions, in-store store placement, and marketing to existing subscribers.

- Network Traffic Priority: whether carriers agree to give priority on their networks to data from Apple's devices over data from Apple's competitors' devices.

- Agreement to Sell Other Apple Products: whether carriers agree, in return for the right to sell the accused devices, to sell and market Apple accessories and peripherals.

The agreements also presumably reflect financial consideration that is not calculated on a per-unit basis, and therefore is not reflected in Apple's product-specific financials.  For example:

MUNGER, TOLLES & OLSON LLP

November 6, 2015
Page 2

- <u>Development Subsidies</u>: whether carriers subsidize Apple's development of LTE devices.

- <u>Right to Resell Fee</u>: whether carriers pay lump sums for the right to resell the accused devices, including, for example, a payment for the right to service the accused devices.

- <u>Share of Subscriber Fees</u>:  whether carriers agree to share with Apple a portion of the monthly subscriber fees paid to the carriers by users of Apple's accused devices.

- <u>Structure of Future Consideration</u>: what consideration the carriers will pay to Apple for future purchases of the accused devices, which can be relevant to assessing a reasonable royalty in the context of a hypothetical negotiation.

Of course, only actual review of the agreements can reveal their other relevant terms.

### B.      Other Discovery Methods Are Inadequate for Obtaining the Information

Depositions are an inadequate tool for deriving this information.  *First*, depositions would introduce errors and imprecision.  The agreements are intricate and vary among carriers.  No witness can realistically be expected to fully and accurately recount the terms of each agreement.  Indeed, it is likely that any witness would need to examine the agreements during the deposition (while the questioner remains in the dark).  *Second*, the testimony would be incomplete.  Ericsson's counsel would have to blindly guess what questions to ask a hostile witness in order to understand the structure, interrelationships, and nuances of a series of undoubtedly complex agreements.  Although counsel could probe with generalized questions, such questions are unlikely to elicit the full scope of the agreements' terms, let alone the granular testimony needed to support a careful damages analysis.  *Lastly*, it would be highly inefficient for all involved.  Apple says that only a few executives have reviewed even *parts* of *some* of the agreements.  Apple would need to prepare someone to speak with specificity to the *complete* terms of *each* agreement, and Ericsson's counsel would need to painstakingly question that deponent about all relevant terms each agreement might conceivably address.  The expense and frustration of that exercise would unquestionably be minimized through production of the agreements themselves.

The inadequacy of discovering contract terms by deposition has already been borne out in this action.  In early October, Ericsson questioned a senior Apple witness about the terms of Apple's agreements with Qualcomm (a key Apple supplier of relevant components), while Apple maintained its objection to producing the agreements themselves.  Ericsson has no reason to doubt that witness made an honest effort to describe the terms of those agreements.  But once Apple relented and produced the Qualcomm agreements, it was clear that the witness's testimony failed to disclose, or inaccurately described, certain terms that are highly relevant to disputed issues surrounding the calculation of a reasonable royalty.  Indeed, that testimony failed to cover large amounts of both monetary and non-monetary consideration flowing among Apple, Qualcomm, and others.  Moreover, the agreements contain highly relevant provisions that were, frankly, inconceivable to Ericsson's counsel at the time it prepared for the deposition.  Ericsson would have a similar experience trying to take a blindfolded deposition about Apple's carrier agreements.  (To protect Apple's confidential information, Ericsson has avoided describing the Qualcomm episode in specific detail, but would submit a sealed filing at the Court's request.)

Proceeding by interrogatory would be no better.  It would be cumbersome to abstract terms of agreements that could simply speak for themselves.  The breadth, depth, and

MUNGER, TOLLES & OLSON LLP

November 6, 2015
Page 3

completeness of Apple's responses would be subject to dispute and clouded by the inevitable skepticism that an opposing party's counsel has zealously reported every term that may be used to attack her client.  And paradoxically, an appropriately forthcoming response is most likely to implicate Apple's confidentiality concerns—Apple surely does not wish to prevail in the present dispute, only to be ordered to cut-and-paste the agreements' terms into an interrogatory response.

That last point is a particular problem with Apple's position:  alternative discovery tools are unlikely to ameliorate its confidentiality concerns.  Apple opposes not only the production of the signed carrier agreements themselves, but also any disclosure *of their terms*.  According to Apple, disclosure of the agreements' terms, *in any form*, would introduce risk of inadvertent disclosure.  Deposition testimony (which is recorded on video and transcribed) and interrogatory responses (which are exchanged pursuant to ordinary protective measures), are no less likely to be inadvertently disclosed (and perhaps even more so) than a production of the agreements on a secure computer subject to highly restrictive security measures.  The best method for disclosure of the relevant terms of the carrier agreements is for the agreements to be produced subject the same highly restrictive measures that govern Ericsson's review of Apple's source code.

C. **Ericsson's Interest in Obtaining the Relevant Information Outweighs Apple's Confidentiality Concern, Which Can Be Adequately Addressed**

To develop the sort of damages analysis the Federal Circuit requires, Ericsson must know all consideration Apple realizes from the accused devices.  *E.g., Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) ("[Royalty calculation] requires sound economic and factual predicates.").  There is no categorical distinction between the discoverability of information relevant to proving liability and information relevant to proving damages.  Although in some patent infringement cases, damages analysis require only a basic accounting of sales reported on routine financial documents, this is not such a case.  Apple's agreements regarding the accused devices are highly complicated, highly structured, and often far from intuitive.  Apple cannot fairly hide that complexity from scrutiny in the name of confidentiality.

Recognizing Apple's legitimate confidentiality interests, Ericsson would stipulate to review the agreements under the same restrictive conditions that govern Ericsson's review of Apple's highly confidential source code.  Those restrictions permit only outside counsel and qualified consultants to review the documents, only on a secure computer at a location of Apple's choosing, and to print only five watermarked copies, limited to only the relevant provisions of the documents.  Those restrictions appropriately balance the confidentiality of Apple's agreements with Ericsson's need for the information it will use to prove its case.[*]

Very truly yours,

Zachary M. Briers

---

[*] The Court did not solicit Ericsson's views on the sealed orders cited in Apple's October 22, 2015, letter (which, in any event, Apple did not make available until the day this letter was due).  If the Court requests, Ericsson would address those orders in a short supplemental letter.